UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| REVEREND DARCY ROAKE and ADRIAN VAN YOUNG, on behalf of themselves and on behalf of their minor children, A.V. and S.V., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CADE BRUMLEY, in his official capacity as the Louisiana State Superintendent of Education, et al.,<br><br>Defendants. | CIVIL ACTION NO.<br>3:24-cv-00517-JWD-SDJ |

## DECLARATION OF JOSHUA HERLANDS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Joshua Herlands, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Plaintiff in the above-captioned matter. I am suing on behalf of myself and on behalf of my minor children, E.H. and J.H.[1]

2. E.H. and J.H. are currently enrolled in a public elementary school in the NOLA Public School System in Orleans Parish. Their school is scheduled to begin the upcoming academic year on August 14, 2024.

3. My family is domiciled, and my children attend school, in Orleans Parish.

4. I am Jewish and am raising my children within the Jewish tradition. We are members of a local synagogue, which we attend on certain Jewish holidays. We also take part in

---

[1] In accordance with Federal Rule of Civil Procedure 5.2(3), all minor Plaintiffs are identified by their initials.

1

various community-engagement events sponsored by the synagogue, and E.H. attends Hebrew school at our synagogue.

5. On behalf of myself and my children, I object to, and am offended by, H.B. 71 because the overtly religious classroom displays mandated by the law will promote, and forcibly subject my children to, religious scripture in a manner that violates my family's religious beliefs and practices.

6. In so doing, I believe that the displays will religiously coerce my minor children and usurp my parental role in directing their religious education, religious values, and religious upbringing.

7. I object to H.B. 71's mandatory religious displays, in part, because I believe that they violate a key tenet of Judaism: the prohibition against missionizing. Tolerance is at the heart of the family's practice of Judaism, and, like many Jewish people, I believe that evangelizing and trying to force religious teachings on others is inherently antithetical to this Jewish value.

8. I further object to H.B. 71's religious displays because the commandments are presented without the broader context provided by the Hebrew Bible and Jewish doctrine more generally, thus obscuring important principles that apply to interpretation of the commandments. For example, I believe that it is offensive that the name of "G[-]d" is spelled out in the mandated Ten Commandments text. In my practice of Judaism, I typically do not write out the name of G-d because I, like many other Jewish people, view it as a violation of the commandment that prohibits taking G-d's name in vain.

9. As another example, I believe that H.B. 71's final commandment, "Thou shalt not covet thy neighbor's wife, nor his manservant, nor his maidservant, nor his cattle, nor anything that is thy neighbor's," is explicitly from a man's point of view, giving the impression that the

2

commandment should apply based on gender. In addition, the commandment's discussion of "manservant[s]" and "maidservant[s]" suggests that it endorses personal servitude. However, it is fundamental to my practice of Judaism that all people are created equal, that any rule or law or obligation such as this would apply to all people equally—not just to one gender—and that any support for human slavery or servitude is immoral, wrong, and against G-d's will. I believe that this context and modern Jewish interpretive principles are vital so as not to imply that Judaism endorses or supports gender discrimination or any form of servitude.

10. I also object to H.B. 71 because the state-mandated version of the Ten Commandments is different than the version in the Hebrew Bible (*i.e.*, the Torah), omitting text that I believe is religiously significant and thereby imposing a distorted version of the Decalogue. For example, in the Hebrew Bible, one of the commandments prohibits any graven images of G-d, as well as any *likeness* of G-d, which is why one typically does not see any images of G-d in a synagogue. But the version set forth in H.B. 71 mentions only the prohibition on "graven images." I believe that, by eliminating the Hebrew Bible's important prohibition on likenesses of G-d, H.B. 71 ensures that popular Christian iconography of G-d (*e.g.*, images of Christ) is not in violation of the commandment, thereby erasing the commandment's Jewish significance and rendering the display of the state's approved Ten Commandments Christian-centric.

11. As another example, in the Hebrew Bible, the first commandment discusses G-d being the one who delivered the Jewish people from Egypt, where they were slaves. For me, this is a key piece of the Ten Commandments and of the Jewish story, which is commemorated each year by Passover, one of the holiest Jewish holidays. The version of this commandment in H.B. 71, however, eliminates this language and thus omits a key piece of the cultural and religious history of the Jewish people.

12. The ability to direct and guide my children in matters of faith is an essential aspect of my religious exercise. H.B. 71 will significantly interfere with and substantially burden my ability to carry out this religious exercise.

13. By forcibly imposing on my children a distorted version of the Ten Commandments, detached from its Jewish context, H.B. 71 will significantly undermine and conflict with my ability to teach them about their religion in a manner that comports with my family's faith.

14. Given that the displays will be unconnected to any specific academic lesson and that my children will be forced to observe the displays day in and day out, in every classroom—where they are subject to teachings by people in positions of authority—I believe that the displays will convey to my children the false messages that (1) there is a single set of religious laws that one should preference above others, (2) the posted version of the Ten Commandments is authoritative in that regard, and (3) forcing this religious doctrine on people who may not believe in it is acceptable.

15. I further believe that, given the nature of the religious displays, my children are likely to be put under pressure to view the state's distorted, Christian-centric version of the Ten Commandments as the one true version of the religious text that all people must follow, in direct conflict with my family's religious beliefs.

I hereby declare under penalty of perjury that the foregoing is true and correct.

_____
Joshua Herlands

Executed on this 2nd day of July, 2024