UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **REVEREND DARCY ROAKE AND ADRIAN VAN YOUNG, ON BEHALF OF THEMSELVES AND ON BEHALF OF THEIR MINOR CHILDREN, A.V AND S.V, ET AL.** | CIVIL ACTION NO. 3:24-CV-0517<br><br>JUDGE JOHN W. DEGRAVELLES<br><br>MAGISTRATE JUDGE SCOTT D. JOHNSON |
| **VERSUS** | |
| **CADE BRUMLEY, IN HIS OFFICIAL CAPACITY AS LOUISIANA STATE SUPERINTENDENT OF EDUCATION ET AL.** | |

### MEMORANDUM IN SUPPORT OF RULE 12(B)(1) MOTION TO DISMISS AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION ON BEHALF OF DEFENDANT ORLEANS PARISH SCHOOL BOARD

**MAY IT PLEASE THE COURT:**

Defendant, Orleans Parish School Board ("OPSB"), without waiving and expressly maintaining all objections, motions, and defenses, respectfully submits this memorandum in support of its Federal Rule of Civil Procedure Rule 12(b)(1) motion to dismiss all claims by Plaintiffs against OPSB and Opposition to Plaintiffs' Motion for Preliminary Injunction (R. Doc. 20) because Plaintiffs lack standing to bring this action against OPSB.

### FACTUAL BACKGROUND

This lawsuit concerns Louisiana Act 676 of the 2024 legislative session (the "Act") which, amongst other things, requires public schools to post a state-approved version of the Ten Commandments in every classroom. R. Doc. 1. Plaintiffs are parents, proceeding on behalf of their minor children who are enrolled in various public schools across the state, who seek a declaratory judgment that the Act is unconstitutional and preliminary and permanent injunctive relief to prevent "Defendants from (i) implementing rules and regulations in accordance with the

Act, (ii) otherwise seeking to enforce the Act, and (iii) displaying the Ten Commandments in any public-school classroom." R. Doc. 1 at ¶5 and Request for Relief.

OPSB is named as a defendant along with various state officials including the Louisiana State Superintendent of Education and officials from the Louisiana State Board of Elementary and Secondary Education, and other school boards including East Baton Rouge, Livingston, Vernon, and St. Tammany parishes.  R. Doc. 1.  Three sets of plaintiffs allege that their children attend school in "the NOLA Public School System" in Orleans Parish:

> Plaintiffs Reverend Darcy Roake and Adrian Van Young bring this suit on behalf of themselves and their minor children, A.V. and S.V. S.V. is enrolled in public elementary school in the NOLA Public School System. A.V. will attend an elementary school in the same public school system in 2025. Reverend Roake and Mr. Van Young are domiciled, and their children attend school, in Orleans Parish. Complaint at ¶ 9.
>
> Plaintiffs Gary Sernovitz and Molly Pulda bring this suit on behalf of themselves and their minor child, T.S., who is enrolled in a public elementary school in the NOLA Public School System. Mr. Sernovitz and Ms. Pulda are domiciled, and their child attends school, in Orleans Parish. Complaint at ¶ 15.
>
> Plaintiff Joshua Herlands brings this suit on behalf of himself and his minor children, E.H. and J.H., who are enrolled in a public elementary school in the NOLA Public School System. Mr. Herlands is domiciled, and his children attend school in Orleans Parish. Complaint at ¶ 17.

The Complaint further alleges:

> The Orleans Parish School Board is the governing authority for NOLA Public Schools. *See* La. R.S. §§ 17:51, 17:81, 17:121, 17:1373. The Orleans Parish School Board and its members must "serve in a policymaking capacity that is in the best interests of all students enrolled in schools under the board's jurisdiction." La. R.S. § 17:81(A)(1). Members exercising policymaking authority and are charged with developing and maintaining a master plan for student discipline and a student code of conduct. La. R.S. §§ 17:252, 17:416.13. Complaint at ¶ 31.
>
> The Act requires the Orleans Parish School Board, as a public-school governing authority, to "display the Ten Commandments in each classroom in each school under its jurisdiction." Complaint at ¶ 32.

