**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

REVEREND DARCY ROAKE and ADRIAN
VAN YOUNG**,** on behalf of themselves and on
behalf of their minor children, A.V. and S.V.,
et al.,

       Plaintiffs,

       v.

CADE BRUMLEY, in his official capacity as
the Louisiana State Superintendent of
Education, et al.,

       Defendants.

CIVIL ACTION NO.
3:24-cv-00517-JWD-SDJ

**PLAINTIFFS' COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANT
ORLEANS PARISH SCHOOL BOARD'S MOTION TO DISMISS AND REPLY IN
SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## Table of Contents

Introduction ................................................................................................................................. 1

Factual Background ...................................................................................................................... 2

Legal Standard ............................................................................................................................. 7

Argument ...................................................................................................................................... 8

    I.      Plaintiffs' Injuries Are Fairly Traceable To OPSB. ............................................. 9

    II.    Plaintiffs' Claims Against OPSB Are Redressable. ........................................... 14

    III.   OPSB Is Not A Redundant Defendant. ............................................................... 15

Conclusion ................................................................................................................................. 16

## Table of Authorities

**CASES**

*Bennett v. Spear*,
    520 U.S. 154 (1997).................................................................................10, 11, 13, 14

*Bourque v. Nat'l Flood Ins. Program*,
    480 F. Supp. 3d 733 (M.D. La. 2018) ......................................................... 8

*Felton v. City of Jackson*,
    No. 3:18CV74TSL-RHW, 2018 WL 2994363 (S.D. Miss. June 14, 2018)........................... 15

*K.P. v. LeBlanc*,
    627 F.3d 115 (5th Cir. 2010) ..................................................................... 10

*La. State Conf. of NAACP v. Louisiana,* 490 F. Supp. 3d 982 (M.D. La. 2020),
    *aff'd sub nom. Allen v. Louisiana*, 14 F.4th 366 (5th Cir. 2021)............................ 7, 8

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
    659 F.3d 421 (5th Cir. 2011) ..................................................................... 10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)............................................................................... 8

*McHugh v. St. Tammany Par.*,
    No. CV 24-1300, 2024 WL 3161873 (E.D. La. June 25, 2024) .............................. 15

*Omega Hosp., LLC v. United Healthcare Servs., Inc.*,
    345 F. Supp. 3d 712 (M.D. La. 2018) ......................................................... 8

*Patton v. Air Prod. & Chemicals, Inc.*,
    No. CV 22-00392-BAJ-RLB, 2024 WL 131362 (M.D. La. Jan. 11, 2024)..................... 9

*Perron v. Travis*,
    No. CV 20-00221-BAJ-EWD, 2021 WL 1187077 (M.D. La. Mar. 29, 2021) ................. 15

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001)...................................................................... 8

*Sanchez v. R.G.L.*,
    761 F.3d 495 (5th Cir. 2014) ..................................................................... 14

*Tex. Med. Ass'n v. U.S. HHS*,
    No. 23-40217, 2024 WL 3633795 (5th Cir. Aug. 2, 2024) .................................... 13

*Williamson v. Tucker*,
    645 F.2d 404 (5th Cir. 1981)...................................................................... 8

*Young v. UOP LLC*,
  No. CV 21-282-SDD-EWD, 2024 WL 288985 (M.D. La. Jan. 25, 2024) ................................ 8

**Statutes & Legislation**

La. H.B. No. 71, Act No. 676 (2024) ......................................................................... *passim*

La. R.S § 17:10.7.1 ...........................................................................................6, 11, 12

La. R.S. § 17:3992 ................................................................................................ 6, 12

La. R.S. § 17:3993 ..................................................................................................... 13

La. R.S. § 17:3996 ..................................................................................... 2, 6, 7, 10, 12

La. S.B. No. 316, Act No. 172 (2024) ........................................................................ 12

La. S.B. No. 350, Act No. 334 (2024) ........................................................................ 13

**Other Authorities**

Notices of Non-Compliance, Level 2, NOLA Public Schools,
  https://nolapublicschools.com/documents/notices-of-non-compliance-level-2
  (last visited Aug. 24, 2024) .......................................................................................... 6

Taslin Alfonzo, *Children's Hospital New Orleans and Nola Public Schools Are Positively
  Impacting Students' Mental and Physical Health as ThriveKids Partnership Enters Its
  Second Year* (Aug. 8, 2024), https://nolapublicschools.com/news-blog/children-s-hospital-
  new-orleans-and-nola-public-schools-are-positively-impacting-students-mental-and-physical-
  health-as-thrivekids-partnership-enters-its-second-year (last visited Aug. 24, 2024) .................3

