# EXHIBIT 4

DocuSign Envelope ID: 7A830D25-F175-4C1F-BBFE-2CB5715C7594

CHARTER SCHOOL AGREEMENT


BETWEEN


ORLEANS PARISH SCHOOL BOARD


AND


ADVOCATES FOR ARTS-BASED EDUCATION CORPORATION

### TYPE 3 CHARTER SCHOOL OPERATING AGREEMENT BETWEEN

### ADVOCATES FOR ARTS-BASED EDUCATION CORPORATION
### AND THE ORLEANS PARISH SCHOOL BOARD

This Charter School Operating Agreement ("Operating Agreement" or "Agreement") is entered into by and between the ORLEANS PARISH SCHOOL BOARD, a political subdivision of the State of Louisiana, herein represented by Ethan Ashley, its President, duly authorized ("Authorizer" or "OPSB"), located at 2401 Westbend Parkway, Suite 5055, New Orleans, Louisiana 70114 and ADVOCATES FOR ARTS-BASED EDUCATION CORPORATION, a Louisiana Non-profit Corporation (hereinafter "Charter Operator"), herein represented by George Wilson, Jr., duly authorized, located at 5624 Freret Street, New Orleans, LA 70115 on behalf of Lusher Charter School (hereinafter "Charter School").  Authorizer and Charter Operator are each referred to singularly as "Party" and collectively as the "Parties."

### RECITALS

**WHEREAS**, the "Charter School Demonstration Programs Law," La. R.S. § 17:3971 et seq., authorizes the creation of innovative kinds of independent public schools for students; and

**WHEREAS**, the Louisiana Legislature has stated its intention that the best interests of at-risk students shall be the overriding consideration in implementing the provisions of the "Charter School Demonstration Programs Law;" and

**WHEREAS**, effective January 1, 2006, OPSB granted Charter School its original "Type 3" charter, and voted to renew said charter on January 18, 2011; and

**WHEREAS,** on December 8, 2020, pursuant to La. R.S. § 17:10.7.1, the OPSB Superintendent (hereinafter "Superintendent") submitted a recommendation to OPSB that Charter School's charter be renewed; and

**WHEREAS,** pursuant to La. R.S. § 17:10.7.1, the Superintendent may implement any such recommendation unless rejected by a two-thirds vote of the full membership of the OPSB no later than the first board meeting held after the meeting during which the recommendation was submitted; and

**WHEREAS,** the OPSB did not reject the recommendation by a two-thirds vote prior to or during the first board meeting held after submission of the recommendation.

**NOW, THEREFORE,** in consideration of the mutual covenants, representations, warranties and agreements contained herein, the Parties agree as follows:

# I. Establishment of School

1.1 **Parties.**

    1.1.1 The person authorized to sign on behalf of OPSB is the President of the Orleans Parish School Board or, in the absence of the President, the Vice-President.

    1.1.2 The person authorized to sign on behalf of Charter Operator is George Wilson, Jr. (the "Charter Representative"), who shall be an Officer of Charter Board.

1.2 **Charter.** Charter Operator shall operate a public charter school (the "Charter School") in Orleans Parish in accordance with this Operating Agreement and all applicable federal, state, and local laws, regulations, and policies. This Operating Agreement shall constitute Charter Operator's charter (the "Charter") and shall be binding on Charter Operator, Charter School, and OPSB.

1.3 **LEA Status.** Pursuant to La. R.S. §17:10.7.1, and in accordance with BESE Bulletin 126 and OPSB Policy HAC, *Local Education Agency Status*, a type 1, 3, or 3B charter school under OPSB's jurisdiction may be its own Local Education Agency ("LEA") for funding purposes and statutory definitions. Charter Schools' LEA Status and any requirements and obligations of said status shall be reflected in Appendix C, *School-Specific Terms*, and, where applicable, an OPSB LEA Agreement. In the event this Operating Agreement conflicts with the terms of an LEA Agreement between the Parties, the terms of the LEA Agreement shall govern.

1.4 **Effective Date and Term.** The term of this Operating Agreement shall be 10 years, commencing on July 1, 2021, and expiring on June 30, 2031, unless terminated or extended pursuant to the terms hereof.

1.5 **Incorporation by Reference.** The following documents shall be incorporated herein by reference: Initial Charter School Application and Renewal Application, if applicable; Charter Operator's Articles of Incorporation; Management Organization Contract, in accordance with Section 9.8 of this Agreement, if applicable; OPSB Policy Section H, *Charter Schools;* and OPSB Charter Accountability Framework ("CSAF").

1.6 **Appendices.** The following documents are attached hereto as appendices and shall be part of this Agreement: Appendix A, Resolution by Charter Operator's Board of Directors authorizing the Charter Representative to sign this Operating Agreement; Appendix B, *Privacy Compliance*; Appendix C, *School-Specific Terms*, and Appendix D, *Retirement System Election*.

1.7 **Board of Directors of Nonprofit Corporation.** Charter Operator's Board of Directors shall have final authority and responsibility for the academic, financial, and organizational performance of the School, and for the fulfillment of this Operating Agreement.

    1.7.1 Charter Operator's Board of Directors shall operate in accordance with adopted by-laws.

    1.7.2 Charter Operator's Board of Directors shall meet the member composition requirements of state law and OPSB Policy HA, *School Board Chartering Authority*.

1.7.3   Charter Operator shall at all times maintain itself as a Louisiana non-profit corporation and hereby certifies that all contracts obligating Charter Operator have been and shall be undertaken as such.  Failure to maintain its non-profit status and to act strictly as such shall be grounds for immediate termination of the Operating Agreement. Copies of all applications related to its seeking or maintaining 501(c)(3) status shall be provided to the Authorizer.

1.7.4   In accordance with La. R.S. § 17:3996, Charter Operator shall be subject to Louisiana Open Meetings Law (La. R.S. § 42:11, et seq., Public Records Law (La. R.S. § 44:1, et seq.), Code of Governmental Ethics (La. R.S. § 42:1101, et seq.), and Public Bid Laws for the erection, construction, alteration, improvement or repair of a public facility or immovable property, pursuant to Part II of Chapter 10 of Title 38 of the Louisiana Revised Statutes, and any other Louisiana law applicable to charter school governing boards.

## 1.8   Location and Facility.

1.8.1   Charter School is located at 5624 Freret Street, New Orleans, LA 70115 and 7315 Willow Street, New Orleans, LA 70118.  Charter Operator may move the location(s) of Charter School only after obtaining approval from OPSB in accordance with OPSB Policy HAA.

1.8.2   **OPSB Facility.**  OPSB has sole discretion regarding the assignment of school facilities under its control.  If the school is located at an OPSB-controlled site, the use of such site shall be subject to and governed by a Facilities Lease between the Parties and by OPSB policies relative to school assignments.

1.8.3   **Non-OPSB Facility.**  Charter School may occupy a non-OPSB-controlled facility.  The non-OPSB facility shall be located within the geographic boundaries of Orleans Parish.  The facility shall be inspected and approved by OPSB, in accordance with the OPSB Facility Procedures Handbook, prior to the effective date of this Agreement and shall remain at all times subject to OPSB monitoring for compliance with this Operating Agreement and applicable laws and regulations relating to health and safety.

1.8.4   **Maintenance.**  Charter Operator shall be subject to all rules and procedures set forth in the Facilities Lease, if applicable, OPSB Policy HD, *Charter Schools Facilities Management,* and the OPSB Facilities Procedures Handbook with respect to facility maintenance, and shall comply with all applicable local, state, and federal laws and codes regarding school facility maintenance and upkeep.

1.9   **Operational Autonomy.** Pursuant to La. R.S. § 17:10.7.1, and in order to ensure the appropriate level of autonomy to enable educators to successfully prepare students for success in college and career, the local school board shall not impede the operational autonomy of a charter school under its jurisdiction in the areas of school programming, instruction, curriculum, materials and texts, yearly school calendars and daily schedules, hiring and firing of personnel, employee performance management and evaluation, terms and conditions of employment, teacher or administrator certification, salaries and benefits, retirement, collective bargaining, budgeting,

purchasing, procurement, and contracting for services other than capital repairs and facilities construction.

