# EXHIBIT A-6

# *OVERSIGHT AND EVALUATION OF CHARTER SCHOOLS*

## CHARTER SCHOOL ACCOUNTABILITY FRAMEWORK

1. The Charter School Accountability Framework (CSAF) outlines the expectations the Orleans Parish School Board (OPSB) has for charter schools under its jurisdiction and the processes the School District shall use, annually and at the point of each charter's extension or renewal, to track and evaluate school performance against those expectations.

2. Charter school performance shall be evaluated, using the CSAF, in the following categories:

   A. Academic Performance
   B. Financial Performance
   C. Organizational Performance

3. Any change to the CSAF shall be presented to the School Board no later than the August meeting of the School Board for implementation in the same school year.

4. Evaluation of Academic Performance

   A. The School Board shall evaluate charter schools using the student performance indicators and related measures set forth in the CSAF and its operating agreement.

   B. Charter schools shall participate fully in the Louisiana standardized testing and accountability programs, including the administration of all required state assessments.

5. Evaluation of Organizational and Financial Performance

   A. The School Board shall evaluate each charter school's compliance with financial and organizational performance expectations outlined in the CSAF and the school's operating agreement.

## ANNUAL CHARTER SCHOOL OVERSIGHT

1. Each year, School District staff shall conduct activities, including annual site visits, to monitor charter school performance and practices. The details of these annual oversight activities shall be articulated in the CSAF.

2. Consistent with the philosophy of holding charter schools to high academic standards, academic outcomes that merit concern may result in heightened oversight of charter schools during the school year. The relevant performance standards and corresponding oversight process shall be as articulated in the CSAF.

## NON-COMPLIANCE NOTIFICATIONS AND REMEDIATION

1. The School District shall oversee each charter school's compliance with its operating agreement, federal and state laws and regulations and School Board policy.

2. The School Board shall consider each charter school organizationally in good standing unless or until a school becomes noncompliant. At any point in a school year, a school may be

Case 3:24-cv-00517-JWD-SDJ    Document 51-7    08/23/24    Page 3 of 13

deemed noncompliant. The CSAF shall articulate the compliance monitoring process, the process for corrective action, and how OPSB determines that a school has become noncompliant.

3. The compliance monitoring process and process for corrective action shall include issuance of levels of notices by the School District.

    A. A Notice of Concern is a notice of potential compliance deficiency where there may be signs of a deficiency that do not arise to a sufficient level of evidence for a noncompliance notice or that may be issued if repeated or significant concerns are raised that are not specifically delineated within current charter agreements.

    B. A Noncompliance Notice Level 1 is a notice of a compliance deficiency, less severe in nature, for issues that the School Board administration determines are non-recurring, non-intentional, and that do not cause harm to students.

    C. A Non-compliance Notice Level 2 is a notice of a compliance deficiency that is more severe in nature, such as a Notice of Concern or Level 1 issue that goes unaddressed or reoccurs, or an issue that the School Board administration determines to be intentional or to represent potential or real harm to students' well-being, educational rights, and/or educational safety.

    D. A Noncompliance Notice Level 3 is a notice of compliance deficiency that arises from a Noncompliance Level 2 notification, such as failure to implement or follow remedies as directed in a Noncompliance Level 2 notification.

## PARENT/GUARDIAN AND FAMILY NOTIFICATION

1. If a charter school receives a Notice of Non-Compliance Level 2 or 3, is placed on a performance improvement plan by the school district, or is asked to submit a plan to the Louisiana Department of Education as a result of receiving a label of Comprehensive or Urgent Intervention Required, the following actions shall be taken:

    A. Level 2 or 3 Non-Compliance Notices shall be reported to the School Board Accountability Committee meeting immediately following the issuance of the Notices and shall be posted to OPSB's website.

