UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **REVEREND DARCY ROAKE and ADRIAN VAN YOUNG, on behalf of themselves and on behalf of their minor children, A.V. and S.V., et al.** | CIVIL ACTION NO. 3:24-cv-0517 |
| | JUDGE: JOHN W. DEGRAVELLES |
| **VERSUS** | |
| **CADE BRUMLEY, in his official capacity as the Louisiana State Superintendent of Education, et al.** | MAGISTRATE JUDGE: SCOTT D. JOHNSON |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT ORLEANS PARISH SCHOOL BOARD'S MOTION TO DISMISS
AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Defendant Orleans Parish School Board ("OPSB") respectfully submits this reply memorandum in further support of its Rule 12(b)(1) Motion to Dismiss and Opposition to Plaintiffs' Motion for Preliminary Injunction.[1] Plaintiffs' Opposition ("Opposition") fails to rebut the law in favor of dismissal.[2] The Court should dismiss OPSB from this lawsuit and deny Plaintiffs' motion for preliminary injunction as to OPSB because Plaintiffs do not have Article III standing to assert their claims against OPSB.

**INTRODUCTION**

First and foremost, in the Opposition, Plaintiffs concede that they do not have standing to assert their claims against OPSB that stem from Plaintiffs' children who attend the International School. Plaintiffs acknowledge "that, as the chartering sponsor for the International School, BESE . . . holds responsibility for the school."[3] Because Plaintiffs admit that OPSB does not have the

---

[1] R. Doc. 38.
[2] R. Doc. 46.
[3] R. Doc. 46 at p. 3 n. 7.

power to enforce House Bill No. 71 ("H.B. 71") against the International School, Plaintiffs focus solely on OPSB's alleged responsibility to enforce H.B. 71 against the Willow School. In spite of Plaintiffs' contentions otherwise, the reality of the New Orleans Public School System is that charter schools are independent schools that govern their own daily operations. This reality is codified both in law and in the Willow School's Charter School Agreement with OPSB.[4] Due to the Willow School's independent authority to control its daily operations, Plaintiffs' alleged harm is extremely attenuated from any hypothetical actions that OPSB could take to enforce, or not enforce, H.B. 71 within the classrooms of the Willow School and contingent upon the further speculative actions of the Willow School, a third party to this proceeding. Plaintiffs therefore lack standing to assert their claims against OPSB, as their alleged injuries are not fairly traceable to the actions of OPSB, and the Plaintiffs' claims against OPSB are not redressable by a favorable outcome in this lawsuit. Plaintiffs' contentions that they have standing to bring suit against OPSB because some of their children attend the Willow School is unfounded and the Court should dismiss Plaintiffs' claims against OPSB pursuant to Rule 12(b)(1).

## ARGUMENT

**1. Plaintiffs lack standing to assert their claims against OPSB because both Louisiana law and the Willow School's Charter School Agreement grant the Willow School Operational Autonomy.**

Practically speaking, charter schools in New Orleans, such as the Willow School, have independence from OPSB in their day-to-day operations. This independence is exactly what

---

[4] *See*, *e.g.*, La. R.S. § 17:3973(2)(a) (defining a charter school as "an independent public school"), La. R.S. § 17:3973(1)(a) (stating that charter schools have "independent operational decision making authority" in the areas of "school programming, instruction, curriculum, materials, texts, calendars, and schedules" among others). *See also* the Willow School's Charter School Agreement at § 1.9, "Operational Autonomy"; § 2.1 ("Charter Operator shall have control over and responsibility for delivery of the Educational Program and attainment of the academic performance standards. . . ."; § 2.7 ("Charter Operator shall be responsible for ensuring compliance with all state and federal laws and regulations applicable to the education of English Learners. . . ."; § 4.1 ("Charter Operator shall control and be solely responsible for the sound financial management. . .)."

distinguishes charter schools from traditional public schools operated by OPSB, such as the newly-opened Leah Chase School.[5] The Willow School "is governed by the Advocates for Arts-Based Education (AABE) Board" which "has an important role in advancing the school's mission by setting policies, supervising the activities of the Corporation, and adopting positions on issues of substance related to the purposes of the Corporation."[6] Although OPSB is involved in limited aspects of the Willow School's administration, OPSB's responsibilities are more holistic in nature and do not concern daily governance issues such as what posters should or should not be displayed in charter school classrooms. Plaintiffs acknowledge the nature of OPSB's authority over the Willow School in their Opposition through a lengthy string citation that highlights OPSB's authority to "establish enrollment projections," "state test security policies" and temporarily close a charter school "in the event of a credible threat of terror," among others.[7] The provided examples are easily distinguishable from the daily governance role that OPSB would need to have – but does not have – to be able to enforce H.B. 71 at the Willow School or other Charter Schools.

