UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DARCY ROAKE, et al.,

                 PLAINTIFFS,

v.                                            Civil Action No. 3:24-cv-517

CADE BRUMLEY, et al.,                    Judge: JWD - SDJ

                 DEFENDANTS.

**DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING EXPERT REPORT AND MOTION TO EXCLUDE PUTATIVE EXPERT TESTIMONY**

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...........................................................................................................................1

LEGAL STANDARD......................................................................................................................1

ARGUMENT...................................................................................................................................2

    I.    GREEN'S PROPOSED TESTIMONY IS UNRELIABLE. ..................................................................2

        A. Green offers no independent validation of his methodology.......................................2

        B.    Green's conclusions have been expressly rejected by
           the Supreme Court and the Fifth Circuit. .....................................................................4

        C. Green's background renders his proposed testimony unreliable..................................4

    II.    GREEN'S PROPOSED TESTIMONY IS NOT RELEVANT. ..............................................................6

        A.    Green's proposed testimony does not "help" the Court decide
           the case under the governing Establishment Clause standard. ....................................6

        B.    The historical facts are not in dispute, merely their characterization.......................8

CONCLUSION................................................................................................................................8

## TABLE OF AUTHORITIES

**Cases**

*Am. Legion v. Am. Humanist Ass'n*,
  588 U.S. 29 (2019) ................................................................................................................. 4

*Bocanegra v. Vicmar Servs., Inc.*,
  320 F.3d 581 (5th Cir. 2003) ................................................................................................. 7

*Brown v. Ill. Cent. R. Co.*,
  705 F.3d 531 (5th Cir. 2013) ............................................................................................. 2, 3

*Burleson v. Tex. Dep't of Crim. Just.*,
  393 F.3d 577 (5th Cir. 2004) ................................................................................................. 3

*City of Tuscaloosa v. Harcros Chems., Inc.*,
  158 F.3d 548 (11th Cir. 1998) ............................................................................................... 8

*Daubert v. Merrell Dow Pharms. Co.*,
  509 U.S. 579 (1993) ........................................................................................................... 2, 7

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ............................................................................................................... 3

*Guy v. Crown Equip. Corp.*,
  394 F.3d 320 (5th Cir. 2004) ................................................................................................. 2

*Harris v. FedEx Corp. Servs., Inc.*,
  92 F.4th 286 (5th Cir. 2024) .................................................................................................. 4

*Kennedy v. Bremerton Sch. Dist.*,
  597 U.S. 507 (2022) ............................................................................................................... 7

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................................... 2

*Moore v. Ashland Chem., Inc.*,
  151 F.3d 269 (5th Cir. 1998) ............................................................................................. 1, 2

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022) ................................................................................................................... 7

*Protestants and Other Americans United for
  Separation of Church and State v. O'Brien*,
  272 F. Supp. 712 (D.D.C. 1967) ............................................................................................ 6

*Shurtleff v. City of Boston*,
  596 U.S. 243 (2022) ............................................................................................................... 7

*Skidmore v. Precision Printing & Packaging, Inc.*,
  188 F.3d 606 (5th Cir. 1999) ................................................................................................. 2

*United States v. Valencia*,
  600 F.3d 389 (5th Cir. 2010) ................................................................................................. 5

*Van Orden v. Perry*,
  351 F.3d 173 (5th Cir. 2003) ................................................................................................. 4

*Van Orden v. Perry*,
  545 U.S. 677 (2005) ............................................................................................................4

**Other Authorities**

Fed. R. Evid. 702 ........................................................................................................... 2, 6, 7

29 Wright & Miller, Fed. Prac. & Proc. Evid. § 6265.2 & nn.2–3 (2d ed. 2023) ......................6

*McGuffey's Readers*, the *New England Primer* ........................................................................8

Steven K. Green, *The Fount of Everything Just and Right?*
  *The Ten Commandments as a Source of American Law*,
  14 J.L. & Rel. 525, 525, 530 (1999-2000) ..........................................................................5

**INTRODUCTION**

In accordance with the Court's order, ECF 37, Defendants submit this supplemental brief concerning expert testimony and move the Court to exclude the expert testimony of Professor Steven Green as both not reliable and not relevant.

Green's proposed testimony is not reliable for at least three reasons. First, Green's failure to identify any external standard validating his methodology renders his testimony unreliable. Second, Green's testimony attempts to overrule the Supreme Court on historical questions it has already definitively asked and answered. And third, Green's background as an advocate—including a decade as counsel for one of the impact-litigation law firms representing Plaintiffs—means his proffered opinions are not truly independent and are thus unreliable.