However, OPSB directly runs only two public schools: the Leah Chase School which is newly-opened for the 2024-2025 academic year, and the Travis Hill School for incarcerated students.[2] None of the Plaintiffs have a child enrolled in either of OPSB's direct-run schools.[3] Instead, Plaintiffs Darcy Roake and Adrian Van Young have one child enrolled at the International School of Louisiana and one child not yet enrolled in any schools.[4] Plaintiffs Gary Sernovitz and Molly Pulda have one child and Plaintiff Joshua Herlands has two children enrolled in the Willow School.[5]

The International School of Louisiana is a Type 2 charter school in Orleans Parish authorized by the Louisiana State Board of Elementary and Secondary Education.[6] The Willow School is a Type 3B charter school in Orleans Parish authorized by OPSB.[7]

Under Louisiana law, a charter school is "***an independent public school*** that provides a program of elementary or secondary education, or both, established . . . to provide a learning environment that will improve pupil achievement." La. R.S. § 17:3973(2)(a) (emphasis added). A Type 2 charter school is "a public school converted and operated as a result of and pursuant to a charter between ***the nonprofit corporation created to operate the school*** and the State Board of Elementary and Secondary Education." *Id*. at (2)(b)(ii). A Type 3B charter school is a "preexisting public school transferred to the Recovery School District . . . and ***operated*** as the result of and ***pursuant to a charter between a nonprofit corporation*** and the State Board of Elementary and Secondary Education" that has later been transferred by the Recovery School District to the local school system. *Id*. at (2)(b)(v)(aa), (dd), and (2)(b)(vii) (emphasis added).

---

[2] *See* Exhibit A, Declaration of Kristen Illarmo.
[3] *Id*.
[4] *Id*.
[5] *Id*.
[6] *Id*.
[7] *Id*.

3

Under Louisiana law corporations are "recognizable juridical persons." *Danos Tree Serv., LLC v. Proride Trailers, LLC*, 255 So.3d 1078, 1084 (1st Cir. 2018). The nonprofit corporations that operate charter schools are no exception.[8] Indeed, numerous Louisiana authorities recognize the independence of charter schools. *See, e.g.*, La. Atty. Gen. Op. No. 04-0317 (Nov. 23, 2004) ("A type 2 charter school is an independent public school that is operated pursuant to a charter between a nonprofit corporation and the Board of Elementary and Secondary Education. A charter school is not a political subdivision of the state. . ."); *Voices for Int'l Bus. & Educ., Inc. v. NLRB*, 905 F.3d 770, 774 (5th Cir. 2018) ("Louisiana charter school operators . . . are not controlled by political actors. The corporation selected the inaugural board of directors. . . . Unlike traditional public schools, which are typically governed by elected school boards . . . Privately selected citizens set those policies and get to decide whether they are altered."); *Advocates for Arts-Based Educ. Corp. v. Orleans Par. Sch. Bd.*, 2010 WL 375223 at *3 (E.D. La. Jan. 26, 2010) (citations omitted) ("The Louisiana Attorney General has opined that a charter school is not a political subdivision. . . . Moreover, the Charter Act provides that charter schools must be organized and operate as self-governing nonprofit corporations. A charter school's distinction from other public schools is further evidenced by the Charter Act's exemption of charter schools from all public laws and regulations except as otherwise provided.").

Critically, the local school board and its members individually are "immune from civil liability for any damages arising with respect to all activities related to the operation of any type of charter school they may authorize as a chartering authority, except as is otherwise specifically provided in a charter." La. R.S. § 17:3993(A).

---

[8] For instance, La. R. S. § 17:3983(A)(1) defines the various entities that can form a "nonprofit corporation for purposes of proposing a charter."