## INTRODUCTION

Nearly every school in the "NOLA Public Schools" district is a charter school. Authorizing charter schools and overseeing them is, for all intents and purposes, the *raison d'être* of Defendant Orleans Parish Schools Board ("OPSB"), the district's governing body. Yet, in its motion to dismiss memorandum,[1] OPSB argues that Plaintiffs—three of whom attend an OPSB-authorized charter school—cannot establish that their injuries are traceable to, or redressable by, OPSB because OPSB purportedly has no legal authority or obligation over its charter schools' compliance with House Bill No. 71 ("H.B. 71" or "the Act"),[2] the state's recently adopted law mandating that every "public[-]school governing authority . . . display the Ten Commandments in each classroom in each school under its jurisdiction." H.B. 71(B)(1). The plain text of the Act, state charter-school laws, OPSB's own policies, and OPSB's Charter School Operating Agreements say otherwise.

OPSB is a public-school governing authority, and OPSB-authorized charter schools fall under OPSB's jurisdiction. Thus, the Act expressly requires OPSB to display the Ten Commandments in each of its charter-school classrooms. Moreover, even if the Act did not directly set out this responsibility, Louisiana law imposes on local school boards a statutory duty to enforce all applicable legal requirements in the schools they establish by charter. Although charter schools have significant autonomy, they do not have *carte blanche* to ignore state law, including the Act. OPSB policies further mandate that OPSB monitor and enforce charter schools' compliance with all applicable federal, state, and local laws. And the same authority is incorporated into OPSB's Charter School Operating Agreement, which further defines the Board's relationship with each charter school.

---

[1] Mem. in Support of Rule 12(B)(1) Mot. to Dismiss & in Opp. to Mot. for Preliminary Injunction on Behalf of Def. Orleans Par. Sch. Bd. (hereinafter, "Def. Br."), ECF. No. 38-1.

[2] La. Act No. 676 (2024).

1

Given the plain language of the Act, as well as the considerable control that OPSB exerts over its charter schools when it comes to compliance with the Charter School Operating Agreement and applicable laws (such as H.B. 71), Plaintiffs have the requisite Article III standing. OPSB is a proper defendant in this case, and its motion to dismiss should be denied.

Furthermore, because OPSB has failed to offer any other arguments in opposition to Plaintiffs' preliminary-injunction motion, should the Court deny OPSB's motion to dismiss, it should also enter a preliminary injunction against OPSB. *See* Plfs. Mot. for Preliminary Injunction, ECF No. 20, 3.[3]

## **FACTUAL BACKGROUND**

Under the Act, "[n]o later than January 1, 2025, each public[-]school governing authority shall display the Ten Commandments in each classroom in each school under its jurisdiction." H.B. 71(B)(1). There are no exceptions: The statute requires the posting of permanent displays in every classroom of every public school, including charter schools. *See id.*, amend. La. R.S. § 17:3996 (providing that charter schools are not exempt from the Ten Commandments law).

NOLA Public Schools ("NOLA-PS") "is the public school district for Orleans Parish." Decl. of Chloe Slater ("Slater Decl."), Ex. 1 (June 4, 2024, NOLA-PS Press Release), at 2.[4] "It includes the district's administration and elected school board, known as the Orleans Parish School Board" and "currently oversees 67 public schools." *Id.*[5] As OPSB notes, all but two of these schools are charter schools. Def. Br. at 3.

---

[3] This combined brief is filed in accordance with Paragraph 6(b) of the Court's July 25, 2024, Order, ECF No. 37.

[4] All exhibits were saved directly from NOLA-PS's official website or from OPSB's official "BoardDocs" page, where OPSB's meeting minutes, agendas, and polices are made available to the public. As explained below, *infra* p. 8 & n.10. Plaintiffs' submission of this evidence is permitted and appropriate in response to Defendants' motion to dismiss for lack of subject-matter jurisdiction.

[5] This statement is included in most press releases issued by NOLA-PS. *See, e.g.*, Taslin Alfonzo, *Children's Hospital New Orleans and Nola Public Schools Are Positively Impacting Students' Mental and Physical Health as ThriveKids Partnership Enters Its Second Year* (Aug. 8, 2024), https://nolapublicschools.com/news-blog/children-s-

"The Orleans Parish School Board (OPSB) is an authorized chartering authority" and "has been granted authority to approve or deny charter school proposals for Type 1, 3, and 3B charters." Slater Decl. Ex. 2 (OPSB Policy HA, "School Board Chartering Authority," rev. Feb. 26, 2024), at 1. Approved charter schools may only operate after they have entered into a "Charter School Operating Agreement." *Id.* Ex. 3 (OPSB Policy HAA, "Charter School Operating Agreement," rev. Nov. 16, 2023), at 1. "A charter school without a signed operating agreement does not have legal authority to operate and may be prohibited from opening, receiving student-based funds and/or occupying or continuing to occupy an OPSB facility." *Id.* OPSB typically uses a model or "common operating agreement" for every charter school, although "[a]uthorized school specific terms (e.g. grade levels served, educational mission and goals, and admission requirements) may be included in an appendix to the common operating agreement." *Id.*