# II. Educational Program

2.1    Charter Operator shall have control over and responsibility for delivery of the Educational Program and attainment of the academic performance standards as set forth in OPSB Policy HB, *Oversight and Evaluation of Charter Schools*, and the CSAF.  "Educational Program" means content and delivery related to student learning including, but not limited to, course curricula, course content and testing, instructional methods, instructional materials such as textbooks and online instructional materials, professional development, and course schedules.

2.2    Charter Operator shall have discretion to modify, amend, adapt and otherwise change the Educational Program as it deems necessary to achieve the academic performance standards subject to the following limitations:

2.2.1    Charter School shall be subject to and comply with all applicable requirements related to the state assessment and accountability system for public schools, pursuant to La. R.S. §§ 17:3996(A)(17) and 17:3996(B)(17-18).

2.2.2    Any changes to the school-specific elements identified in Appendix C, *School-Specific Terms*, shall constitute Material Amendments to the Operating Agreement, as defined in OPSB Policy HAA, *Charter School Operating Agreement,* and are subject to OPSB Policy HAA.

2.3    **School Performance.**  Authorizer shall evaluate Charter School's performance for purposes of contract extension, renewal, and revocation decisions, and other evaluations of performance, in conformity with the standards set out in the CSAF and OPSB Policy HB.  An annual review of Charter School's performance shall be conducted based on performance standards established by Authorizer.  Charter Operator acknowledges that the performance standards set forth in the CSAF are subject to change throughout the term of the Operating Agreement and agrees that Charter School is to be evaluated by standards in effect at the time of evaluation.  Authorizer shall provide Charter School reasonable advance notice, in writing, of any proposed changes to the performance standards, engage with Charter School on such changes, and provide Charter School an opportunity to provide feedback thereto prior to presentation to OPSB for approval.

2.4    **Pupil Progression Plan.**  Charter School shall adopt a Pupil Progression Plan consistent with Louisiana Board of Elementary and Secondary Education Bulletins 1566, 741 and 1706, and parish-wide enrollment system procedures, which shall not affect Charter School's programming autonomy as provided by La. R.S. § 17:10.7.1(G)(1).  Except as otherwise provided in the LEA Agreement, Charter School shall annually submit a copy of the Pupil Progression Plan to OPSB, along with a summary of changes, if any, in accordance with the timeline established in the Reporting Calendar, as specified in Section 5.2 of this Agreement.

2.5  **Students with Disabilities.**

2.5.1  Charter Operator shall comply with all applicable requirements of federal and state law and regulations concerning the education of students with disabilities, including, but not limited to the requirements of the Individuals with Disabilities Education Act (20 U.S.C. 1401 et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), the Americans with Disabilities Act (42 U.S.C. 12101 et seq.), and state law and regulations (La. R.S. § 17:1941 et seq.).

2.5.2  Special education services, related services, and accommodations for students who are eligible under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), the Americans with Disabilities Act ("ADA"), or any applicable provisions of state law, shall be provided as follows:

2.5.2.1  Charter School shall have an educational model for the delivery of special education services and/or accommodations for students with disabilities that complies with federal and state law and regulations.

2.5.2.2  Charter School shall have a special education coordinator who shall be responsible for monitoring individual case management of all students with disabilities, arranging the provision of services and/or accommodations required by their Individualized Education Program ("IEP") and/or 504 Plan, and ensuring Charter School is complying with all obligations regarding students with disabilities.  Charter School shall maintain documentation of its compliance with legal requirements regarding students with disabilities.

2.5.2.3  Charter Operator shall indemnify OPSB for any and all expenses imposed on OPSB, including attorney fees, and/or financial penalties imposed by state and/or federal authorities or legal judgments, arising out of actions or omissions of Charter School relating to compliance with legal requirements regarding students with disabilities.

2.5.2.4  OPSB shall indemnify Charter Operator for any and all expenses imposed on Charter Operator, including attorney fees, and/or financial penalties imposed by state and/or federal authorities or legal judgments, arising out of actions or omissions of OPSB relating to compliance with legal requirements regarding students with disabilities.

2.5.2.5  Charter Operator shall promptly report to OPSB any lawsuits, due process requests or complaints relating to the IDEA, Section 504, the ADA, or state law and regulations regarding students with disabilities lodged with any and all state or federal agencies.

2.6  **Gifted and Talented.**  Should Charter Operator choose to conduct evaluations and provide related services for gifted and/or talented students, it shall do so in accordance with all applicable state law and regulations.

2.7  **English Learners.**  Charter Operator shall be responsible for ensuring compliance with all state and federal laws and regulations applicable to the education of English Learners, including but not limited to the Every Student Succeeds Act (ESSA), Title VI of the Civil Rights Act of 1964 and the Equal Educational Opportunities Act of 1974 (EEOA).

## III.    Charter School Administration and Operation

**3.1    Recruitment, Admissions, Enrollment and Retention.**

3.1.1    Charter School is approved to enroll students in the grades indicated in Appendix C *School-Specific Terms*.  Pursuant to La. R.S. § 17:10.7.1(E)(7), Charter School shall enroll students, in any given year, according to enrollment projections and targets cooperatively established with Charter School, and may be required to enroll additional or fewer students throughout the school year as necessary.

3.1.2    Charter School is prohibited from establishing requirements related to admissions, readmissions, or enrollment/registration unless Charter School is authorized to do so pursuant to La. R.S. § 17:3991, and OPSB Policy HA, and such admissions requirements are in compliance with state law and specifically identified in Appendix C, *School Specific Terms*.

3.1.3    Student recruitment, admissions, enrollment and retention decisions shall be made in a nondiscriminatory manner and without regard to race, color, creed, ethnicity, national origin, gender, sexual orientation, gender identification or expression, marital status, religion, ancestry, disability, income level, athletic ability, proficiency in the English language, or need for special education services, except as permitted by state law, OPSB Policy or this Agreement.

3.1.4    Charter School shall participate in the parish-wide enrollment system and student expulsion process approved by OPSB, and shall adhere to all policies and procedures of such systems.

**3.2    Parent / Guardian Communications.**

3.2.1    **Website.**    Charter School shall maintain a website that complies with the minimum applicable requirements of federal, state, and local laws and regulations.

3.2.2    **Student Handbook.**    Charter School shall develop and implement a Student Handbook, and shall disseminate the Student Handbook to students and/or parents or guardians each school year.  The Student Handbook shall include, but not be limited to Charter School's Student Code of Conduct, Complaint Policy, and Discipline Management Plan, each of which shall be in compliance with applicable federal and state laws, and BESE regulations.  Charter School's Student Handbook shall be submitted to OPSB and posted to Charter School's website in accordance with timelines and procedures established by OPSB.  Charter School may be evaluated based on compliance with the provisions of Charter School's Student Handbook.

3.2.3    **Complaint Policy.**    Charter School shall implement and maintain a complaint policy to receive and handle complaints brought against Charter School and/or Charter Operator.  The Complaint Policy shall be included in Charter School's Student Handbook.  The complaints process implemented by Charter School shall be consistent with applicable law and due process.

3.2.3.1 OPSB shall implement and maintain a complaint process that ensures that complaints are directed to Charter School for resolution in accordance with Charter School's complaint policy prior to being considered by OPSB. In the event that a complaint is subsequently submitted to OPSB, OPSB may request and Charter School shall provide information regarding Charter School's actions in responding to such complaints.

3.2.3.2 To the extent that complaints received by OPSB about Charter School may trigger corrective action, pursuant to Section 5.1 of this Agreement, including revocation or non-renewal of this Operating Agreement, OPSB may monitor Charter School's handling of such complaints. In such cases, OPSB may request, and Charter School shall provide, information regarding Charter School's actions in responding to such complaints.

3.3 **Non-Retaliation.** Charter School shall not retaliate in any manner against an employee, parent or legal guardian, or student who raises a suspected violation of law, cooperates in inquiries or investigations, or identifies potential violations to Charter School, Charter Operator, OPSB, the Louisiana Legislative Auditor and/or Board of Ethics, or any other appropriate governmental agency.