    B. Charter schools that are placed on an improvement plan by the School Board or that are required to submit a plan to the Louisiana Department of Education as a result of receiving a label of Comprehensive or Urgent Intervention Required shall distribute the plan to the guardians and families of students currently enrolled in the schools to ensure that guardians and families are aware of current actions the school is undertaking to improve its performance.

    C. The charter school shall also provide any additional notification to guardians and families of students as set forth in the CSAF.

## CHARTER SCHOOL EXTENSION STANDARDS AND PROCESS

1. The Superintendent shall undertake an extension review in the fall of a school's fourth year of operation. The Superintendent shall recommend to the School Board by January 31st of a school's fourth year of operation that the school's operating agreement be:

    A. Extended to complete the initial five year term; or

Case 3:24-cv-00517-JWD-SDJ    Document 51-7    08/23/24    Page 4 of 13

    B. Non-extended and allowed to expire at the end of the school's fourth year of operation.

2. Extension reviews shall be conducted according to the following standards:

    A. The Superintendent may recommend extension for a school in its initial term if the charter school's most recent letter grade is an "A", "B", "C", or "D", or a charter school that has not yet been issued a letter grade by the state.

    B. Given the unforeseen accountability impacts of the COVID-19 pandemic, for the 2020-2021 through 2023-2024 extension reviews, the Superintendent may permit an extension for any school that fails to meet the extension standards outlined above.

3. If the Superintendent determines that non-extension of the operating agreement of a school that does not meet extension standards would result in the majority of the school's students attending academically lower-performing schools, then the Superintendent may waive the extension standards for the school and recommend the school for extension.

4. The Superintendent shall provide written notice of proposed recommendations regarding extension decisions to the charter school's governing board and CEO or equivalent no later than seven (7) business days, based on the district's calendar, prior to the School Board meeting during which the Superintendent will make a recommendation regarding the extension decision.

5. The Superintendent shall provide written notice of a proposed non-extension to all school staff, and the parents or guardians of all current school students at least four (4) business days, based on the school district's calendar, prior to the Superintendent's non-extension recommendation to the School Board.

6. The Superintendent shall present the recommendation to the School Board at a meeting held for that purpose.  A simple majority vote of the School Board Members present shall be required for approval of the Superintendent's recommendation.  A **two-thirds (⅔) supermajority of the full membership of the School Board** shall be required for rejection of the Superintendent's recommendation.  However, if the School Board fails to reject the Superintendent's recommendations five (5) calendar days after the Superintendent's presentation of recommendations, the Superintendent may implement any such recommendations submitted to the School Board. If multiple recommendations are presented at the meeting, the School Board may vote on all the recommendations as a slate or make a motion to pull out individual recommendations for separate votes.

7. Final action on all charter extension recommendations shall be completed by not later than January 31st of the final year of the school's current charter term, or as otherwise required by law.

RENEWAL PROCESS AND TIMELINE

Renewal standards included here shall apply to schools facing renewal in the 2024-2025 school year and onwards.

1. At the conclusion of a charter school's term, the charter operator no longer has a continuing right to operate the school, unless the school's operating agreement is extended or renewed.

2. The School Board shall grant renewals to charter schools in accordance with the processes and standards established in this policy and detailed in the CSAF.

3. In making renewal recommendations, the Superintendent and staff shall clearly communicate their rationale, and the school shall be afforded an opportunity to respond to and address any identified concerns prior to the recommendation being forwarded to the School Board for consideration.

4. Two renewal review pathways shall be available to charter schools:

   A. Automatic Renewal:  Pursuant to La. Rev. Stat. Ann. §17:3992, the Superintendent, shall automatically recommend renewal of the operating agreements for a school that earns an SPRI of "A" or "B" and a Progress Index of "A" for each of the three consecutive school years immediately preceding the school's renewal and that has no significant organizational or financial concerns for each of those three school years.

   B. Renewal Review:  Charter schools that do not qualify for automatic renewal shall be considered for renewal in accordance with the procedures articulated in the CSAF and in this policy.