Although Plaintiffs do not acknowledge it, the Charter School Agreement between OPSB and AABE actually affirms the Willow School's independence to control its daily operations. While Plaintiffs cite other portions of the Charter School Agreement in their Opposition, they fail to mention the many clauses in the Charter School Agreement that actually establish the Willow School's autonomy in its day-to-day operations. For example, Section 1.9 of the Charter School Agreement, entitled "Operational Autonomy," states:

> . . . **the local school board [OPSB] shall not impede the operational autonomy of a charter school under its jurisdiction in the areas of school programming, instruction, curriculum, materials and texts**, yearly school calendars and daily

---

[5] None of the Plaintiffs' children attend the Leah Chase School.

[6] *See* School Governance, The Willow School New Orleans, https://www.willowschoolnola.org/page/school-governance (last visited 8-28-24).

[7] R. Doc. 46 at pp. 4-5.

> schedules, hiring and firing of personnel, employee performance management and evaluation, terms and conditions of employment, teacher or administrator certification, salaries and benefits, retirement, collective bargaining, budgeting, purchasing, procurement, and contracting for services other than capital repairs and facilities construction.

Additionally, the Charter School Agreement holds the Charter School operator, AABE, responsible for complying with state law. Section 9.10 of the Charter School Agreement, entitled "Compliance with Applicable Law and Policy," states: "***Charter Operator*** shall comply with all federal and state laws and regulations and all OPSB policies applicable to charter schools" (emphasis supplied).

Not only is the operational autonomy of the Willow School reflected in its governance structure and the Charter School Agreement with OPSB, but it is also cemented in the law. As explained in more detail in OPSB's Memorandum in Support of its Motion to Dismiss,[8] the Louisiana legislature very recently expressed its intent to "provide a framework of operational autonomy" for charter schools through the passage of Louisiana Act No. 334 of 2024, which amended La. R.S. § 17:3972(A) ("Act 334"). This operational autonomy explicitly includes the "autonomy necessary to manage its educational programming and daily operations."[9] Plaintiffs attempt to diminish the importance of Act 334 by focusing on the definition of "autonomy": "Autonomy means that unless mutually agreed upon by the chartering authority and charter school, or otherwise required or prohibited by law, the charter school shall have independent operational decision-making authority. . . ." But as previously established, the Charter School Agreement between the Willow School and OPSB reinforces the Legislature's intent to provide the Willow School with operational autonomy by including § 1.9 in the Charter School Agreement.

---

[8] R. Doc. 38-1 at p. 5.
[9] La. R.S. § 17:3991(C)(7).

Specifically, § 1.9 forbids OPSB from impeding on the Willow School's autonomy.[10] Plaintiffs' attempts to discredit OPSB's arguments regarding Act No. 334 are completely unfounded and unpersuasive.

2. **Plaintiffs do not have standing to assert their claims against OPSB because their alleged harm is not traceable to the actions of OPSB.**

Because OPSB does not have control over the daily operations of the Willow School, Plaintiffs' alleged harm is extremely attenuated from any actions that OPSB could take to either enforce, or not enforce, H.B. 71. Therefore, Plaintiffs' alleged injuries are not fairly traceable to the actions of OPSB. Neither Plaintiffs' allegations nor their Opposition show otherwise.

In their Opposition, Plaintiffs argue that OPSB "mistakes Article III's traceability prong for a proximate-cause requirement."[11] This is simply not the case. The United States Supreme Court has specifically stated that the "traceability" required for Article III standing does not exist when the Plaintiffs' alleged harm would be caused by a third party. In *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992), the Court stated that "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly. . . trace[able] to the challenged action of the defendant, ***and not*** . . . the result of the ***independent action of some third party not before the court***" (emphasis supplied). The Fifth Circuit agrees that a "claim of injury generally is too conjectural or hypothetical to confer standing when the injury's existence depends on the decisions of third parties,"[12] and has also stated that "[s]tanding is ordinarily substantially more

---

[10] § 1.9 of the Charter School Agreement states: "in order to ensure the appropriate level of autonomy to enable educators to successfully prepare students for success in college and career, the local school board shall not impede the operational autonomy of a charter school under its jurisdiction in the areas of school programming, instruction, curriculum, materials and texts, yearly school calendars and daily schedules, hiring and firing of personnel, employee performance management and evaluation, terms and conditions of employment, teacher or administrator certification, salaries and benefits, retirement, collective bargaining, budgeting,

[11] R. Doc. 46 at p. 10.