Green's testimony is also not relevant. It does not help to decide any fact at issue in this case because it is not directed at the governing Establishment Clause standard. That standard is not concerned with whether a specific challenged practice occurred in the past, but instead with whether the current challenged practice reflects any of the already-identified historical hallmarks of a religious establishment. Since Green's testimony does not address the hallmarks at all, it is not relevant. Moreover, even under Plaintiffs' erroneous test, Green's proposed testimony is irrelevant because it does not tend to establish any fact at issue: the historical facts are not in dispute, just how to characterize those facts. And that is a question for the Court, not an expert witness.

Given the lack of reliability and relevance, the Court should exclude Green's proposed testimony altogether. Alternatively, Green's testimony should be completely disregarded.

**LEGAL STANDARD**

The burden is on the party offering the expert testimony to establish by a preponderance of the evidence that it is admissible. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). Expert opinion testimony must meet two threshold requirements—reliability and relevance. *See*

1

*Daubert v. Merrell Dow Pharms. Co.*, 509 U.S. 579, 595–97 (1993). The court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid [the reliability criterion] and of whether the reasoning or methodology can be applied to the facts at issue [the relevance analysis]." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (quoting *Daubert*, 509 U.S. at 592–93). *Daubert* applies to all expert testimony, whether based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702.[1] The court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The court "must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

**ARGUMENT**

**I.    Green's proposed testimony is unreliable.**

Green's testimony is unreliable because (1) he provides no objective, independent validation of his methodology; (2) his proposed conclusions contradict decisions of the Supreme Court; and (3) his background prevents him from providing a reliable opinion. Any one of these three reasons suffices to exclude Green's testimony.

**A. Green offers no independent validation of his methodology.**

To establish reliability under *Daubert*, an expert bears the burden of furnishing "some objective, independent validation of [his] methodology." *Moore*, 151 F.3d at 276. "The expert's assurances that he has utilized generally accepted [principles] is insufficient." *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (quoting *Moore*, 151 F.3d at 276). Green makes no effort to provide

---

[1] The amended version of Fed. R. Evid. 702, which is designed to strengthen the "gatekeeping" duty of federal courts with respect to proposed expert testimony, went into effect on December 1, 2023.

such validation, citing absolutely no external standards for the methods he uses in reaching his conclusions. *See* Green Rep. 3–4 (describing methodology without citing any standards). Indeed, Green's showing falls short even of the expert whose testimony was rejected in *Brown*. There, the proposed expert's "preliminary report mentioned a variety of public and private guidelines and publications on roadway design and traffic control devices. However, the report failed to explain how any of these authorities support [his] conclusions relating to the 'narrow' pavement, 'skewed' angle, 'rough' surface, and 'steep' incline of the Hartley Lane crossing." *Id.* at 536. Here, Green has not discussed *any* public or private widely-accepted guidelines for assessing historical conclusions, much less explained how those authorities might support his specific conclusions.

For example, while agreeing that the Ten Commandments in fact appear in the historic texts cited by the Louisiana Legislature, Green Rep. 21–24, and that those texts "were used in many common schools from their initial publication through the early twentieth century," Green Rep. 24, Green nevertheless concludes that use or display of the Ten Commandments was not "prominent" or "widespread" in classrooms of prior centuries, Green Rep. 26. In reaching this conclusion, Green offers no description at all of what standards expert historians might use to decide whether a particular historical practice counts as "prominent" or "widespread" or whether those are even terms capable of scientific evaluation. This is therefore exactly the kind of methodologically-untethered opinion evidence both the Fifth Circuit and the Supreme Court have consistently warned against; indeed, no court should "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 587 (5th Cir. 2004) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Joiner*, 522 U.S. at 146 ("there is simply too great an analytical gap between the data and the opinion offered"). Yet Green offers only his *ipse dixit* when it comes to historical method and how a historian might reach conclusions about prominence or widespread-ness,

3

or whether those are even terms amenable to expert evaluation. That complete absence of externally validated methods alone suffices to make Green's proposed testimony unreliable.

### B. Green's conclusions have been expressly rejected by the Supreme Court and the Fifth Circuit.

Green's proposed testimony is also unreliable because he offers expert conclusions that directly contradict the conclusions of the Supreme Court and the Fifth Circuit. For example, Green opines that "the Ten Commandments are not a foundation of the American government or legal system." Green Rep. 5. But in *American Legion*, the Supreme Court held that "[the Ten Commandments] have historical significance as one of the foundations of our legal system." *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 53 (2019) (citing *Van Orden v. Perry*, 545 U.S. 677, 688–90 (2005)). The Court proceeded to explain that "for largely that reason, they are depicted in the marble frieze in our courtroom and in other prominent public buildings in our Nation's capital." *Id.* Similarly, the Fifth Circuit stated in *Van Orden* that

> [e]ven those who would see the decalogue as wise counsel born of man's experience rather than as divinely inspired religious teaching cannot deny its influence upon the civil and criminal laws of this country. That extraordinary influence has been repeatedly acknowledged by the Supreme Court and detailed by scholars. Equally so is its influence upon ethics and the ideal of a just society.