4

The independence, autonomy, and separate legal identity of charter schools are underscored by the recent passage of Louisiana Act No. 334 of the 2024 legislative session ("Act 334") which became effective on May 28, 2024. Act 334 amended numerous statutes, including the following:

> It is the intention of the legislature in enacting this Chapter to authorize school choice options for parents, teachers, and pupils through the creation of innovative kinds of ***independent public charter schools***. Further, it is the intention of the legislature to provide a framework of ***operational autonomy for such schools***. . . .

La. R. S. § 17:3972(A) (emphasis added).

> The purposes of this Chapter shall be to increase school choice options throughout the state and to provide opportunities for parents, educators, and others interested in educating pupils to form, operate, or be employed within an operationally autonomous charter school with each such school designated to accomplish one or more of the following objectives: . . .
>
>     (c) Encourage the use of ***different and innovative teaching methods, educational models, and a variety of governance, management, and administrative structures***.

La. R. S. § 17:3972(B)(1) (emphasis added).

> "Autonomy" means that . . . the charter school shall have ***independent operational decision making authority*** in the areas including but not limited to:
>
> (a) ***School programming, instruction, curriculum, materials, texts, calendars, and schedules***.
> (b) Personnel, employment, salaries and benefits, educator certification and evaluation, performance management, participation in retirement planning, and collective bargaining.
> (c) Budgeting, purchasing, procurement, contracts, food service, and management of transportation.

La. R. S. § 17:3973 (emphasis added).

> A charter school shall: . . . (7) have the ***autonomy*** necessary to manage its educational programming and daily operations in accordance with law, policy, and contract.

La. R. S. § 17:3991(C)(7).

Relatedly, under the Act, charter schools have a direct statutory obligation to comply with the Act separate and apart from the obligations of "each public-school governing authority" such as OPSB. Specifically, the Act amends La. R. S. § 17:3996 as follows:

> . . . B. a charter school established and operated in accordance with the provisions of this Chapter and its approved charter and the school's officers and employees shall be exempt from all statutory mandates or other statutory requirements that are applicable to public schools and to public school officers and employees except for the following laws otherwise applicable to public schools with the same grade: . . .
>
> (82) Ten Commandments; displays, R.S. 17:2122.

## LAW AND ARGUMENT

Plaintiffs must have Article III standing to sue each defendant including OPSB. Plaintiffs lack standing as to OPSB because Plaintiffs' children attend charter schools which, as a matter of law, are independent public schools operated by public corporations whose legal identities are separate and distinct from OPSB. By law, these charter schools exercise clear autonomy and independent operational decision making over school programming, instruction, curriculum, materials, texts and operate under a variety of governance, management, and administrative structures. As to the children who attend the International School of Louisiana, a Type 2 charter school, the Louisiana State Board of Elementary and Secondary Education, not OPSB, is the authorizing agent. As to the children who attend the Willow School, a Type 3B charter school, OPSB is immune from all activities related to the operation of any type of charter school that they authorize. Importantly, charter schools, including the International School of Louisiana and the Willow School, have an independent duty to comply with the Act. As such, Plaintiffs cannot show that any purported injury they allegedly suffered is traceable to any conduct by OPSB or that an injunction against OPSB would redress their alleged injury. Moreover, OPSB's involvement in this lawsuit is superfluous given the involvement of the other defendants including state officials

6

who are tasked to enforce the Act. The Court should dismiss all claims against OPSB for lack of standing pursuant to Rule 12(b)(1) and deny Plaintiffs' Motion for Preliminary Injunction as to OPSB.

## I. Standard of Review under Rule 12(b)(1).

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). If at any time the Court determines that jurisdiction is lacking, the Court must dismiss the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998) ("[W]ithout proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit."); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). A motion to dismiss on the basis of standing may be brought under Rule 12(b)(1). *See Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 133 (5th Cir. 2009) (reviewing motion to dismiss on standing grounds under Civil Rule 12(b)(1)). The burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

The Fifth Circuit has held that Rule 12(b)(1) dismissal may be based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 161. Thus, while the standard for Rule 12(b)(1) is similar to that for Rule 12(b)(6), Rule 12(b)(1) allows a court to consider a wider range of materials to decide the motion. *Berry v. Nat'l Labor Relations Bd.*, No. 15-6490, 2016 WL 1571994 at *2 (E.D. La. Apr. 19, 2016). In considering a motion to dismiss pursuant to Rule 12(b)(1), the Court may consider evidence such as affidavits, testimony, and other materials. *See Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981). The "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* at 413 (citation omitted). "[N]o presumptive truthfulness attaches to the plaintiff's

7

allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*. (citation omitted); *see also Voice of the Experienced v. Ardoin*, 2024 WL 2142991 at *10 (M.D. La. May 13, 2024).