The Willow School is one of the dozens of charter schools authorized by OPSB. Def. Br. at 3 ("The Willow School is a Type 3B charter school in Orleans Parish authorized by OPSB."). In 2021, OPSB renewed the Willow School's Charter Agreement.[6] Three minor-child Plaintiffs attend the school. Def. Br. at 3.[7]

---

hospital-new-orleans-and-nola-public-schools-are-positively-impacting-students-mental-and-physical-health-as-thrivekids-partnership-enters-its-second-year (last visited Aug. 24, 2024) ("Last year, nearly 900 students also received care coordination . . . across 63 NOLA Public Schools campuses. . . . NOLA Public Schools is the public school district for Orleans Parish. It includes the district's administration and elected school board, known as the Orleans Parish School Board. NOLA Public Schools currently oversees 67 public schools[.]").

[6] *See* Slater Decl. Ex. 4 ("Charter School Agreement Between Orleans Parish School Board and Advocates for Arts-Based Education Corporation," July 2021, hereinafter, "Willow School Charter Agreement"). The Lusher School's name was changed to the "Willow School" after the agreement was executed. *See id.* Ex. 5 ("New Orleans Public Schools 2022-2023 Governance Chart") (noting the school's name change).

[7] The minor children of adult-Plaintiffs Joshua Herlands, Gary Sernovitz, and Molly Pulda attend the Willow School. Def. Br. at 3. To avoid confusion, "Plaintiffs" or the "minor-child Plaintiffs," as used here, generally refers to these two families. OPSB also notes that a child of Plaintiffs Reverend Darcy Roake and Adrian Van Young attends the International School, a charter school authorized by the Louisiana Board of Elementary and Secondary Education ("BESE"), not OPSB. Def. Br. at 3. Plaintiffs agree that, as the chartering sponsor for the International School, BESE (whose individual members are already named Defendants in this case) holds responsibility for the school. However, this fact does not entitle OPSB to dismissal because OPSB is properly named as a defendant by the Willow School Plaintiffs.

OPSB policy considers the charter schools authorized by OPSB to be "under its jurisdiction." *See, e.g.*, Slater Decl. Ex. 3 at 1 ("The School Board shall approve charter operating agreements for all charter schools *under the School Board's jurisdiction* that are limited to provisions which are common to all such charter contracts[.]") (emphasis added); *id.* Ex. 2 at 10 ("OPSB may annually establish enrollment projections and targets for every [charter] school *under the school board's jurisdiction* and require enrollment of additional or fewer students.") (emphasis added); *id.* at 14–15 ("The Superintendent shall have the authority to require one or more charter schools *under OPSB's jurisdiction* to temporarily close . . . in the event that a credible threat of terror, or an official state of emergency is declared for the area in which any school *under OPSB's jurisdiction* is located."); *id.* at 15 (noting that all OPSB charter schools "shall adhere to state test security policies" set forth by BESE, including BESE's directive that "each charter school *under the local school board's jurisdiction* shall, at its own expense, annually provide for one day of independent test monitoring from a third-party entity") (emphasis added); *Id.* Ex. 6 (OPSB Policy HB, "Oversight and Evaluation of Charter Schools," rev. Nov. 16, 2023), at 1 ("The Charter School Accountability Framework (CSAF) outlines the expectations the Orleans Parish School Board (OPSB) has for charter schools *under its jurisdiction* and the processes the School District shall use, annually and at the point of each charter's extension or renewal, to track and evaluate school performance against those expectations.") (emphasis added); *Id.* Ex. 7 (OPSB Policy HH, "Student Safety and Well-Being," Aug. 17, 2023), at 1 ("The Orleans Parish School Board recognizes the importance of taking precautionary measures to provide a safe and secure environment for students in charter schools *under its jurisdiction*. Unless otherwise specified below, beginning with the 2023-2024 school year, to reduce violence impacting our students and improve supports to our

4

students and families, charter schools shall be required to implement the following student safety and well-being measures.") (emphasis added).