3.4 **Transportation.** Charter Operator shall be responsible for ensuring the provision of free and adequate transportation to all students residing in Orleans Parish more than one mile from the school's physical location, in accordance with applicable state law and OPSB Policy Section HA, and consistent with applicable federal law. Any transportation service agreements with third parties shall be entered into directly between Charter Operator or Charter School and its transportation provider. OPSB shall not be a party to any such agreements.

3.4.1 In accordance with OPSB Policy HA, transportation shall include, at a minimum:

3.4.1.1 Whatever transportation is necessary to implement any IEP for a child with an identified exceptionality, without regard to how far the child resides from the School;

3.4.1.2 Free transportation by a vehicle approved for student transportation, in accordance with the provisions of BESE Bulletin 119, for students enrolled in grade six (6) or below who reside more than one mile from Charter School, except as otherwise provided in OPSB Policy HA(10)(C)(2) for charter schools with academic admissions requirements; and

3.4.1.3 Free transportation, free public transportation payments and/or reimbursements for students enrolled in grade seven (7) or above who reside more than one mile from the school.

3.5 **Emergency Preparedness.** Charter School shall annually submit to OPSB an emergency preparedness plan for natural disasters and threats of violence to students, staff and faculty in accordance with timelines established in the Reporting Calendar, as specified in Section 5.2 of this Agreement.

# IV.    School Finance

4.1    Charter Operator shall control and be solely responsible for the sound financial management and performance of Charter Operator and Charter School.

4.2    **School Funding and Eligibility.**  Charter School shall receive a per pupil amount each year in accordance with La. R.S. §§ 17:10.7.1 and 17:3995 ("MFP Funds") and OPSB policies established in accordance therewith.  Funds from OPSB shall be distributed to Charter School monthly, on or before the 25th day of each month.

4.2.1    The provisions of La. R.S. § 17:3995 that permit the calculation of the MFP Funds for charter schools to exclude any portion of local revenues specifically dedicated to capital outlay or debt service, shall apply to Charter School's funds only to the extent that Charter School students are housed in an OPSB-controlled facility.

4.3    In addition to the above, pursuant to La. R.S. §17:3995(C), and subject to the limitations of this section, Charter Operator shall be eligible to receive any state and federal funds for which it or its pupils qualify.

4.4    **OPSB Withholding.**  OPSB may withhold an administrative fee of up to 2% of MFP Funds, in accordance with La. R.S. § 17:3995(A)(4).  If Charter School is its own LEA, this withholding shall be inclusive of any MFP Funds withheld by the Louisiana Department of Education from OPSB in accordance with such LEA designation, as permitted by La. R.S. § 17:3995(A)(4)(a)(ii).

4.4.1    Should the State Legislature change the amount of the administrative fee, OPSB may withhold the maximum administrative fee permitted by law, which may be implemented in equal increments over a three-year period.

4.4.2    On or before June 1st of each calendar year, OPSB shall provide Charter Operator a projected budget with line item details of anticipated administrative costs that shall be funded by the administrative fee. An itemized accounting shall be provided by OPSB to Charter School at the end of each fiscal year in accordance with state law (currently La. R.S. § 17:3995(A)(4)(c)).

4.4.3    Should an itemized accounting provided by OPSB pursuant to Section 4.4.2 demonstrate that OPSB has not utilized the entire administrative fee in the previous year, OPSB may reimburse Charter Operator the unused amounts and/or lower the percentage to be withheld for the following fiscal year.

4.5    **Qualified and Competent Business Professional.**  Charter Operator shall retain a Qualified and Competent Business Professional who meets or exceeds the minimum requirements and qualifications specified by state law and regulations, including but not limited to BESE Bulletin 1929, the *Louisiana Accounting and Uniform Governmental Handbook*, to produce all financial and accounting information and reporting required by this Agreement, state law, and BESE policy and regulation, except the required annual audit, which shall be performed by a Louisiana licensed Certified Public Accountant.

4.6    **Charter Operator Financial Obligations.**    Unless otherwise provided for in an LEA Agreement, Charter Operator shall be responsible for meeting all financial obligations under this Operating Agreement and applicable federal and state law, including but not limited to the provision of transportation, English-language learners (ELL) services and services and/or accommodations for students with disabilities, with the funds received in accordance with Section 4.2 of this Operating Agreement and any other federal, state, or local funds available to Charter Operator for these purposes.  Nothing in this Operating Agreement shall obligate OPSB to provide Charter Operator with any funds not referenced in Section 4.2 herein, and in no instance shall OPSB be obligated to subsidize the cost of Charter Operator's financial obligations beyond the federal, state, or local funding allocated to Charter Operator for such obligations.

4.7    **School Tuition and Fees.**    Charter School shall not charge any student tuition, except pre-kindergarten tuition, in accordance with OPSB Policy HA.  Charter School shall not charge a fine of any kind, or an attendance fee for any regular course offering or credit-bearing course (including electives), except as otherwise provided by state or federal law.  Any fee that is otherwise permitted by law shall be subject to a waiver process created by Charter School that considers individual family circumstances. Charter School shall not condition student enrollment, registration, earning of credit, or receipt of grades on the payment or nonpayment of fees.

   4.7.1    Charter School shall maintain an updated fee schedule on its website, which schedule shall specify which fees are mandatory and which fees are optional.

4.8    **Non-appropriation.**    The continuation of this Operating Agreement is contingent upon a legislative appropriation or allocation and distribution of the Minimum Foundation Program formula funds.  If the legislature fails to appropriate these funds, or if such appropriation is reduced by the veto of the Governor or by any means provided in the appropriations act, and the effect of such reduction is to provide insufficient monies for OPSB to satisfy its obligations under this Operating Agreement, OPSB may terminate the Operating Agreement on the date of the beginning of the first fiscal year for which funds are not appropriated.  No liability shall accrue to OPSB in the event this provision is exercised.  OPSB shall not be obligated or liable for any future payments or for any damages as a result of termination under this paragraph.

4.9    **Charter Operator Debt.**    Pursuant to La. R.S. § 17:3993, Charter Operator and Charter School are solely responsible for all debt they incur, and OPSB shall not be contractually bound to any creditor on behalf of the Charter Operator or Charter School.

4.10    **Regulated Funds.**    For any grant funds for which OPSB serves as fiscal agent for which there are associated regulatory requirements, Charter Operator shall comply in full with any corrective action plans or remedies required by OPSB or the granting entity.

4.11    **Shared Services.**    Consistent with La. R.S. § 17:3995(A)(4)(b), the Parties may enter into a separate shared services agreement ("Shared Services Agreement") or agreements for the direct purchase of specific services, which are separate and apart from any administrative actions

performed by OPSB and covered by the administrative fee set forth in La. R.S. § 17:3995(A)(4)(a)(i). Such services shall be provided to Charter School at the actual costs incurred by OPSB, including the costs of administration of such services.

# V. Transparency and Accountability

5.1 **Oversight Authority.** Pursuant to La. R.S. § 17:10.7.1, OPSB has authority to monitor and require corrective actions by Charter School, in accordance with state law and OPSB Policy Section HB.

5.2 **Charter School Reporting Requirements.** On or before July 1 each year, OPSB shall provide Charter School with a Charter School Reporting Calendar ("Reporting Calendar"), as well as related report templates, where applicable, for all reports necessary for receipt by OPSB. OPSB shall endeavor to make the Reporting Calendar complete and shall notify Charter School promptly of any changes to the Reporting Calendar and/or templates. Charter School shall be responsible for submitting timely and complete reports to OPSB in accordance with the Louisiana Department of Education's Charter School Fiscal Oversight Policy, the Reporting Calendar, Charter School's LEA Status Agreement, and all applicable state and federal laws and policies.

5.3 **Student Data.**

5.3.1 Pursuant to La. R.S. § 17:3914(F)(1), this Agreement shall be considered a contract between the Charter Operator and OPSB for student and education services, including, but not limited to educational and related services provided by the Charter School and citywide and oversight services provided by OPSB. Accordingly, Charter School and OPSB agree to share student information for such purposes. The Parties' use and possession of student data is in accordance with La. R.S. § 17:3914(F)(1). The Parties shall each comply with all federal, state, and local laws and policies related to ensuring the privacy, security, and confidentiality of such student data, including but not limited to the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C.A. 1232g, and La. R.S. §§ 17:3913 and 17:3914.