5. Determinations regarding renewal pathway eligibility shall be made by the Superintendent based upon the most recently-available student performance data information pursuant to the CSAF.

6. All renewal recommendations shall be presented by the Superintendent to the School Board for approval by not later than January 31st of the final year of the school's current charter term.

7. The Superintendent shall provide written notice of proposed recommendations regarding renewal decisions to the charter school's governing board and CEO or equivalent no later than seven (7) business days, based on the district's calendar, prior to the School Board meeting during which the Superintendent will make a recommendation regarding the renewal decisions.

8. The Superintendent shall provide written notice of a proposed non-renewals to all school staff, and the parents or guardians of all current school students at least four (4) business days, based on the district's calendar, prior to the Superintendent's non-extension recommendation to the School Board.

9. The Superintendent shall present the recommendation to the School Board at a meeting held for that purpose.  A simple majority vote of the School Board Members present shall be required for approval of the Superintendent's recommendation.    A **two-thirds (⅔) supermajority of the full membership of the School Board** shall be required for rejection of the Superintendent's recommendation.  However, if the School Board fails to reject the Superintendent's recommendations five (5) calendar days after the Superintendent's presentation of recommendations, the Superintendent may implement any such recommendations submitted to the School Board.  If multiple recommendations are presented at the meeting, the School Board may vote on all the recommendations as a slate or make a motion to pull out individual recommendations for separate votes.

10. Final action on all charter renewal recommendations shall be completed by not later than January 31st of the final year of the school's current charter term, or as otherwise required by law.

11. Any additional required renewal activities, processes, and timelines shall be articulated in the CSAF.

<u>RENEWAL TERMS AND STANDARDS</u>

Case 3:24-cv-00517-JWD-SDJ    Document 51-7    08/23/24    Page 6 of 13

1. During the renewal decision-making process, the Superintendent and staff shall assess the school's past performance across three areas of oversight: academic, organizational, and financial performance.

2. The Superintendent shall use a renewal measure ("School Performance Renewal Index" or "SPRI") to determine whether a school qualifies for renewal recommendation.

    A. The methodology for the calculation of the SPRI measure shall be articulated in the CSAF.

    B. For schools in their initial term, the SPRI shall be the more favorable SPRI based on the most recent one or two years of School Performance Scores ("SPS") issued by the state.

    C. For schools in their second or subsequent terms, the SPRI shall include multiple years of school performance outcomes.

3. Any Progress Index or letter grade referred to in the below table shall be the most recent Progress Index or letter grade issued by the state, pursuant to the state's accountability system.

4. Consistent with the philosophy of rewarding strong performance and providing incentives for schools to strive for continual improvement, the renewal terms for OPSB-authorized charter schools shall be linked to each school's performance on the OPSB renewal standards in accordance with the following table:

| Base Term | Renewal Standard for K-12 Schools |
|---|---|
| 10 years | Schools receive an SPRI of "A" for the three years immediately prior to renewal; **AND**<br>For three of the four years prior to renewal: Schools receive a Progress Index of "A" for economically disadvantaged students, and a re-enrollment rate of 90% or higher for economically disadvantaged students and have no Area(s) of Concern or be Not in Good Standing. In the event that three years of Progress Index data has not been issued by the state, two years of Progress Index data shall be acceptable. |
| 8 years | Schools receive an SPRI equivalent to a letter grade of "A" and do not qualify for the 10-year renewal **AND** have an "A" for Progress **OR**<br><br>Schools receive an SPRI equivalent to a letter grade of of "B" **AND** have an "A" for Progress. |
| 7 years | Schools receive an SPRI equivalent to a letter grade of "A" **AND** do not qualify for the 10-year renewal and have a "B" or "C" for Progress **OR**<br><br>Schools receive an SPRI equivalent to a letter grade of "B" and have a "B" or "C" for Progress. |
| 6 years | Schools receive an SPRI equivalent to a letter grade of "C" **AND** a Progress Index of "A." |
| 5 years | Schools receive an SPRI equivalent to a letter grade of "C" **AND** a Progress Index of "B" or "C." |
| 4 years | Schools receive an SPRI equivalent to a letter grade of "D" **AND** a Progress Index of "A." |
| 3 years | Schools receive an SPRI equivalent to a letter grade of "D" **AND** a Progress Index of "B." |