[12] *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

5

PD.46663094.2

difficult to establish when a causal relation between injury and challenged action depends upon the decision of an independent third party."[13] The Middle District of Louisiana has relied upon the holdings in *Lujan* and *Little* countless times.[14] Here, Plaintiffs' alleged harm, if any, would be directly attributable to the governing authority of the Willow School, and not the authority of OPSB. Plaintiffs' alleged harm is therefore extremely remote from the actions of OPSB, such that Plaintiffs' claims of injury are too conjectural or hypothetical to confer standing.

Simply put, it is the Willow School's responsibility, contractually, legally, and practically, to enforce – or not to enforce – H.B. 71. In their Opposition, Plaintiffs attempt to argue that their harm is traceable to the actions of OPSB because OPSB has the ability to take corrective measures against the Willow School should the Willow School choose not to enforce Louisiana state laws. However, this argument only reinforces the fact that the claimed harm is extremely far removed from any actions that the OPSB may imminently take. Should OPSB hypothetically, in the future, decide to take some unspecified corrective action against the Willow School, it would only do so after the Willow School decided if and how it was going to enforce H.B.71, which has not even taken effect yet. Therefore, the Plaintiffs' alleged harms are traceable to a third party that is not before the court in this lawsuit – the explicit example that the Supreme Court provided as a lack of traceability in *Lujan* and the Fifth Circuit in *Little*.

---

[13] *Association of American Phsyicians and Surgeons Educational Foundation v. American Board of Internal Medicine*, 103 F.4th 383 (5th Cir. 2024).

[14] *See, e.g., Donelon v. Altman*, No. 20-604, 2021 WL 4205654, at *2 (M.D. La. Sept. 15, 2021); *CIGNA Healthplan of Louisiana, Inc. v. State, ex rel. Ieyoub*, 883 F. Supp. 94, 102 (M.D. La. 1995); *Wetlands Mitigation Strategies, LLC v. Weyerhaeuser NR Company*, No. 21-256, 2022 WL 45903090, at *4 (M.D. La. Sept. 29, 2022); *Casino City, Inc. v. United States Department of Justice*, No. 04-557, 2005 WL 8141885, at *3 (M.D. La. Feb. 15, 2005).

PD.46663094.2

**3.  Plaintiffs do not have standing to assert their claims OPSB because Plaintiffs' claims are not redressable by a favorable outcome against OPSB.**

For the same reasons, Plaintiffs' alleged harm against OPSB is extremely speculative, such that Plaintiffs' alleged injury would not be redressed by a Judgment against OPSB. If the Court were to rule in Plaintiffs' favor against OPSB, OPSB still would not have the authority to enforce or not enforce H.B. 71 against the Willow School. At the very least, OPSB would have to work with the board of the Willow School to implement any ruling by the Court. This would involve ultimate action by the board of the Willow School regardless of how the Court ruled or what action OPSB took. The Willow School enjoys operational autonomy in its daily governance, and only bringing suit against the charter school directly would "potentially lessen" their claimed injuries.

## CONCLUSION

For the reasons set forth above and in OPSB's Memorandum in Support of its Motion to Dismiss, OPSB respectfully asks the Court to dismiss all claims brought by Plaintiffs against OPSB for lack of standing, and to deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:   /s/ Rebecca Sha
      Rebecca Sha (Bar #35317)
      Dan Zimmerman (Bar #2202)
      Canal Place | 365 Canal Street, Suite 2000
      New Orleans, Louisiana 70130
      Telephone: 504 566 1311
      Facsimile: 504 568 9130
      Email: rebecca.sha@phelps.com
      Email: zimmermd@phelps.com

**ATTORNEYS FOR DEFENDANT
ORLEANS PARISH SCHOOL BOARD**