*Van Orden v. Perry*, 351 F.3d 173, 181 (5th Cir. 2003), *aff'd*, 545 U.S. 677 (2005). The question of whether the Ten Commandments lie at the foundation of American law has been asked and answered—they do. But Green's proposed testimony directly contradicts these holdings and is therefore *ipso facto* unreliable.

### C. Green's background renders his proposed testimony unreliable.

Determining reliability of expert testimony "requires more than a glance at the expert's credentials; the court must also ensure that the expert has reliably applied the methods in question." *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 303 (5th Cir. 2024) (quoting *United States v. Valencia*, 600

4

F.3d 389, 423–24 (5th Cir. 2010)). Here, however, the proposed expert's credentials themselves demand more than passing attention because they too demonstrate the unreliability of his testimony.

First, aside from his proposed testimony in this case, Green's views of history and the application of law to history have been consistently rejected by the United States Supreme Court. In his expert report, Green mentions an amicus brief he filed in 2005. Green Rep. 2 (describing *McCreary County* brief). Although Green omits any mention of the amicus briefs he has filed since 2005, he presents the information left out of his expert report on his faculty website:

> [Green] has authored and collaborated on more than 25 amicus curiae (friend-of-the-court) briefs at the U.S. Supreme Court, most recently in Carson v. Makin (2022), Kennedy v. Bremerton School District (2022), Espinoza v. Montana Department of Revenue (2019), American Legion v. American Humanist Association (2019), Masterpiece Cakeshop v. Colorado Civil Rights Commission (2018), Trinity Lutheran Church v. Comer (2017), and Hobby Lobby v. Burwell (2014).

*See* https://willamette.edu/law/faculty/profiles/green/index.html.

In every single case Green lists, the Supreme Court ruled **against** the understanding of the First Amendment and the related history Green advocated. A consistent record of rejection by the United States Supreme Court of one's conclusions about legal history over an almost 20-year period indicates *un*reliability of proposed expert testimony, not reliability.

Second, Green has taken positions in academic writing that contradict the positions he takes in his expert report. For example, he has explained elsewhere that "[i]t is axiomatic that many of the principles contained in the Ten Commandments are fundamental to the Western legal tradition…. Few people, if any, would dispute that the Ten Commandments … inform our notions of right and wrong and, as such, have influenced the development of Western law of which the American legal system is part." Steven K. Green, *The Fount of Everything Just and Right? The Ten Commandments as a Source of American Law*, 14 J.L. & Rel. 525, 525, 530 (1999-2000). He has also described the notion that the "Ten Commandments [have] been indirectly inspirational in the formation of legal norms" as "a relatively noncontroversial proposition." *Id.* at 530. Louisiana does not claim that the Ten

5

Commandments is "The Fount of Everything Just and Right," merely that the Ten Commandments are a noteworthy part of the American legal tradition and thus worthy of their corresponding place in American public education. One might therefore think that Green would have no objection to Louisiana's display of the Ten Commandments. But Green's expert report takes the opposite position.

Third, Green worked for over a decade for Plaintiffs' counsel Americans United for Separation of Church and State (AUSCS), indicating potential for bias.[2] To be sure, employees or former employees can sometimes testify as experts. But here there is a significant difference: Green both directed AUSCS's litigation practice for over a decade and represented AUSCS in cases touching on the very Establishment Clause issues presented in this case. Green was an impact litigator and strategist chiefly concerned with shaping Establishment Clause law. These circumstances reinforce that (a) his failure to demonstrate objective validation of his methodology and (b) the Supreme Court's repeated rejection of his historical conclusions doom any claim that Green's testimony is reliable.

## II.     Green's proposed testimony is not relevant.

Green's proposed expert testimony should also be excluded because it is not relevant under either the governing historical-hallmarks Establishment Clause standard or Plaintiffs' (erroneous) historical-practices test.

### A. Green's proposed testimony does not "help" the Court decide the case under the governing Establishment Clause standard.