## II. Article III Standing.

"The requirement that a claimant have standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *National Fed'n of the Blind v. Abbott*, 647 F.3d 202, 208 (5th Cir. 2011) (quotation marks omitted). The plaintiff has the burden of establishing standing, which is determined at the commencement of a lawsuit. *In re Isbell Records, Inc.*, 774 F.3d 859, 869-70 (5th Cir. 2014).

To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 423 (2021) "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek," including for each defendant against whom they seek it. *Id*. at 431. The burden rests on the plaintiffs to demonstrate that standing exists in the face of a Rule 12(b)(1) motion. *Clapper v. Amnesty International USA*, 568 U.S. 398, 408 (2013).

Based upon these legal standards, the Court should dismiss all claims against OPSB pursuant to Rule 12(b)(1).

## III. Plaintiffs Do Not Have Article III Standing to Challenge the Act as to OPSB.

To achieve Article III standing, Plaintiffs "must show that they have suffered an injury in fact: a personal injury that is traceable to the defendant's alleged conduct and that is likely to be redressed by a favorable decision." *McMahon v. Fenves*, 946 F.3d 266, 271 (5th Cir. 2020) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). That injury must be both "concrete"

8

and "particularized;" an injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Id*. Plaintiffs must have "a direct stake in the outcome." *Id.* (quoting *Sierra Club v. Morton*, 405 U.S. 727 (1972)). To satisfy this injury-in-fact test, Plaintiffs therefore must allege more than an injury to *someone's* concrete, cognizable interest; they must "be [themselves] among the injured." *Id. (*quoting *Sierra Club,* 405 U.S. at 734-35).

Plaintiffs lack Article III standing to sue OPSB in this action because of the separate legal identities, autonomy, independence, and compliance obligations of the charter schools that Plaintiffs' children attend. Therefore, Plaintiffs are not able to establish that any injury in fact they may have incurred is traceable to OPSB's actions and redressable by a favorable outcome to this lawsuit.

Plaintiffs cannot satisfy the requirement of injury-in-fact that is traceable to OPSB. Plaintiffs' children attend (or allegedly will attend) charter schools that have independent and autonomous operations and governance and an independent duty to comply with the law. Again, under the law, Louisiana charter schools exercise clear autonomy and independent operational decision making including over school programming, instruction, curriculum, materials, texts and operate under a variety of governance, management, and administrative structures.

Due to the established independence of the charter schools that Plaintiffs' children attend, any alleged injury to Plaintiffs was caused by the conduct of actors other than OPSB, including the state of Louisiana, which enforces the Act,[9] and the charter schools that the Plaintiffs' children attend, which are directly responsible for complying with the Act.

This is especially true for Type 2 charter schools, such as the International School of Louisiana, which are authorized by the Louisiana State Board of Elementary and Secondary

---

[9] The Act specifies that the "State Board of Elementary and Secondary Education Shall adopt rules and regulations in accordance with the Administrative Procedure Act to ensure the proper implementation of this Section."

9

Education, and not OPSB. Under Louisiana law, Type 2 charter schools are "the exception to the general rule that the local school board has the administrative authority over the public schools within its jurisdictional boundaries." *Moreau v. Avoyelles Parish School Bd.*, 897 So.2d 875, 879 (La. App. 3 Cir. 2005). Although the OPSB is the authorizer for the Willow School, this does not negate the separate juridical identity of the public corporation that operates the Willow School, the independence and autonomy of the Willow School as a charter school, or the statutory immunity OPSB enjoys for the conduct of any charter school it authorizes.