While OPSB Policy affirms charter schools' autonomy in their operations, the right to autonomy applies only "as long as such operations are in compliance with all applicable federal, state, and municipal laws and regulations." *Id.* Ex. 2 at 5. To that end, OPSB policy requires the school district to "oversee each charter school's compliance with its operating agreement, federal and state laws and regulations and School Board policy." *Id.* Ex. 6 at 1; *see also id.* Ex. 8 (OPSB Policy BBC, "School Board Committees," rev. Nov. 19, 2020), at 1–2 (among the duties of OPSB's "Accountability and Charters Committee" is to "[a]ssure charter agreements compliance"). "At any point in a school year, a school may be deemed noncompliant" and subject to "corrective action," which includes escalating notices of noncompliance. *Id.* Ex. 6 at 1–2. With approval of the OPSB, the Superintendent "may revoke a school's operating agreement during its charter term" for, among other reasons, a "[m]aterial violation of the operating agreement" or "[e]gregious and/or consistent violation of federal, state or local laws or School Board policies." *Id.* at 7–8.

Consistent with its oversight mandate, OPSB's common Charter School Operating Agreement requires charter schools to comply with all federal, state, and local laws and affirms OPSB's right and legal obligation, under its own policies, to monitor schools' compliance, mandate corrective actions where necessary,[8] limit renewals, and even revoke charters for failure to abide

---

[8] Corrective actions taken by OSPB have included withholding funds from a charter school that failed to maintain its facilities; imposing a special-education plan and monthly monitoring on a charter school that did not meet its obligations under federal law; and requiring a charter school to remove a CEO whose appointment violated Louisiana's Governmental Code of Conduct. *See* Notices of Non-Compliance, Level 2, NOLA Public Schools, https://nolapublicschools.com/documents/notices-of-non-compliance-level-2 (scroll down to "IDEA, Facilities, June 15, 2022"; "Dr. Martin Luther King Jr. Charter School, Special Education, November 16, 2021"; and "James M. Singleton, Board Governance, June 14, 2021").

by the law or the terms of the Operating Agreement. For example, the Willow School Charter

Agreement states:

- "Charter Operator shall operate a public charter school (the 'Charter School') in Orleans Parish in accordance with this Operating Agreement and all applicable federal, state, and local laws, regulations, and policies. This Operating Agreement shall constitute Charter Operator's charter (the 'Charter') and shall be binding on Charter Operator, Charter School, and OPSB." *Id.* Ex. 4 ¶ 1.2.

- "In accordance with La. R.S. § 17:3996, Charter Operator shall be subject to . . . any other Louisiana law applicable to charter school governing boards." *Id.* ¶ 1.7.4.

- "**Oversight Authority.** Pursuant to La. R.S. § 17:10.7.1, OPSB has authority to monitor and require corrective actions by Charter School, in accordance with state law and OPSB Policy Section HB." *Id.* ¶ 5.1.

- "Pursuant to La. R.S. § 17:3992, OPSB may revoke the Charter at any time, in accordance with La. R.S. § 17:10.7.1 and the procedures set forth in OPSB Policy HB upon a determination that Charter School or its board members, officers or employees did any of the following in connection with the operation of Charter School: Committed a material violation of this Operating Agreement . . . Committed an egregious and/or consistent violation of federal, state or local laws or OPSB Policies…" *Id.* ¶ 7.2.1.

- "**Compliance with Applicable Law and Policy.** Charter Operator shall comply with all federal and state laws and regulations and all OPSB policies applicable to charter schools." *Id.* ¶ 9.10.

- "**Consent Decrees and Court Orders.** Charter School shall adhere to the requirements of any and all consent decrees and court orders imposed upon Charter School and/or OPSB and shall submit documents and information as required, participate in reviews, and attend informational sessions and meetings required by OPSB or the consent decree or court order." *Id.* ¶ 9.11.[9]

Furthermore, OPSB requires the charter schools it authorizes to annually certify their

compliance with a host of statutes applicable to charter schools and to maintain "evidence of

compliance for review upon request." *Id.* Ex. 10 ("NOLA Public Schools 2024–25 Charter School

---

[9] Per OPSB policy requiring the use of a standard or common agreement for all charter schools, Slater Decl. Ex. 3, at 1, OPSB agreements with other charter schools have identical language. *See, e.g.*, *id.* Ex. 9 ("Charter School Agreement Between Orleans Parish School Board and Legacy of Excellence, Inc.," June 2023).