5.3.1.1 The Parties agree that the exchange and sharing of student personally identifiable information, between each party, or with any other third party, shall be conducted in accordance with Appendix B, *Privacy Compliance*, and all federal and state laws and regulations related to ensuring the privacy, security, and confidentiality of such student data, including but not limited to the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C.A. 1232g, and La. R.S. §§ 17:3913 and 17:3914.

5.3.2 If Charter School is authorized to conduct a selective admissions process, pursuant to Appendix C, *School Specific Terms*, it shall make available to OPSB for its records and review such demographic information as it collects related to its applicant pool and its admission results.

5.4    **Production of Data.**

5.4.1    Charter Operator shall produce all data, records, documentation and information requested by OPSB within three (3) business days of a request or other time period agreed to by the Parties, in accordance with Section 5.3.1.1 of this Agreement.  Such request shall provide reasonable specificity regarding the data, records, documentation or information being sought. The production of documents requested pursuant to this provision shall be distinguished from requests for documents made during site visits as set forth in Section 5.12 herein.

5.4.2    Charter Operator shall not withhold requested data, records, or documentation from OPSB except to the extent afforded confidentiality or privilege under applicable law.

5.5    **Transfer of Records.** Charter Operator shall provide for the transfer of the education records in accordance with the provisions of La. R.S. §17:112, including special education records, of any student who was enrolled at the school upon the written request of any authorized person on behalf of an educational facility within or outside of the state of Louisiana, where the student has become enrolled or is seeking enrollment.

5.6    **Meetings.**

5.6.1    **Charter Board Meetings.**  Charter Operator's Board of Directors shall comply with all applicable provisions of the Louisiana Open Meetings Laws, including with regard to the scheduling of Charter Board meetings, meeting agendas, public notice of meetings, records of those meetings, and the posting of information on its website.

5.6.1.1 Charter Operator shall annually provide to OPSB a written schedule of meetings of its Board of Directors for that school year according to the timeline established in the Reporting Calendar, and Charter Operator shall notify OPSB promptly of any modifications to such schedule.

5.6.1.2 Charter Operator shall provide all public documents and reports related to Charter School operations to OPSB, as reasonably requested by OPSB, with the exception of any documents that are privileged, confidential, or provided in executive session.

5.6.2    **Training Sessions and Meetings.**  Charter School's representative(s) shall attend all training sessions mandated by Authorizer, the State Board of Elementary and Secondary Education, and the State and Federal Departments of Education.

5.6.2.1 OPSB shall annually provide Charter School a schedule of regularly scheduled and reasonably anticipated meetings and training sessions at which Charter School's attendance shall be required. Any meetings or training sessions not provided for on the annual schedule shall be reasonably noticed.

5.7    **Test Monitoring.**

5.7.1    OPSB may, without advance notice and at its sole discretion, assign test monitors for assessments required by the state and district accountability systems. Such test monitors shall be granted access to the facility, classrooms, and testing materials, as permitted by state law

and regulations and in accordance with written procedures provided to Charter School by OPSB. Such monitors shall not disrupt the Charter School's testing environment nor distract students.

5.7.2   For tests required by state and district accountability systems, Charter School shall provide for independent test monitoring from a third-party entity approved by OPSB in accordance with OPSB Policy HA.

5.8   **Financial Reports.**   Charter Operator shall prepare and deliver the following reports to Authorizer in accordance with the procedures and timelines established in the Reporting Calendar specified in Section 5.2 of this Agreement:

5.8.1   An independently audited financial report for Charter Operator, to be conducted annually by a certified public accountant in accordance with the provisions La. R.S. §§ 24:513 *et seq.* and 17:3996(F), and the standards set forth in the CSAF.   The costs of such audit shall be borne by Charter Operator;

5.8.2   Quarterly Financial Statements consistent with the Reporting Calendar and the Louisiana Department of Education's Charter School Fiscal Oversight Policy and the Reporting Calendar, as applicable;

5.8.3   Charter School's annual operating budget; and

5.8.4   Any other financial and/or operational reports relating to Charter School that may be required under applicable state law or regulations, by the Louisiana Department of Education, or as shall be reasonably required by Authorizer.

5.9   **Enrollment Information.**   Charter School shall submit projected, current, and final student enrollment and attendance information in accordance with reporting requirements from the Louisiana Department of Education and the parish-wide enrollment process.

5.10   **External Reporting.**   Charter School shall be responsible for additional reporting as required for compliance with state, federal and other external reporting requirements.   Charter School shall submit a copy of any reports submitted under this section to OPSB upon request.

5.11   **Inspection.**   All financial records of Charter School pertaining to the management and operation of the School are subject to inspection and production, upon reasonable notice, as required for fulfillment of OPSB's fiduciary responsibilities and as part of the charter school monitoring process for financial performance.

5.12   **Site Visits.**   Charter School shall permit Authorizer and representatives of Authorizer to visit the school site, at Authorizer's discretion and at any time, to inspect operations and performance and to ensure compliance with all applicable laws and regulations, the terms of this Agreement, and the terms of state and federal grants.   Authorizer shall endeavor to provide prior notice of such visits as is reasonably practicable.   When such notice is not reasonably practicable, Authorizer shall provide Charter School with written reasons after such site visit, upon request.   During such site visits, the Charter Operator shall allow the visiting officials full and immediate access to its

on-site financial and educational records, reports, files, and documents of any kind on site, whether in electronic form or hard copy, except to the extent that such records are afforded privilege under applicable law.

5.13  **Assets.**  Charter School shall take all necessary precautions to safeguard assets acquired, in whole or in part, with public funds.

5.13.1  If the Charter is revoked, non-renewed, surrendered, or otherwise terminated:

5.13.1.1  Any assets acquired in whole or in part with public funds shall be deemed to be the property of OPSB; and

5.13.1.2  Any assets acquired wholly with private funds shall be disposed of, or otherwise managed, by Charter Operator consistent with Louisiana law.

5.13.2  If Charter Operator's records fail to establish whether an asset was acquired with the use of private funds, the assets shall be deemed to be the property of OPSB.

5.14  **Notification.**

5.14.1  Charter Operator shall notify Authorizer in a timely manner of any conditions that shall cause Charter Operator to violate the terms of this Operating Agreement, state or federal law or regulations, or OPSB Policy.

5.14.2  Charter Operator shall notify OPSB immediately of any circumstance requiring the temporary or permanent closure of Charter School.

5.14.3  Charter Operator shall notify OPSB, within 1 business day of becoming aware, of the arrest of any members of Charter Board or Charter School's employees, contractors, subcontractors, or any person directly or indirectly employed by Charter Operator for a crime listed in La. R.S. § 15:587(1)(C) or any crime related to the misappropriation of funds or theft.

5.14.4  Charter Operator shall notify OPSB of its default on any obligation, which shall include debts for which payments are past due by sixty (60) days or more, unless Charter Operator has disputed the obligation and such dispute is being resolved in good faith.

5.14.5  Charter Operator shall notify OPSB of any change to the Charter Board of directors, its signing authority, its corporate legal status, or any change in its standing with the Louisiana Secretary of State's Office, according to the requirements of OPSB Policy HA.

5.14.6  If Charter Operator has contracted with a management organization, pursuant to Section 9.8 of this Agreement, and such contract is terminated or not renewed, it shall provide written notification to OPSB within two (2) business days stating the reasons for the termination of the relationship.

5.14.7  Charter Operator shall notify OPSB of any change to its Certified Public Accountant or its Qualified Business Professional within thirty (30) days.

5.14.8  Charter Operator shall notify OPSB immediately if at any time Charter Operator or Charter School receives notice that either Charter Operator or Charter School and OPSB are parties to a legal action concerning Charter School.

5.14.9  Authorizer shall notify Charter Operator immediately of any formal complaints received by Authorizer about Charter Operator and/or Charter School or its operation, including but not limited to complaints filed with the Louisiana Department of Education, the Office for Civil Rights, Louisiana Commission on Human Rights, and Equal Employment Opportunity Commission, and/or complaints lodged by any party with Authorizer.