Case 3:24-cv-00517-JWD-SDJ    Document 51-7    08/23/24    Page 7 of 13

The table below shows the eligible term lengths associated with each combination of SPRI and Progress Index letter grade.

| Progress | A | | B | C | D | F |
|---|---|---|---|---|---|---|
| **SPRI** | | | | | | |
| A | 10-year | 8-year | 7-year | 7-year | Nonrenewal | Nonrenewal |
| B | 8-year | | 7-year | 7-year | Nonrenewal | Nonrenewal |
| C | 6-year | | 5-year | 5-year | Nonrenewal | Nonrenewal |
| D | 4-year | | 3-year | Comp. Eval. | Nonrenewal | Nonrenewal |
| F | Comp. Eval. | | Nonrenewal | Nonrenewal | Nonrenewal | Nonrenewal |

5. Any school, regardless of grade configuration, that receives an SPRI equivalent of letter grade of F is not eligible for renewal, except as may be otherwise provided for below in Paragraph 8.

6. Regardless of academic outcomes, the district may deem that a charter school is ineligible for renewal if there has been a significant, consistent, or material violation related to financial malfeasance or of student/family rights, in areas such as special education, discipline, or enrollment. If a school is Not in Good Standing, as defined in the CSAF, then it may be eligible for nonrenewal or a reduction in term length, including to the shortest renewal length possible.

7. The Superintendent may subtract up to two years from a renewal base term length:

    A. for schools that receive multiple Level 2 Non-compliance Notifications during the current charter term or that are subject to a Level 2 Non-compliance Notification at the time the renewal recommendation is presented to the School Board; or

    B. where fewer than fifty percent (50%) of the school's enrolled grades are testable under state accountability.

    C. for schools that have Area(s) of Concern, as defined in the CSAF.

8. Under certain circumstances, where deemed appropriate by the Superintendent, the Superintendent may recommend a three (3) year contingent renewal term to a set of schools that fail to meet the standards outlined in the above table, once those schools have been reconsidered through a comprehensive evaluation.

    A. Schools eligible for such a comprehensive evaluation are:

        1. Schools with an SPRI of "D" AND a Progress Index of "C."

        2. Schools with an SPRI of "F" AND a Progress Index of "A."

        3. Any charter school that has not yet been issued a letter grade by the state.

        4. Given the unforeseen accountability impacts of the Covid-19 pandemic, for the 2020-2021 through 2023-2024 renewal process, the Superintendent may permit a comprehensive evaluation for any school that fails to meet the standards outlined in the above table.

        5. In a year in which the state does not issue SPS letter grades, the Superintendent may permit a comprehensive evaluation for any school that fails to meet the standards outlined for a standard renewal.

B. If the Superintendent recommends such a school for renewal, the recommendation may be contingent upon additional requirements for the charter operator, including, but not limited to, reconfiguration of the school's enrollment and grade level, changes in programmatic offerings, and other potential changes to school characteristics.

C. A school shall not be eligible for a contingent renewal as detailed in this paragraph more than once during its existence, except in the following circumstances:

  1. Schools that are in their initial term and do not receive a letter grade because the state did not issue the school a letter grade shall not have their initial comprehensive evaluation count toward the number of comprehensive evaluations received.

  2. The superintendent may permit an additional comprehensive evaluation for any school subject to renewal during the 2020-2021 through 2023-2024 renewal process when there were unforeseen accountability impacts of the Covid-19 pandemic.