First, Green's proposed testimony is not relevant because it is not directed at the governing Establishment Clause standard. "Clearly, expert testimony does not 'help' if it is unrelated to facts at issue or is based on factual assumptions that are not supported by the evidence." 29 Wright & Miller, Fed. Prac. & Proc. Evid. § 6265.2 & nn.2–3 (2d ed. 2023) (quoting Fed. R. Evid. 702 and collecting

---

[2] Americans United for Separation of Church and State was founded as an anti-Catholic organization known as Protestants and Other Americans United for Separation of Church and State, a history the organization has never publicly disavowed. *See, e.g.*, *Protestants and Other Americans United for Separation of Church and State v. O'Brien*, 272 F. Supp. 712 (D.D.C. 1967) (Establishment Clause challenge to the United States Postal Service's issuance of a Madonna and Child Christmas stamp).

6

cases). *See Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (Rule 702 "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility" (quoting *Daubert*, 509 U.S. at 592)).

Here, Green's proposed testimony is unrelated to the facts at issue, which are what Ten Commandments displays will be shown in Louisiana schools and whether *those* displays evince any of the historical hallmarks of a religious establishment. *See* Defs.' MTD at 24–33, ECF 39. Whether Ten Commandments displays existed in public or private schools in prior centuries, or whether the Ten Commandments were taught in public or private schools, is not determinative of the relationship between today's displays and the historical hallmarks identified by the Supreme Court. Similarly, the history of a "*specific practice*" tracing back to the Founding, or the private "views of Madison and Jefferson" on the practice, are not "facts at issue" for purposes of Rule 702. Pls.' Reply & MTD Resp. 28–29, ECF 47; Green Rep. 7–10, 18–26. Of course, the longstanding prominent role of the Ten Commandments in American classrooms is of great *educational* relevance—presumably no one thinks schoolchildren should be kept intentionally ignorant of those historical facts—but here what is educationally relevant is not *legally* relevant.

Indeed, Green's testimony—and Plaintiffs' overall approach to their case—rests on a misunderstanding of the relevant historical analysis. The Supreme Court has *already* delineated the historical hallmarks of a religious establishment. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 537 & n.5 (2022) . So now all that remains for lower federal courts to do is determine whether a challenged modern practice displays any of those hallmarks, using the "reasoning by analogy" that is "a commonplace task for any lawyer or judge." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 28–29 (2022). The whole point of the Court's identification of the hallmarks was to give "busy local officials and lower courts" guidance "they can rely on," not leave them to sift through the historical record from scratch or as curated by potentially agenda-driven experts. *Shurtleff v. City of Boston*, 596 U.S. 243,

7

285–86 (2022) (Gorsuch, J., concurring in judgment). In short, historical experts are simply beside the point under modern Establishment Clause analysis, and Green's proposed testimony is no exception.

### B. The historical facts are not in dispute, merely their characterization.

Green's proposed testimony would also not be relevant even under Plaintiffs' practice-focused historical test, because there is no material disagreement among the parties about the historical facts. Green agrees with the Louisiana Legislature that the Ten Commandments appeared in *McGuffey's Readers*, the *New England Primer*, and other historic classroom documents, and that those documents were used in "many" schools for decades. Green Rep. 21–26; *see also* Ex. G, Faircloth Decl. ¶¶ 9–19. The only disagreement is about whether the presence of the Ten Commandments in those documents counts as "prominent" or "widespread." But that is a question of characterizing the historical evidence, not establishing historical facts. And merely characterizing the evidence is not a question for expert testimony, but a question for the courts to decide. *See, e.g.*, *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 565 (11th Cir. 1998) ("characterizations of documentary evidence" improper subject for expert testimony "because the trier of fact is entirely capable of determining whether or not to draw such conclusions without any technical assistance from McClave or other experts").

## CONCLUSION

Green's testimony should be excluded or, in the alternative, disregarded completely.

Dated: August 30, 2024

Respectfully submitted,

**ELIZABETH B. MURRILL**
**Attorney General of Louisiana**

  */s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA*
  *Solicitor General*

  */s/ Zachary Faircloth*
ZACHARY FAIRCLOTH (La #39875)
  *Principal Deputy Solicitor General*
MORGAN BRUNGARD (La #40298)
  *Deputy Solicitor General*
OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70804
Telephone: (225) 326-6766
Facsimile:   (225) 326-6795
aguinagab@ag.louisiana.gov
faircloth z@ag.louisiana.gov
brungardm@ag.louisiana.gov

*Counsel for Defendants Cade Brumley, Conrad Appel, Judy Armstrong, Kevin Berken, Preston Castille, Simone Champagne, Sharon Latten-Clark, Lance Harris, Paul Hollis, Sandy Holloway, Stacey Melerine, Ronnie Morris, East Baton Rouge Parish School Board, Livingston Parish School Board, Vernon Parish School Board, and St. Tammany Parish School Board*

*\*pro hac vice granted*

9