In sum, Plaintiffs cannot show that any injuries they suffer are traceable to any conduct by OPSB. Specifically, any alleged injury that Plaintiffs or their children may suffer from the display of the Ten Commandments while attending the International School of Louisiana or the Willow School would not be caused by OPSB but by the public corporations that operate those schools, which have autonomy and independent operational decision making including over school programming, instruction, curriculum, materials, and texts. La. R. S. § 17:3973. As to any potential claim that OPSB may adopt rules or regulations regarding the implementation of the Act, that is negated by the language of the Act itself which specifies that "[t]he State Board of Elementary and Secondary Education [and not local school boards such as OPSB] shall adopt rules and regulations in accordance with the Administrative Procedure Act to ensure the proper implementation of this Section." The proper defendant in a constitutional challenge of a state statute for purposes of governmental immunity is the state official that is either named in the statute in question or otherwise has the authority to enforce the challenged law. *Voice of the Experienced v. Ardoin*, 2024 WL 2142991 at *15, *40-41 (M.D. La. May 13, 2024) (citing *Ex Parte Young*, 209 U.S. 123 (1908) and *Verizon Md. Inc. v. PSC*, 535 U.S. 635 (2002)). Simply stated, the Act does not task OPSB to promulgate rules or regulations regarding the implementation of the Act.

PD.46355591.2

Finally, Plaintiffs lack Article III standing as to OPSB because they cannot show that an injunction against OPSB would redress their alleged injury. Again, Plaintiffs seek declaratory and injunctive relief to bar "Defendants from (i) implementing rules and regulations in accordance with the Act, (ii) otherwise seeking to enforce the Act, and (iii) displaying the Ten Commandments in any public-school classroom." R. Doc. 1 at ¶5 and Request for Relief. It is the State Board of Elementary and Secondary Education, not local school boards such as OPSB, that is tasked to implement and enforce the Act. Enjoining OPSB from displaying the Ten Commandments in either of its two direct run public schools would not redress any alleged injury suffered by Plaintiffs and their children.

Relatedly, OPSB's involvement in this lawsuit is superfluous given the presence of the other defendants including state officials who may be tasked to enforce the Act and adopt rules and regulations related to the Act. In other words, the Court's determination that the claims and relief Plaintiffs seek are merited or unmerited will impact all public schools, public school boards, and charter schools in Louisiana including OPSB, the Willow School, and the International School of Louisiana. For this additional reason, the Court should grant OPSB's motion.

In sum, Plaintiffs lack Article III standing to sue OPSB because Plaintiffs have not suffered an injury caused by OPSB; nor is any alleged injury redressable by an injunction against OPSB. As Plaintiffs lack standing to bring this claim against OPSB, their request for a preliminary injunction against OPSB must similarly be denied.[10]

---

[10] OPSB maintains that Plaintiffs do not have standing to proceed against OPSB in this action and that it is not otherwise the proper defendant based upon the allegations in the Complaint. To the extent that this Motion to Dismiss is denied, OPSB does not waive any objections, motions, and defenses to the Complaint and Motion for Preliminary Injunction. OPSB also does not seek to prejudice or inhibit any arguments, objections, and defenses raised by the other named Defendants.

11

## **CONCLUSION**

Plaintiffs lack Article III standing to bring their lawsuit against OPSB because their children attend third party charter schools operated by public corporations that are separate and apart from OPSB. Therefore, the Court should grant OPSB's Rule 12(b)(1) motion and dismiss all claims brought by Plaintiffs against OPSB. For the same reason, Plaintiff's motion for preliminary injunction must be denied as to OPSB.

Respectfully submitted,

**PHELPS DUNBAR LLP**

___/s/ Rebecca Sha_____
Rebecca Sha (#35317)
Dan Zimmerman (#2202)
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Facsimile: 504-568-9130
Email:  rebecca.sha@phelps.com
            dan.zimmerman@phelps.com


**ATTORNEYS FOR ORLEANS PARISH SCHOOL BOARD**