Assurances"), at 1. The certification form that schools must submit requires them to confirm generally that they are complying with (1) "[a]ll applicable requirements of Louisiana charter law"; (2) "[a]ll applicable requirement of BESE Bulletin 126, Charter Schools"; and (3) "[r]equirements for other public schools and Local Education Agencies (LEAs) that are also applicable to charter schools." *Id.* at 2. It then lists dozens of individual areas of law, specific statutes, and specific regulations with which schools must specifically certify compliance. *See generally id*; *id.* at 2 (noting that the "chair of the Board of Directors or appointed designee . . . must sign or initial each of the indicators on the following pages"). The list overlaps significantly with the list of "statutory mandates or other statutory requirements" from which charter schools are not exempt under La. R.S. § 17:3996(B). For example, among the wide range of statutes and regulations with which charter schools must certify compliance to OPSB are myriad legal provisions pertaining to certain instructional topics, such as "[t]eaching regarding the United States Constitution"; [t]eaching regarding the Federalist Papers and the Declaration of Independence"; "[i]nstruction on the Founding Principles of the United States of America in American history and civics courses"; [t]eaching regarding Civics and Free Enterprise"; "[t]eaching regarding sex"; "[t]eaching regarding the state's Safe Haven Law"; "[t]eaching regarding dating violence"; "[t]eaching regarding Internet and cell phone safety"; "[i]nstruction in cursive writing"; and "[i]nstruction in litter prevention and awareness." Slater Decl. Ex. 10 at 3–5. Each of these provisions are also enumerated in in La. R.S. § 3996(B).

## **LEGAL STANDARD**

"'[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.'" *La. State Conf. of NAACP v. Louisiana,* 490 F. Supp. 3d 982, 997 (M.D.

La. 2020) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)), *aff'd sub nom.*

*Allen v. Louisiana*, 14 F.4th 366 (5th Cir. 2021). In ruling on "a motion to dismiss for lack of

jurisdiction under Rule 12(b)(1), the Court may consider evidence outside the Complaint."

*Bourque v. Nat'l Flood Ins. Program*, 480 F. Supp. 3d 733, 736 (M.D. La. 2018); *see also*

*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Where, as here, Defendant's motion is

accompanied by supporting evidence external to the Complaint, it is appropriate for Plaintiffs to

submit their own evidence in opposition to the motion. *See, e.g.*, *Omega Hosp., LLC v. United*

*Healthcare Servs., Inc.*, 345 F. Supp. 3d 712, 722 (M.D. La. 2018).[10] The legal standard that

applies to Plaintiffs' Motion for Preliminary Injunction, ECF No. 20, is set forth on pages 6 and 7

of their memorandum supporting the motion.[11]

## ARGUMENT

In arguing that the Willow School Plaintiffs lack Article III standing to assert their claims

against OPSB, OPSB does not affirmatively dispute that Plaintiffs have properly alleged they will

incur cognizable injuries as a result of the Act's mandatory, permanent Ten Commandments

displays. Plaintiffs have, in fact, shown that they will suffer a "concrete and particularized,"

imminent "invasion of [their] legally protected interest[s]," *Lujan v. Defs. of Wildlife*, 504 U.S.

555, 560–61 (1992), under the Establishment Clause and the Free Exercise Clause of the First

Amendment.[12] Rather, OPSB contends, "Plaintiffs are not able to establish that any injury in fact

---

[10] All exhibits submitted by Plaintiffs are public records drawn from the official website of NOLA-PS or the OPSB's official BoardDocs page, *see generally* Slater Decl., and are appropriate for consideration by this Court. *See, e.g.*, *Young v. UOP LLC*, No. CV 21-282-SDD-EWD, 2024 WL 288985, at *16 (M.D. La. Jan. 25, 2024) (noting that "courts routinely take judicial notice of federal government websites" and that "printouts from government websites satisfy Rule 803(8)—the public records exception to the hearsay rule") (internal quotation marks omitted).

[11] Mem. in Support of Plaintiffs' Motion for Preliminary Injunction (hereinafter, "Pl. Br."), ECF No. 20-1.

[12] The declarations submitted by the adult Willow School Plaintiffs in support of Plaintiffs' preliminary-injunction motion detail the injuries that displays posted pursuant to the Act will inflict on them and their children. *See* Decl. of Joshua Herlands (ECF No. 20-15), ¶¶ 6, 12–14; Decl. of Gary Sernovitz (ECF No. 20-12), ¶¶ 8, 11–14; Decl. of Molly Pulda (ECF No. 20-13), ¶¶ 8, 11–15; *see also* Compl. ¶¶ 3, 165-170.

. . . is traceable to OPSB's actions and redressable by a favorable outcome to this lawsuit." Def. Br. at 9. As explained below, the express provisions of the Act, state charter-school laws, OPSB's own policies and practices, and the Willow School Charter Agreement make clear that Plaintiffs' injuries are fairly traceable to OPSB and redressable through an injunction against OPSB. In addition, because OPSB's brief covers only jurisdictional issues, it has waived all other arguments pertaining to Plaintiffs' preliminary-injunction motion, despite its unsupported assertion otherwise. *See* Def. Br. at 11, n.10.[13] Accordingly, OPSB's motion to dismiss should be denied and a preliminary injunction entered against OPSB.