5.14.10 Charter Operator shall notify Authorizer immediately of any formal complaints concerning Charter School received by Charter Operator or Charter School from a government agency or office, including but not limited to complaints filed with the Louisiana Department of Education, the Office for Civil Rights, Louisiana Commission on Human Rights, and Equal Employment Opportunity Commission.

5.14.11 Authorizer shall notify Charter Operator and Charter School, in writing, of any proposed changes to the CSAF or OPSB policies affecting Charter School, Charter Operator, or any obligations under this Agreement. Authorizer shall engage with Charter School on such changes, and provide Charter School an opportunity to present feedback thereto prior to presentation to OPSB for approval.

5.14.12 Authorizer shall notify Charter School if Authorizer determines that Charter School's response to any request for information or information provided in an attempt to satisfy any reporting obligations under this Operating Agreement is insufficient or inaccurate. Charter School shall provide supplemental information to satisfy its reporting obligations within five (5) business days of request or as soon as practicable.

## VI.    Personnel.

6.1  **Employment Matters.**  In compliance with state law, Charter Operator shall employ necessary personnel. It shall implement a personnel policy that addresses such issues as hiring of personnel, terms of employment, and compensation. The parties agree that teachers and other staff employed by Charter Operator are not employees of OPSB, and that Superintendent and OPSB staff are not employees of Charter Operator.

6.2  **Collective Bargaining.**  The provisions of any collective bargaining agreement entered into by OPSB shall not apply to Charter Operator. The provisions of any collective bargaining agreement entered into by Charter Operator shall not apply to OPSB.

6.3  **Qualified Staff.**  Charter School shall employ or otherwise utilize only those individuals who are qualified in accordance with applicable federal and state law, rules, and regulations.

6.4  **Evaluations.**  Charter School shall comply with all state mandated requirements for personnel evaluations.

6.5  **Criminal History Review.**  Charter Operator shall adhere to all applicable federal, state, and local laws, regulations, and policies concerning criminal history review of board members, employees and subcontractors, as well as persons associated with Charter School who are engaged in direct processing of Charter School funds.  All costs associated with the criminal history review shall be the responsibility of Charter Operator, although Charter Operator may assign the responsibility to pay for those costs to those persons undergoing the criminal history review.

# VII.   Charter Renewal, Revocation/Termination and Closure

7.1  **Renewal.**  Upon application by Charter Operator, Charter School shall be considered for renewal prior to the expiration of this Operating Agreement, according to the procedures established in OPSB Policy HB, pursuant to La. R.S. §§ 17:10.7.1 and 17:3992, as applicable.

7.2  **Revocation.**

7.2.1  Pursuant to La. R.S. § 17:3992(C), OPSB may revoke the Charter at any time, in accordance with La. R.S. § 17:10.7.1 and the procedures set forth in OPSB Policy HB upon a determination that Charter School or its board members, officers or employees did any of the following in connection with the operation of Charter School:

7.2.1.1 Committed a material violation of this Operating Agreement;

7.2.1.2 Failed to meet or pursue within the agreed timelines the academic and other educational results specified in this Operating Agreement;

7.2.1.3 Failed to meet generally accepted accounting standards of fiscal management;

7.2.1.4 Committed an egregious and/or consistent violation of federal, state or local laws or OPSB policies;

7.2.1.5 Grossly mismanaged public funds;

7.2.1.6 Committed financial malfeasance;

7.2.1.7 Failed to retain and maintain adequate facilities;

7.2.1.8 Failed to sustain student enrollment sufficient to meet financial obligations; or

7.2.1.9 Failed to open Charter School within twenty-four months after execution of this Operating Agreement, unless granted an extension by OPSB.

7.2.1.10 Failed to timely execute an LEA Agreement mutually agreed to with OPSB at any time during the charter term, where Charter School is a part of OPSB's LEA

7.2.1.11 Failed to protect the health, safety, and/or welfare of students.  In such a case, this Operating Agreement may be immediately suspended upon a determination that the health, safety, and/or welfare of students is threatened, in accordance with OPSB Policy HB.

7.2.2  In any instance where revocation or termination is deemed warranted by OPSB, the procedures required by OPSB Policy HB, pursuant to La. R.S. §§ 17:10.7.1 and 17:3992,

shall be followed, which shall require, at a minimum: written notice of the reasons for the proposed revocation or termination and the opportunity for Charter Operator to respond at a School Board meeting prior to OPSB revoking this Operating Agreement.

**7.3   School Closure.**

7.3.1   In the event that Charter School should permanently cease operations for any reason, including termination of this Operating Agreement, surrender, revocation, non-renewal of the Charter, and where such cessation of operations will ultimately result in the dissolution of Charter Operator in accordance with La. R.S. § 12:250, *et seq*., the following procedures shall apply:

7.3.1.1 Charter Operator shall undertake a dissolution of Charter Operator in accordance with specific requirements and timelines set forth in La. R.S. § 12:250, *et seq*. OPSB shall become a claimant in such proceedings and shall receive all funds allocated to OPSB through this process.

7.3.2   In the event that Charter School should cease operations due to termination of this Operating Agreement, surrender, revocation, non-renewal of the Charter, and where such cessation of operations will not ultimately result in the dissolution of Charter Operator, the following procedure shall apply:

7.3.2.1 Charter Operator will retain all property purchased solely with private funds.

7.3.2.2 All other property of Charter School shall immediately become the property of OPSB upon termination of this Agreement.

7.3.3   Upon Charter Operator's receipt of written notice of termination, and throughout the period of Charter School operation between the notice of termination and school closure, if any, Charter Operator shall:

7.3.3.1 comply with applicable provisions of this Agreement and federal and state law and perform all obligations necessary thereto,

7.3.3.2 designate a representative of Charter School who shall retain responsibility for the security of and access to all Charter School records, including student records,

7.3.3.3 preserve and secure Charter School records, including student records, and transfer such records to OPSB, as permitted by this Agreement and federal and state law;

7.3.3.4 fully cooperate with OPSB, who shall have unrestricted and equal access to Charter School records, upon reasonable notice to Charter School, including student records during the period prior to the closure of Charter School, except to the extent that such records are afforded confidentiality or privilege under applicable law;

7.3.3.5 assist in enrollment of students in appropriate schools; and

7.3.3.6 manage all financial records consistent with OPSB's school closure requirements and procedures.

7.3.4   Upon taking possession of Charter School records, OPSB shall fulfill any and all statutory and contractual duties concerning Charter School records.

7.3.5 OPSB shall not be further obligated to pay any additional local funds to Charter Operator from the date of termination of this Operating Agreement.

7.3.6 Any public funds allocated to or for the operation of Charter School remaining in Charter Operator's possession after paying all debts, settlements, and obligations of Charter School shall be remitted to OPSB no later than thirty (30) days after payment. Any furniture and movable property purchased with public funds shall be delivered or made available to OPSB within sixty (60) days of the final day of school for students.

7.3.7 Pursuant to La. R.S. § 17:3993, OPSB shall not be liable for Charter School's unpaid debts.

7.4 **Emergency Closure.** In accordance with La. R.S. § 10.7.1, Charter School agrees to temporarily close, dismiss students, or evacuate in the event that the Superintendent requires it, due to credible threats of terror, or an official state of emergency is declared for the area in which any school under the board's jurisdiction is located.

# VIII. Insurance and Surety

8.1 Charter Operator shall provide and maintain, or cause to be maintained, such insurance that shall protect Charter School from claims under Worker's Compensation Acts, including but not limited to the Louisiana Workers' Compensation Act, and any other claims for damages or personal injuries including death that may arise from operations under this Operating Agreement, whether such operation be by Charter School directly or by any contractor, subcontractor, or by anyone directly or indirectly employed by either of them. Without limiting any obligations or liabilities of Charter Operator under this Operating Agreement, Charter Operator shall provide and maintain during the course of this Operating Agreement, at its sole cost and own expense, without reimbursement, minimum insurance coverage as follows:

8.1.1 Worker's Compensation: as required by state law with statutory limits and also minimum Employers Liability limits of $1,000,000.

8.1.2 Commercial General Liability: $1,000,000 per occurrence; $2,000,000 general aggregate.

8.1.3 Business Automobile Insurance covering all owned, hired, and non-owned vehicles of Charter School: $1,000,000 combined single limit.