  3. A school consolidation meeting all the requirements below shall not have its initial comprehensive evaluation count toward the total number of comprehensive evaluations received:

     a. Includes at least one school with a SPRI of "C" or higher or a Progress Letter Grade of "A"; and
     b. The comprehensive evaluation is the first review of the charter after the consolidation.

D. Details on the comprehensive evaluation process shall be defined within the CSAF.

E. Charter operators participating in the comprehensive evaluation process and members of the public shall have the opportunity to provide public comment concerning the renewal decision.

9. If the Superintendent determines that the closure of a school that does not meet renewal standards would result in the majority of its students attending academically lower-performing schools, the Superintendent may waive the renewal standards in this policy and the CSAF, and recommend the school for renewal.

## RENEWAL TERMS AND STANDARDS FOR ALTERNATIVE SCHOOLS

The Superintendent shall evaluate alternative charter schools based on the Louisiana Alternative School letter grades, using the same letter grade renewal standards as for regular schools. Such charter schools shall remain subject to the financial and organizational expectations in the CSAF.

## SUSPENSION, REVOCATION, AND SURRENDER OF CHARTER OPERATING AGREEMENT

1. Revocation of an Operating Agreement

   A. The Superintendent may revoke a school's operating agreement during its charter term for the following reasons, as identified in statute and/or the terms of the school's operating agreement:

      1. Material violation of the operating agreement;

2. Failure to meet or pursue within the agreed timelines the academic and other educational results specified in the operating agreement and the CSAF;

3. Failure to meet generally accepted accounting standards of fiscal management;

4. Egregious and/or consistent violation of federal, state or local laws or School Board policies;

5. Gross mismanagement of public funds;

6. Financial malfeasance;

7. Failure to retain and maintain adequate facilities;

8. Failure to sustain student enrollment sufficient to meet financial obligations;

9. Failure to open an approved charter school within twenty-four months after execution of the operating agreement, unless granted an extension by the School Board;

10. Failure to timely execute an LEA Agreement mutually agreed to with the School Board at any time during the charter term, where the charter school is a part of the School Board's local educational agency; or

11. Failure to protect the health, safety, and/or welfare of students.

B. The Superintendent shall provide written notice of a proposed revocation to the charter school's governing board, not later than <u>thirty</u> (30) calendar days prior to the School Board meeting during which the Superintendent will make a recommendation regarding a proposed revocation.

C. The Superintendent shall provide written notice of a proposed revocation to all school staff, and the parents or guardians of all current school students, at least fifteen (15) calendar days prior to the Superintendent's revocation recommendation to the School Board.

D. At least five (5) calendar days prior to the presentation of a recommendation for revocation of a school's operating agreement, the Superintendent shall conduct one or more school community meetings, to be held at the facility currently occupied by the school proposed to be closed, or in a location as near as practicable.

E. The Superintendent shall present recommendations to the School Board regarding the revocation of any charter school's operating agreement under the board's jurisdiction. A simple majority vote of the School Board Members present shall be required for approval of the Superintendent's recommendation. ***A two-thirds (⅔) supermajority of the full membership of the School Board*** shall be required for rejection of the Superintendent's recommendation. However, if the School Board fails to reject the Superintendent's recommendations five (5) calendar days after the Superintendent's presentation of recommendations, the Superintendent may implement any such recommendations submitted to the School Board. If multiple recommendations are presented at the meeting, the School Board may vote on all the recommendations as a slate or make a motion to pull out individual recommendations for separate votes.

F. The charter operator shall have the opportunity to appear before a meeting of the School Board's Accountability Committee, recorded and transcribed at the operator's expense, with witnesses if necessary, to answer all identified findings and reasons for the action.

2. Emergency Suspension of an Operating Agreement

    A. The Superintendent may immediately suspend a school's operating agreement upon a determination that the health, safety, or welfare of students is threatened.