## I.     Plaintiffs' Injuries Are Fairly Traceable to OPSB.

OPSB argues that BESE, "not local school boards such as OPSB, . . . is tasked to implement and enforce" H.B. 71. Def. Br at 11. But that position cannot be reconciled with the language of the Act, which provides that "each public[-]school governing authority shall display the Ten Commandments in each classroom in each school under its jurisdiction." *Supra* p. 2. OPSB is unquestionably a public-school governing authority, which it does not dispute. *See* Def. Br. at 6 (referring to the "obligations of 'each public-school governing authority' such as OPSB"). OPSB's own policies, meanwhile, repeatedly affirm that OPSB-authorized charter schools are "under its jurisdiction." *See supra* pp. 4–5. Thus, OPSB has a legal obligation to display the Ten Commandments in every classroom of every OPSB-authorized charter school, including the Willow School. To be sure, the Act also tasks BESE with implementing and enforcing the law by requiring BESE to "adopt rules and regulations in accordance with the Administrative Procedure Act to ensure the proper implementation of this Section." H.B. 71(B)(6)(a). This provision does

---

[13] This Court has recognized that the "failure to brief an argument in the district court waives that argument in that court." *Patton v. Air Prod. & Chemicals, Inc*., No. CV 22-00392-BAJ-RLB, 2024 WL 131362, at *5 (M.D. La. Jan. 11, 2024) (internal quotation marks omitted). OPSB's brief sets forth jurisdictional arguments relating to Plaintiffs' standing but fails to rebut the other arguments made by Plaintiffs.

not, however, relieve OPSB from the statutory mandate directed at public-school governing authorities.[14] The resulting, imminent harms to the students who attend those schools (and the injuries to their parents) are thus fairly traceable to OPSB.

Even if the Act did not impose on OPSB a direct duty of enforcement vis-à-vis charter schools, Plaintiffs' injuries would nevertheless be fairly traceable to OPSB. OPSB mistakes Article III's traceability prong for a proximate-cause requirement. *See* Def. Br. at 10 ("[A]ny alleged injury that Plaintiffs or their children may suffer from the display of the Ten Commandments while attending . . . the Willow School would not be caused by OPSB but by the public corporation[] that operate[s] th[e] school[]."). But "[t]racing an injury is not the same as seeking its proximate cause." *K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010). Therefore, "[t]he causation element does not require a party to establish proximate causation, but only requires that the injury be 'fairly traceable' to the defendant." *League of United Latin Am. Citizens v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011). As the Supreme Court has held, while "it does not suffice if the injury complained of is the result of the independent action of some third party not before the court, . . . that does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (alteration, internal citation, and quotation marks omitted).

In *Bennett*, for example, the Fish and Wildlife Service ("FWS") issued a biological opinion recommending that the Bureau of Reclamation take certain measures, including maintaining a minimum water level, to protect endangered fish in an Oregon lake. *Id.* at 159. Petitioners alleged

---

[14] Ordinarily, Louisiana's law exempting charter schools "from all statutory mandates or other statutory requirements that are applicable to public schools and to public school officers," La. R.S. § 17:3996(B), might obviate OPSB's duty to carry out the Act vis-à-vis its charter schools. However, Section 17:3996(B) carves out eighty-one provisions of law from that exemption, La. R.S. § 17:3996(B)(1)-(81), and as amended by H.B. 71, the Ten Commandments statute will now be the eighty-second item on that list. *See* H.B. 71 (amend. La. R.S. § 17:3996); *supra* p. 2.

that the recommendations would impede their access to the lake's water for irrigation, ranching, recreational, and other purposes. *Id.* at 160. Pointing to regulations that gave the Bureau, which was not a named defendant, "ultimate responsibility for determining whether and how a proposed action shall go forward," the FWS argued that any injury would be caused by the Bureau, not FWS. *Id.* at 168. The Court rejected that argument, however, explaining that the FWS had "wrongly equate[d] injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation." *Id.* at 168–69. The Court held that Petitioners' asserted injury was traceable to the FWS; although FWS's opinion "theoretically serves an 'advisory function,' . . . in reality it has a powerful coercive effect on the action agency." *Id.* at 169 (quoting 51 Fed. Reg. 19928 (1986)). Further, while the Bureau was "technically free to disregard the [b]iological [o]pinion and proceed with its proposed action," it would do so "at its own peril (and that of its employees)" who could be charged with civil and criminal penalties for "taking" an endangered species. *Id.* at 170. Given the "virtually determinative effect of [the FWS's] biological opinions," the Court concluded that the Petitioners had met their "relatively modest" traceability burden on a motion to dismiss. *Id.* at 170–71.