8.1.4 Educators Legal Liability Insurance and Directors & Officers Insurance: $1,000,000.00 per occurrence/annual aggregate, subject to a maximum deductible not to exceed $100,000.00 per claim.

8.2 In the event that Charter School is located in a non-OPSB-controlled facility, Charter School shall obtain or cause to be obtained property insurance for buildings being used to fulfill the purposes of this Operating Agreement and any contents purchased by Charter School with state or federal funds. The property insurance obtained by Charter School shall provide OPSB with the ability to file a claim for any loss of property purchased with state or federal funds.

8.3    Charter Operator shall deposit duly executed certificates evidencing such types and limits of insurance (which shall evidence the insurer's waiver of subrogation of general liability, auto, and workers' compensation claims against OPSB and provide that notice of cancellation shall be provided to OPSB in accordance with policy provisions) with OPSB's Office of Risk Management on or before the Commencement Date of this Agreement and upon renewals of such policies, not less than thirty (30) days following renewal of the policy.

8.4    All companies providing insurance required by this Agreement shall be licensed to do business in the State of Louisiana and shall meet the minimum financial security requirements as set forth herein.  Companies providing insurance under this Agreement shall have a current A. M. Best's Rating not less than A- and an A.M. Best's Financial Size Category not less than VI.

8.5    OPSB shall be named as an Additional Insured for ongoing and completed operations under the commercial general liability insurance and as an additional insured for business automobile insurance required by this Agreement.  Confirmation of this shall appear on all Certificates of Insurance and by endorsement to any and all applicable policies.

8.6    Charter Operator shall promptly report to OPSB any and all pending, reported, or written claims or charges that may trigger OPSB insurance coverages, and promptly provide OPSB's general counsel and risk manager with all notices of such claims, cooperate fully with OPSB in the defense of any such claims asserted against OPSB, its board members, agents or employees arising from or related to the operation of Charter School, and comply with the defense and reimbursement provisions of OPSB's and Charter Operator's applicable insurance policies.

## IX.    Contract Construction

9.1    **Entire Agreement.**  The Parties intend this Operating Agreement, including all attachments and exhibits, to represent a final and complete expression of their agreement, which shall be considered the Agreement.  The Parties recognize that amendments to this Agreement may be approved from time to time hereafter.  The parties further recognize that amendments to this Agreement may be effective as set forth in paragraph 9.10.1 herein.

9.2    **Authority.**  Each Party represents and warrants that they have full power and lawful authority to execute this Agreement and that the person executing this Agreement has been duly authorized to do so on behalf of such Party.

9.3    **Notice.**  Any notice required or permitted under this Operating Agreement shall be in writing and shall be effective immediately upon personal delivery, subject to verification of service or acknowledgment of receipt, or three (3) business days after mailing when sent by certified mail, postage prepaid, or one (1) business day after being sent by commercial overnight courier, in each case to the following:

| **Orleans Parish School Board:** | **Charter Operator:** |
|---|---|
| Superintendent | Kathy Riedlinger |
| Orleans Parish School Board | 5624 Freret Street |
| 2401 Westbend Parkway | New Orleans, LA 70115 |
| Suite 5055 | |
| New Orleans, Louisiana 70114 | With copy to: |
| | |
| With copy to: | Board President George Wilson, Jr. |
| | Advocates for Arts-Based Education |
| Board President | 5624 Freret Street |
| 2401 Westbend Parkway | New Orleans, LA 70115 |
| Suite 5055 | |
| New Orleans, Louisiana 70114 | And copy to: |
| | |
| And copy to: | James Brown (Liskow Lewis) |
| | 701 Poydras Street, Ste. 5000 |
| General Counsel | New Orleans, LA 70139 |
| 2401 Westbend Parkway | |
| Suite 5055 | |
| New Orleans, Louisiana 70114 | |

9.3.1  Charter Operator shall provide written notification to OPSB of any changes in the identity of the School Leader, Board President, or Board Counsel to ensure that notifications are provided to the proper representatives during the term of the Operating Agreement.

9.4  **Dispute Resolution.**  In the event of a dispute between Charter Operator and OPSB regarding the terms of this Operating Agreement or any other issue regarding the relationship between Charter Operator and OPSB, the Parties shall notify the other, in writing, of the specific disputed issue(s), and the Parties shall submit the dispute to mediation in New Orleans, Louisiana with a mediator jointly selected by the Parties.  If the disputes are not resolved through mediation after forty-five (45) days of written notification of the dispute, or other agreed upon time frame, the parties may proceed to pursue legal remedies to which they may be entitled under the law. The Parties will make a good faith attempt to resolve the dispute in mediation.

9.5  **Indemnification and Acknowledgments.**

9.5.1  Charter Operator shall defend, indemnify, and hold harmless OPSB, its officers, directors, agents, employees, partners, and subcontractors (collectively referred to as "OPSB Indemnitees") from any and all claims, demands, suits, actions, proceedings, losses, costs, judgments, damages or other forms of liability to third parties, of every kind and description, actual or claimed, including but not limited to attorneys' fees and/or litigation expenses, including, but not limited to injury to property or persons (including, but not limited to civil rights violations), occurring or allegedly occurring, in connection with the operation of Charter School from conduct committed or omitted, or alleged to have been committed or

omitted by Charter School or by its employees or agents, during the term of this Operating Agreement or any renewal thereof, which may be brought or made against or incurred by OPSB on account of any action of Charter School, its employees, agents or assigns, except when caused in whole or in part by the wanton, willful or intentional acts of OPSB Indemnitees. The provisions or limits of insurance required under this contract shall not limit the liability of Charter Operator, which shall be obligated to defend OPSB in any such action or proceedings brought thereon.

9.5.2    OPSB shall defend, indemnify, and hold harmless Charter Operator, its officers, directors, agents, employees, partners, and subcontractors (collectively referred to as "Charter Operator Indemnitees") from any and all claims, demands, suits, actions, proceedings, losses, costs, judgments, damages or other forms of liability to third parties, of every kind and description, actual or claimed, including but not limited to attorneys' fees and/or litigation expenses, including, but not limited to injury to property or persons (including, but not limited to civil rights violations), occurring or allegedly occurring, from conduct committed or omitted, or alleged to have been committed or omitted, by OPSB, or by its employees, officers, directors, subcontractors, or agents, during the term of this charter or any renewal thereof, which may be brought or made against or incurred by Charter Operator and/or Charter School on account of any action of OPSB, its employees, agents or assigns, except when caused in whole or in part by the wanton, willful or intentional acts of Charter Operator Indemnitees. The provisions or limits of insurance required under this contract shall not limit the liability of OPSB. OPSB shall be obligated to defend Charter Operator and Charter School in any such action or proceedings brought thereon.

9.5.3    Any management contract entered into by Charter Operator concerning Charter School pursuant to Section 9.8 of this Agreement shall include an indemnification provision as follows: The management company shall indemnify, save and hold OPSB Indemnitees harmless against any and all claims, demands, suits, actions, proceedings, losses, costs, judgments, damages or other forms of liability to third parties, of every kind and description, actual or claimed, including but not limited to attorneys' fees and/or litigation expenses, including, but not limited to injury to property or persons (including, but not limited to civil rights violations), occurring or allegedly occurring, in connection with the operation of Charter School, or from conduct committed or alleged to have been committed on the premises of Charter School, or from conduct committed by the management, or by its employees, officers, directors, subcontractors, or agents, during the term of this charter or any renewal thereof. The management company shall be obligated to defend OPSB Indemnitees in any such action or proceedings brought thereon.

9.5.4    OPSB and Charter Operator shall give prompt written notice to the other of the assertion of any claim or the commencement of any litigation for which indemnification is sought and shall cooperate with each other in the defense of the claim or litigation.

9.5.5    Charter Operator shall not settle or compromise any claim against OPSB without the express written permission of OPSB.  OPSB shall not settle or compromise any claim against Charter Operator without the express written permission of Charter Operator.

9.5.6    This Operating Agreement is not an employment contract.  No officer, employee, agent or subcontractor of Charter Operator or Charter School is an officer, employee, or agent of OPSB.