    B. Under an emergency suspension, the provisions of Subsection (1)(B-F) herein shall be waived, and the school shall immediately cease all operations. The Superintendent shall provide public notice of the emergency suspension, including to the families of all students, staff, and governing board members, as soon as practicable, but not later than three (3) business days, based on the School District's calendar, following the determination. A School Board hearing to consider the Superintendent's actions shall be convened as soon as practicable following the public hearing, but no later than seventy-two (72) hours following public notification.

    C. A simple majority vote of the School Board Members present shall be required for approval of the Superintendent's recommendation concerning emergency suspension of an operating agreement. ***A two-thirds (⅔) supermajority of the full membership of the School Board*** shall be required for rejection of the Superintendent's recommendation. However, if the School Board fails to reject the Superintendent's recommendations five (5) calendar days after the Superintendent's presentation of recommendations, the Superintendent may implement any such recommendations submitted to the School Board. If multiple recommendations are presented at the meeting, the School Board may vote on all the recommendations as a slate or make a motion to pull out individual recommendations for separate votes.

3. Voluntary Surrender of a Charter

    A. If the charter school operator determines that it will no longer operate a charter school, it shall relinquish the charter to the School Board by December 1st of the year in which it intends to discontinue such operation.

    B. Failure to relinquish a charter by December 1st, or failure to complete the entirety of the school year in which such relinquishing of a charter occurs, may result in the School Board declaring such operator ineligible to apply for, open, or otherwise operate any school for up to five years.

        1. If at any time during this period, members of such charter operator's board of directors form a majority of board membership for a different charter operator, the School Board may declare such operator ineligible to apply for, open, or otherwise operate any school.

## CHARTER CONSOLIDATIONS

1. Consolidation – A school transition recommended by the Superintendent and approved by the School Board that results in fewer schools by closing one or more schools and/or combining two or more schools.

2. Renewals – Persisting schools involved in a consolidation where at least one school has an SPRI of "C" or higher or a Progress Letter Grade of "A;" may request, and with the Superintendent's approval, receive the following considerations:

    A. A charter renewal review prior to the final year of the charter school's term under its Operating Agreement; and/or

    B. A comprehensive evaluation for charter renewal if it fails to meet the standards outlined for a Renewal Review.

3. Letter Grades

Persisting schools involved in a consolidation where at least one school has an SPRI of "C" or higher and at least one school has a SPRI of "D" or "F;" may request that the School District:

    A. Petition the Louisiana Department of Education to provide the persisting school with a "T" letter grade for the first two school years of the consolidation.

    B. Label the school with a "T" letter grade for the persisting school on its public materials.

## CHARTER SCHOOL FINANCIAL CLOSEOUT

1. The School District shall endeavor to ensure the timely and efficient financial closeout of closing charter schools and to safeguard public funds during the closeout process.

2. The School District shall have the authority to supervise, oversee and/or direct charter school non-profit organization in the closure of the charter school. The charter school non-profit organization board shall have direct responsibility for carrying out closure of the school(s) and disposition of assets in accordance with applicable law and policy.

3. The requirements of this policy shall be effective beginning in the 2020-21 academic year for all charter schools.

4. The School District administration shall develop a detailed framework for monitoring of closing charter schools in collaboration with school leaders. At a minimum, collaboration with school leaders shall include the following activities before the proposed plan is presented to the school board:

    A. One or more convenings of school finance leaders to contribute to the development of the proposed framework;

    B. Presenting the proposed framework and subsequent revisions to the framework to all school leaders; and

    C. Providing school leaders an opportunity to provide written and verbal feedback on the proposed framework and subsequent revisions to the framework.

5. In the event that the closing school does not comply with the monitoring framework, and only for the most egregious circumstances of non-compliance, the School District maintains the ability to withhold some or all of monthly MFP allocations in the amount associated with the expense. Upon remedying the non-compliance, funds will be transferred back to the school. If the non-compliance is not remedied, any MFP funds withheld by the School District will be transferred to the district's Transformation Fund or used to cover costs incurred by the district related to the closeout.