As in *Bennett*, OPSB wields a "powerful coercive effect" on its charter schools' compliance with legal requirements. Louisiana law, OPSB's policies, and its Charter School Operating Agreement establish that OPSB has the legal authority to ensure that charter schools' follow state and federal law, including the Act.

First, Louisiana law requires OPSB to monitor charter schools' compliance with both state law and the terms of OPSB's Charter School Operating Agreements. Louisiana R.S. § 17:10.7.1, which is cited in the Willow School Charter Agreement, Slater Decl. Ex 4, ¶ 7.2.1, provides: "Notwithstanding any law to the contrary, in order to support and protect the interests and rights

of the children it serves, the local superintendent shall . . . [m]onitor and require corrective actions by a charter school with respect to compliance with board policy, state law, or terms of the charter contract." La. R.S. § 17:10.7.1(F)(2). And Louisiana law further permits revocation of a Charter School Operating Agreement if a school violates the law or its charter contract: "A school charter may be revoked by the authority that approved its charter upon a determination by an affirmative vote of at least a majority of the local board membership . . . that the charter school or its officers or employees . . . [c]ommitted a material violation of any of the conditions, standards, or procedures provided for in the approved charter . . . [or] [v]iolated any provision of law applicable to a charter school, its officers, or employees." La. R.S. § 17:3992.[15]

Second, OPSB policy requires the school district to "oversee each charter school's compliance with its operating agreement, federal and state laws and regulations and School Board policy." *Supra* p. 5. Additionally, OPSB's Accountability and Charters Committee must "[a]ssure charter agreements compliance." *Id.* And the Charter School Operating Agreement with the Willow School and other charter schools repeatedly affirms that charter schools must follow the law. *Supra* pp. 5–6 & n.9

Third, OPSB monitors charter schools for compliance with the Operating Agreement and applicable laws, including numerous provisions of state law, from which charter schools are not exempt, as enumerated in La. R.S. § 17:3996(B).[16] *Supra* pp. 6–7. And when OPSB uncovers violations of the Operating Agreement or other violations of law, it takes corrective action, and

---

[15] A recent amendment to La. R.S. § 17:3992 offers another punitive measure: Local school boards may "reconstitute" a non-complying charter school's board instead of revoking the charter. La. S.B. No. 316, Act No. 172, amend. La. R.S. 17:3992(D) (May 23, 2024).

[16] As noted above, H.B. 71 has been added to La. R.S. § 17:3996(B)'s list of statutes with which charter schools must comply. *Supra* p. 2.

even reserves the right—as a matter of policy and as a matter of contract law—to deny or limit renewal of the charter or to revoke it entirely. *Id.*

In disclaiming authority over its charter schools, OPSB makes much of the autonomy and independence afforded to them by Louisiana law. But as state law and OBSP's policies and actions evince, charter schools do not have free rein to control every aspect of their operation and existence. Indeed, even a recently enacted measure that, according to OPSB, "underscore[s]" charter schools' independence, autonomy, and separate legal identity," Def. Br. at 5, recognizes the limits of such independence, stating: "'Autonomy' means that *unless mutually agreed upon by the chartering authority and charter school, or otherwise required or prohibited by law*, the charter school shall have independent operational decision[-]making authority . . .." La. S.B. No. 350, Act No. 334 (May 28, 2024) (emphasis added). OPSB omits this key text in quoting the statute.[17] *See* Def. Br. at 5.

Because OPSB exerts significant coercive control over its charter schools when it comes to compliance with the law, any compliance with the Act by OPSB's charter schools, including the Willow School, will be inextricably tied to, and a result of, that coercive control. Thus, charter schools' statutory independence in other spheres does not sever traceability under Article III standing. *See, e.g.*, *Tex. Med. Ass'n v. U.S. HHS*, No. 23-40217, 2024 WL 3633795, at *7 (5th Cir. Aug. 2, 2024) (holding that defendants "protest too much in relying on arbitrators' asserted independence to eliminate the traceability component of standing" where defendants' conduct had a "'determinative or coercive effect' on arbitrators sufficient to prove traceability") (quoting *Bennett*, 520 U.S. at 169)).

---

[17] Likewise, while OPSB has some degree of immunity for the actions of charter schools under its jurisdiction, Def. Br. at 4, that immunity is not without limits. It extends only to "civil liability" for "damages." La. R.S. § 17:3993(A). The immunity statute does not shield OPSB from judicial claims for injunctive or other equitable relief like those asserted here. *See id*.