9.5.7    The parties acknowledge that, pursuant to La. R.S. § 17:3993, OPSB and its members individually are immune from civil liability for any damages arising with respect to all activities related to the operation of any type of charter school they may authorize as a chartering authority.

9.5.8    Nothing herein shall waive the right of OPSB Indemnitees to assert any statutory or legal defense of sovereign immunity or official immunity.

9.5.9    The indemnification, defense and hold harmless obligations outlined in this Agreement shall survive the termination of this Operating Agreement.  OPSB or Charter Operator shall have the right, at its own expense, to participate in the defense of any lawsuit to which it is a party, without relieving the other of its obligations hereunder, except as is otherwise provided herein.

9.6    **Waiver**.  The failure of either Party to insist on strict performance of any term or condition of this Operating Agreement shall not constitute a waiver of that term or condition, even if the Party accepting or acquiescing in the nonconforming performance knows of the nature of the performance and fails to object to it.

9.7    **Quality Assurance**.  Each Party shall ensure the accuracy, truthfulness and completeness of any and all documentation, information, or data produced, submitted or provided in accordance with each Party's obligations under this Operating Agreement.

9.8    **Non-assignability**. No right or interest in this Operating Agreement shall be assigned by anyone on behalf of Charter School, without prior written approval of OPSB.  A violation of this provision shall be grounds for immediate proceedings for termination of this Operating Agreement and revocation of Charter.

9.9    Should Charter Operator propose to enter into a contract with another entity to manage Charter School, Charter Operator shall submit a copy of the proposed contract to OPSB for approval.  Charter Operator shall submit all information requested by OPSB regarding the management arrangement, including but not limited to, a description of the management company, with identification of its principals and their backgrounds.  Charter School shall not enter a management contract without written OPSB approval.

9.10    **Compliance with Applicable Law and Policy**.  Charter Operator shall comply with all federal and state laws and regulations and all OPSB policies applicable to charter schools.

DocuSign Envelope ID: 7A830D25-F175-4C1F-BBFE-2GB5715C7594

9.10.1 The parties shall be bound by, and this Operating Agreement shall be subject to, any and all future amendments, successors or additions to federal or state statutes, federal or state regulations, and OPSB policies and procedures applicable to charter schools, including but not limited to those referenced herein. Charter School and OPSB hereby agree to comply with any such change as if it were specifically set forth herein. Any such change shall supersede any provision within this Agreement that conflicts with it.

9.11 **Consent Decrees and Court Orders.** Charter School shall adhere to the requirements of any and all consent decrees and court orders imposed upon Charter School and/or OPSB and shall submit documents and information as required, participate in reviews, and attend informational sessions and meetings required by OPSB or the consent decree or court order.

9.12 **Amendments.** This Operating Agreement may be amended pursuant to the applicable provisions of La. R.S. § 17:3992(B) and OPSB Policy HAA, *Charter School Operating Agreement*.

9.13 **Venue.** The Parties agree that the Civil District Court for the Parish of Orleans, State of Louisiana, and the United States District Court, Eastern District of Louisiana, shall be the exclusive venues for any suit, action, or proceeding pertaining to this Operating Agreement.

9.14 **Severability.** The provisions of this Operating Agreement are severable. In the event of any of the provisions, paragraphs or portions thereof of this Operating Agreement are held to be unenforceable and/or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions or portions thereof shall not be affected thereby, and each term and provision of the agreement shall be valid and enforceable to the fullest extent permitted by law.

9.15 **Third Parties.** The enforcement of the terms and conditions of this Operating Agreement, and all rights of action relating to such enforcement, shall be strictly reserved to OPSB, Charter Operator, and any party to whom rights are duly assigned pursuant to Section 9.7 of this Agreement. Nothing contained in this Operating Agreement shall give or allow any claim or right of action whatsoever by any other third person. It is the express intent of the Parties to this Operating Agreement that any person receiving services or benefits hereunder shall be deemed an incidental beneficiary only.

9.16 **Counterparts; Electronic Signatures; Signature by Facsimile.** The Operating Agreement may be signed in counterparts, which shall together constitute the original Operating Agreement. Electronic signatures and signatures received by facsimile by either of the Parties shall have the same effect as original signatures.

**REMAINDER OF PAGE INTENTIONALLY BLANK**

IN WITNESS WHEREOF, the Parties have made and entered into this Operating Agreement as of the Effective Date.

**ORLEANS PARISH SCHOOL BOARD**

**ADVOCATES FOR ARTS-BASED EDUCATION CORPORATION**

_George Wilson, Jr_
CDD6F17204034AE...

_____
Signature

_____
Signature

Print Name: _____

Print Name:  George Wilson, Jr
_____

Title:  President

Title:  Board President

Date: _____

Date:  7/7/2021
_____

**APPENDIX A**
**(to be attached)**

Advocates for Arts-Based Education

D/B/A Lusher Charter School

Board of Directors Resolution

March 20, 2021

### Resolution Authorizing Signatory

Resolution no. 2021-1

**WHEREAS** the Advocates for Arts-Based Education Corporation (the "Corporation") enters into a Type 3b Charter School Operating Agreement (the "Agreement") with the Orleans Parish School Board ("OPSB");

**WHEREAS** George Wilson was elected to serve as President of the Corporation's Board of Directors on March 20, 2021;

**THEREFORE, BE IT RESOLVED** that the Corporation hereby authorizes George Wilson as signatory on behalf of the Advocates for Arts-Based Education Corporation with respect to (i) the Agreement, and (ii) any and all other documentation and/or similar documents necessary for the execution of the Agreement.

**RESOLVED FURTHER**, that George Wilson's execution and delivery of the Agreement and other related documents shall conclusively evidence the consent of the Board and the authority of the Corporation.

I, Kiki Huston, Secretary to the Board of Directors of the Corporation hereby certify that the foregoing is a true copy of the resolution duly adopted by the Board of Directors of the Corporation on the 20th of March 2021, for which a quorum participated and voted, and the same has not been repealed or amended and remains in full force and effect.

Dated:  March 20, 2021

_____

Kiki Huston, Secretary to the Board of Directors

# APPENDIX B

# PRIVACY COMPLIANCE

**1.** This Agreement is entered into by OPSB and Charter Operator in accordance with the provisions of the Family Educational Rights and Privacy Act, 20 U.S.C. Section 1232(g), et seq., (FERPA) and La. R.S. § 17:3914. OPSB and Charter Operator hereby acknowledge that all documents or other material in which student personally identifiable information, as that term is defined in La. R.S. § 17:3914, is contained or which information is derived from a student's education records are deemed confidential pursuant to FERPA and La. R.S. § 17:3914 and will not be disclosed by OPSB and Charter Operator to any third party except as allowed or required by law.

**2. Access to Information and Computer Systems/Information Storage, Retention, and Disposition Policies.** OPSB and Charter Operator shall each maintain the data, whether in hard copy or electronic form, in an area that has limited access and may only be accessed by authorized personnel. OPSB and Charter Operator shall not permit removal of the data from the limited access area. OPSB and Charter Operator will ensure that access to the data maintained on computer files or databases is controlled by password protection. OPSB and Charter Operator shall each establish procedures to ensure that the target data cannot be extracted from a computer file or database by unauthorized individuals. OPSB and Charter Operator shall each maintain all physical products containing student-level data in locked cabinets, file drawers, or other secure locations when not in use.

**3. Audits.** OPSB and Charter Operator shall allow each other, or each other's authorized representatives to carry out security or audit checks pertaining to security and usage of data of students attending the Charter School. The Parties may request at any time, upon reasonable notice, an audit of data of students attending the Charter School that is in the possession of one another. The Parties or their authorized representative shall have access at all reasonable times, upon reasonable request, on working days during working hours at business premises to employees, together with records, books and correspondence and other papers and documentation or media of every kind that are necessary for the purpose of carrying out such security and audit checks. The Parties or their authorized representatives shall have the right to reproduce and/or retain copies at their expense of any of the aforementioned information and documents.

**4. Security Breach.** As used in this Appendix, "Security Breach" means any act or omission that compromises either the security, confidentiality or integrity of student personally identifiable information or the physical, technical, administrative or organizational safeguards put in place by OPSB and Charter Operator that relate to the protection of the security, confidentiality or integrity of student data, or receipt of a verifiable complaint in relation to the privacy practices of OPSB and Charter Operator or a breach of this Section relating to such privacy practices.