6. Upon the action of the non-profit organization to cease operation of the school, or the School District Superintendent presents a recommendation to the school board to not renew, not extend, or revoke a charter pursuant to applicable state law and School Board policy, whichever occurs first, the following shall apply:

A. Within the first thirty (30) calendar days of the aforementioned decision, the non-profit organization shall:

1. Have the board chair, Chief Financial Officer (or equivalent officer overseeing the finances) and Chief Executive Officer (or equivalent) of the charter school attend a meeting with School District administration to discuss the financial dissolution process. At the discretion of the School District, district staff may attend charter school board finance committee meetings and full board meetings throughout the closure process.

2. Designate in writing and provide contact information for a designee who shall retain responsibility for security and access of all charter school(s) financial records and will respond to the School District's requests in a timely manner. The contact information shall include: current cell phone number, email address, permanent mailing address and affiliation with non-profit organization. Such requests may occur after the school closure.

3. Provide notification to all employees of the financial and operational requirements for closure expressly stating the legal liabilities surrounding the misuse of public education assets. Template language will be provided by the School District.

4. Provide the School District with an initial accounting of State & Local MFP funds within current cash and General Fund Balance.

B. Within the first forty-five (45) calendar days of the aforementioned decision, the non-profit organization shall:

1. Coordinate with the School District to develop a School Finance Monitoring Plan, regarding the actions included in this policy and the aforementioned framework, which must be signed by the charter school Chief Executive Officer (or equivalent) and non-profit organization board chair. The plan will be specific to the circumstances of each school and will outline the level of monitoring to be conducted by the school district. The guidance document will include actions specific to each non-profit organization, based on past financial performance, any non-compliance over the term of the contract, current financial standings as measured in the Charter School Accountability Framework, and any other criteria as outlined by the school district.

2. Coordinate with the School District to submit a rolling forecast budget to include all expenses related to the remainder of school operation and through the final closeout and completion of the school's final annual audit. The rolling forecast budget must account for all closeout related expenses that may include, but not be limited to: final annual audit, legal fees associated with the dissolution of the non-profit organization or ongoing litigation, facility repairs, final payroll, and taxes.

7. The charter school shall not sell, transfer, or otherwise dispose of equipment and property attributable to federal, state and local MFP funds without prior written permission from the School District. After approval has been granted from the School District in accordance with this policy, the charter school shall transfer or dispose of assets and property in accordance with §2509 of Title 28, Part CXXXIX. Bulletin 126.

8. The charter school shall fully cooperate with the School District, who shall have unrestricted and equal access to charter school records, including financial records, as permitted by law, before and after dissolution

.

9.  The charter school shall complete the annual year-end audit for the closing fiscal year.  As applicable, the final close-out audit may be an additional audit subsequent to the fiscal year-end audit.

10. The charter school shall fully cooperate with all applicable School Board policies and shall coordinate with incoming operators, if any, as directed by the School District.

11. The School District will work in collaboration with the Louisiana Legislative Auditor on all incidences of suspected violations of state policy, as it relates to misappropriation or theft.

Revised:  August 30, 2016            Revised:  July 28, 2022
Revised:  May 17, 2018               Revised:  November 17, 2022
Revised:  September 17, 2020         Revised:  May 18, 2023
Revised:  December 17, 2020          Revised:  November 16, 2023

Ref:    La. Rev. Stat. Ann. §§17:3971, 17:3973, 17:3974, 17:3981, 17:3982, 17:3983, 17:3983.1, 17:3991, 17:3991.1, 17:3992
        *Charter Schools*, Bulletin 126, Louisiana Department of Education
        Charter School Demonstration Programs Law
        Board minutes, 8-30-16, 5-17-18, 9-17-20, 12-17-20, 7-28-22, 11-17-22, 5-18-23, 11-16-23

Orleans Parish School Board