**II.    Plaintiffs' Claims Against OPSB Are Redressable.**

For similar reasons, an injunction against OPSB will redress the Willow School Plaintiffs' injuries. The redressability prong for Article III standing is satisfied if it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bennett,* 520 U.S. at 167. "When establishing redressability, [a plaintiff] need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm." *Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014) (internal quotation marks omitted). An injunction will prohibit OPSB from carrying out its legal obligations—confirmed in state law, OBSP policy, and the Willow School Charter Agreement—to ensure that the school attended by three minor-child Plaintiffs complies with the Act. And, as set forth in state law, OBSP policy, and OPSB's Charter School Operating Agreement, OPSB has the plain authority and legal duty to ensure that the three minor-child Plaintiffs' school complies with federal law (as determined by this court) and any injunction entered against OBSP. Indeed, under the Willow School Charter Agreement any injunction entered against OPSB prohibiting the display of the Ten Commandments will automatically bind the school. *Supra* p. 6 (noting provision in Operating Agreement that "Charter School shall adhere to the requirements of any and all consent decrees and court orders imposed upon Charter School and/or OPSB"). Accordingly, even if OPSB is correct that charter schools have a "direct statutory obligation to comply with the Act separate and apart from the obligations of 'each public-school governing authority' such as OPSB," Def. Br. at 6, an injunction against OPSB will nevertheless remedy Plaintiffs' injury, and their claims are thus redressable.

### III.    <u>OPSB is Not a Redundant Defendant.</u>

Finally, citing no authority, OPSB contends that it should be dismissed as a defendant because its "involvement . . . is superfluous given the presence of the other defendants." Def. Br. at 11. This misconstrues the very limited reasons why courts sometimes dismiss defendants as redundant. For instance, a court might dismiss an individual defendant named in his official capacity where the plaintiff has already named the governmental body that the individual represents. *See, e.g., Perron v. Travis*, No. CV 20-00221-BAJ-EWD, 2021 WL 1187077, at *4 (M.D. La. Mar. 29, 2021) (dismissing official-capacity claims brought against some individual defendants because they were "legally redundant insofar as multiple Defendants currently represent the same entities"); *Felton v. City of Jackson*, No. 3:18CV74TSL-RHW, 2018 WL 2994363, at *2 (S.D. Miss. June 14, 2018) (holding that official-capacity claims against individual city employees were "superfluous" where city was also named as a defendant and dismissing those defendants who "simply stand in the shoes of" the city) (internal quotation marks omitted). Even in such instances, dismissal is discretionary. *See, e.g.*, *McHugh v. St. Tammany Par.*, No. CV 24-1300, 2024 WL 3161873, at *6–7 (E.D. La. June 25, 2024) (noting that "dismissing official-capacity claims as redundant is discretionary" and that "courts often decline" to do so). Here, OPSB does not "simply stand in the shoes" of the state Defendants. As a public-school governing authority, OPSB is charged with specific duties under the Act, and it has independent statutory obligations to oversee the charter schools under its jurisdiction. OPSB is, therefore, a proper defendant for the declaratory and injunctive relief sought by Plaintiffs.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that this Court deny OPSB's

motion to dismiss and issue a preliminary injunction against OPSB, as outlined in Plaintiffs'

Motion for Preliminary Injunction.

Date: Aug. 26, 2024

<div style="margin-left:40%;">

Respectfully submitted,

By: */s/ Charles Andrew Perry*
Charles Andrew Perry
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF LOUISIANA
Charles Andrew Perry
La. Bar No. 40906
PO Box 56157
New Orleans, LA 70156
(504) 522-0628
aperry@laaclu.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Daniel Mach*
Heather L. Weaver*
915 15th Street, NW, Suite 600
Washington, DC 20005
(202) 675-2330
dmach@aclu.org
hweaver@aclu.org

AMERICANS UNITED FOR SEPARATION OF
CHURCH & STATE
Alex J. Luchenitser*
1310 L Street NW, Suite 200
Washington, DC 20005
(202) 466-7306
luchenitser@au.org

FREEDOM FROM RELIGION FOUNDATION
Patrick C. Elliott*
Samuel T. Grover*
PO Box 750
Madison, WI 53701
(608) 256-8900
Patrick@ffrf.org
sgrover@ffrf.org

</div>

16

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood*
Janet A. Gochman*
Nicholas J. Prendergast*
Jordan T. Krieger*
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
Nicholas.Prendergast@stblaw.com
Jordan.Krieger@stblaw.com

* Admitted *Pro Hac* Vice

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 26, 2024, I caused a true and correct copy of the foregoing Memorandum, the accompanying Declaration of Chloe L.M. Slater, and the Exhibits thereto, to be served upon counsel of record as of this date by electronic filing.

*/s/ Charles Andrew Perry*
Charles Andrew Perry