**4.1.** OPSB and Charter Operator shall each take reasonable steps and best efforts, in accordance with industry standards and applicable laws, to prevent security breaches. OPSB and Charter Operator shall each also take reasonable steps, in accordance with industry

standards and applicable laws, to immediately remedy any security breach and prevent any further security breach, each at its own expense in accordance with standard practices and applicable law.

**4.2.** The Parties shall immediately notify each other in writing of a security breach affecting date of students attending the Charter School after they become aware of it; and immediately following the notification of a security breach, OPSB and Charter Operator shall coordinate with each other to investigate the security breach. OPSB and Charter Operator each agree to cooperate in the handling of the matter, including: (i) assisting with any investigation; (ii) providing reasonable physical access to the facilities and operations affected; (iii) facilitating interviews with employees and others involved in the matter; and (iv) making available all relevant records, logs, files, data reporting and other materials required for the investigation to ensure compliance with applicable law or industry standards and as otherwise required and (v) providing any notices to persons or organizations affected by the security breach as required by law.

**4.3.** OPSB and Charter Operator shall ensure that all procedures implemented to address a Security Breach shall be in compliance with all applicable state and federal laws.

**5. Disposal of Information.** The Parties agree that at the termination of this Operating Agreement, unless renewed pursuant to La. R.S. § 17:3992, Charter Operator shall provide all relevant data to OPSB in a usable electronic form, and erase, destroy, and render unreadable all remaining personally identifiable data in its entirety in a manner that prevents its physical reconstruction through the use of commonly available file restoration utilities, and certify in writing that these actions have been completed within 30 (thirty) days of the termination of this Agreement.

**6. Aggregate Data.** Nothing in this Section will limit the exchange of information specified in La. R.S. § 17:3914(C)(2), between the Parties.

**7. Authority to Contract.** For purposes of contracting with third parties for services allowed by and in compliance with La. R.S. § 17:3914, OPSB shall have the authority to enter into agreements to share any student personally identifiable information governed by this Agreement. However, OPSB shall ensure that contracts providing for such data sharing ensure that third parties comply with La. R.S. § 17:3914 and shall be responsible for monitoring and ensuring compliance therewith.

**8.** Nothing contained in this Appendix shall be construed to affect any ownership rights asserted by either party to student data.

## APPENDIX C
## SCHOOL-SPECIFIC TERMS
### Lusher Charter School

1. **Charter School Mission**: Our mission at Lusher Charter School is to provide a developmentally appropriate learning environment in which high academics, comprehensive arts education, and the celebration of individuality and diversity enable each child to achieve as a learner, a person, and a valuable member of our society.

2. **Essential Characteristics.** Essential characteristic(s) of Educational Program, to be evaluated as School-Specific Measures within the OPSB Academic Performance Framework, if applicable, shall be as follows: **N/A**

3. Education Service Provider, if applicable: N/A

4. **LEA Status.**   Pursuant to LA. R.S. § 17:10.7.1(G)(2), any type of charter school under the jurisdiction of the Orleans Parish School Board, with the approval of the School Board, may act as its own local educational agency (LEA) for one or more funding purposes or statutory definitions, in accordance with La. R.S. § 17:3995 and rules adopted by the Louisiana Board of Elementary and Secondary Education.

   a. On March 16, 2017, OPSB approved a request by Advocates for Arts-Based Education to consider Lusher Charter School, a type 3 charter, its own LEA, pursuant to La. R.S. 17:10.7.1(G)(2).

   b. **Charter School LEA:** Charter School shall be considered the local education agency for all funding purposes and statutory definitions and shall be held solely responsible for all applicable federal, state, or local laws or regulations related to the school's LEA status, including but not limited to data reporting, testing regulations, IDEA compliance, Title I regulations, and requirements of other grants made available and secured by the charter school in its capacity as an LEA.

      i. Charter Board acknowledges that OPSB shall have the duty, obligation, and authority to monitor and enforce corrective actions and interventions related to the requirements of this section and any other applicable federal, state, or local laws or regulations for such charter school.

      ii. At all times that Charter School is considered its own LEA it shall comply with BESE Bulletin 126 § 2303(B)(2)(a) and OPSB Policy HAC, *Local Education Agency Status*.

      iii. In the event of a rescission of Charter Schools' LEA status pursuant to BESE Bulletin 126 § 2303(B), OPSB may terminate this Operating Agreement in accordance with the revocation procedures of OPSB Policy HC, *Charter School Monitoring, Intervention, and Closure*.

5. **Enrollment.**  Charter School shall participate in all policies and procedures of the parish-wide enrollment system and common expulsion process, as required by La. R.S. § 10.7.1.

   a.  Admission Requirements: Applicants must meet a minimum number of matrix points which may include GPA, an arts profile, reading score, math score, parental meeting, and parental questionnaire.

   b.  Enrollment Preferences:

   Kindergarten: Children of staff, Siblings, a minimum of 45% of available seats for Community applicants (prioritized as 75% for Tier 1 scores, and 25% for Tier 2 scores), up to 45% of available seats for Tulane Affiliated Applicants (prioritized as 75% for Tier 1 scores, and 25% for Tier 2 scores), 10% of available seats for Economically disadvantaged applicants who will have previously been considered in the Community or Tulane group. Tier 1 applicants who are waitlisted are considered again in the Tier 2 group.

   All other grades: Children of staff, a minimum of 45% of available seats for Community applicants (prioritized as 75% for Tier 1 scores, and 25% for Tier 2 scores), up to 45% of available seats for Tulane Affiliated Applicants (prioritized as 75% for Tier 1 scores, and 25% for Tier 2 scores), 10% of available seats for Economically disadvantaged applicants who will have previously been considered in the Community or Tulane group.  Tier 1 applicants who are waitlisted are considered again in the Tier 2 group.

6. **Grade Levels Served.**  Charter School is authorized to serve the following grade levels:

| Grade Level | Year 1 2021-22 | Year 2 2022-23 | Year 3 2023-24 | Year 4 2024-25 | Year 5 2025-26 | Year 6 2026-27 | Year 7 2027-28 | Year 8 2028-29 | Year 9 2029-30 | Year 10 2030-31 |
|---|---|---|---|---|---|---|---|---|---|---|
| K | x | x | x | x | x | x | x | x | x | x |
| 1 | x | x | x | x | x | x | x | x | x | x |
| 2 | x | x | x | x | x | x | x | x | x | x |
| 3 | x | x | x | x | x | x | x | x | x | x |
| 4 | x | x | x | x | x | x | x | x | x | x |
| 5 | x | x | x | x | x | x | x | x | x | x |
| 6 | x | x | x | x | x | x | x | x | x | x |
| 7 | x | x | x | x | x | x | x | x | x | x |
| 8 | x | x | x | x | x | x | x | x | x | x |
| 9 | x | x | x | x | x | x | x | x | x | x |
| 10 | x | x | x | x | x | x | x | x | x | x |
| 11 | x | x | x | x | x | x | x | x | x | x |
| 12 | x | x | x | x | x | x | x | x | x | x |

**APPENDIX D**
**RETIREMENT SYSTEM ELECTION**
**Lusher Charter School**

Pursuant to La. R.S. § 17:3997(A)(3), Charter Operator makes the following declaration regarding participation in school employees' and teachers' retirement systems. Said declaration shall be binding and irrevocable during the approved term of the Operating Agreement.

**TRSL & LSERS Option**

Select one of the options below:

**Option 1**

_____ Charter Operator intends to participate in the Teachers' Retirement System of Louisiana and the Louisiana School Employees' Retirement System.

**Option 2**

__X__ Charter Operator intends to participate in the Teachers' Retirement System of Louisiana only.

**Option 3**

___\__ The Charter Operator does not intend to participate in the Teachers' Retirement System of Louisiana and the Louisiana School Employees' Retirement System.

DocuSigned by:

*George Wilson, Jr*
GBD9F4780492AAE...
_____                    7/7/2021
Signature of Charter Operator's                     _____
Authorized Representative                            Date