# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| DARCY ROAKE, et al., | |
| PLAINTIFFS, | |
| v. | Civil Action No. 3:24-cv-517 |
| CADE BRUMLEY, et al., | Judge: JWD - SDJ |
| DEFENDANTS. | |

**DECLARATION OF ZACHARY FAIRCLOTH IN SUPPORT OF DEFENDANTS'**
**SUPPLEMENTAL BRIEF REGARDING EXPERT REPORT AND MOTION TO**
**EXCLUDE PUTATIVE EXPERT TESTIMONY**

I, Zachary Faircloth, declare and state as follows:

1. My name is Zachary Faircloth. I am the Principal Deputy Solicitor General for the State of Louisiana. I am one of the attorneys representing Defendants in this action. I am submitting this declaration in support of Defendants' Supplemental Brief Regarding Expert Report and Motion to Exclude Putative Expert Testimony. I have personal knowledge of the contents of this declaration.

2. Attached as Exhibit G-1 to this declaration is a true and correct copy of an article published by *The Herald-Leader* (Lexington, Ky.) on December 14, 1980.

3. Attached as Exhibit G-2 to this declaration is a true and correct copy of the photograph included in Exhibit 1, enlarged for readability.

4. Attached as Exhibit G-3 to this declaration is a true and correct copy of an article published by *The Herald-Leader* (Lexington, Ky.) on November 22, 1980.

5. Attached as Exhibit G-4 to this declaration is a true and correct copy of an article published by *The Cincinnati Enquirer* on November 18, 1980.

6. Attached as Exhibit G-5 to this declaration is a true and correct copy of an article published by the *Messenger Inquirer* (Owensboro, Ky.) on November 18, 1980.

7.   Attached as Exhibit G-6 to this declaration is a true and correct copy of an article published by *The Paducah Sun* on November 18, 1980.

8.   Attached as Exhibit G-7 to this declaration is a true and correct copy of an article published by *The Adair County News* (Columbia, Ky.) on March 20, 1979.

9.   Attached as Exhibit G-8 to this declaration is a true and correct copy of pp. 160–161 of W. L. McGuffey, *The Eclectic Second Reader for the Younger Classes in Schools*, published by Truman and Smith in 1836.

10.   Attached as Exhibit G-9 to this declaration is a true and correct copy of pp. 216–217 of Wm. H McGuffey, L.L.D., *McGuffey's Newly Revised Eclectic Second Reader,* published by Winthrop B. Smith & Co. in 1853.

11.   Attached as Exhibit G-10 to this declaration is a true and correct copy of p. 162 of Wm. H. McGuffey, L.L.D., *McGuffey's New Second Eclectic Reader for Young Learners*, reprinted by Henry Ford and published by American Book Company in 1925.

12.   Attached as Exhibit G-11 to this declaration is a true and correct copy of pp. 76–78 of *McGuffey's New High School Reader for Advanced Classes*, published by Wilson, Hinkle & Co. in 1857.

13.   Attached as Exhibit G-12 to this declaration is a true and correct copy of pp. 207–210 of *McGuffey's Fourth Eclectic Reader*, published by Van Antwerp, Bragg & Co. in 1879.

14.   Attached as Exhibit G-13 to this declaration is a true and correct copy of pp. 95–96 of Wm. H. McGuffey, L.L.D., *McGuffey's Newly Revised First Reader*, published by Winthrop B. Smith & Co. in 1844.

15.   Attached as Exhibit G-14 to this declaration is a true and correct copy of pp. 134–136 of Wm. H. McGuffey, L.L.D., *McGuffey's Newly Revised Eclectic Third Reader*, published by Winthrop B. Smith & Co. in 1853.

16.  Attached as Exhibit G-15 to this declaration is a true and correct copy of pp. 110–112 of Wm. H. McGuffey, LL.D., *McGuffey's New Fifth Eclectic Reader*, published by Winthrop B. Smith & Co. in 1857.

17.  Attached as Exhibit G-16 to this declaration is a true and correct copy of pp. 56–64 of *The New-England Primer*, originally published in 1808 and reprinted by Peter Brynberg in 1822.

18.  Attached as Exhibit G-17 to this declaration is a true and correct copy of pp. 54–57, 70–71, and 105 of Noah Webster, *The American Spelling Book*, printed by Isaiah Thomas and Ebenezer T. Andrews in 1790.

19.  Attached as Exhibit G-18 to this declaration is a true and correct copy of pp. 34–37 and 135–144 of Noah Webster, *The American Spelling Book*, published by Samuel G. Hayes in 1836.

Dated: August 30, 2024                    Respectfully submitted,

   */s/ Zachary Faircloth*
ZACHARY FAIRCLOTH (La #39875)
  *Principal Deputy Solicitor General*
  *Counsel for Defendants Cade Brumley, Conrad Appel,*
*Judy Armstrong, Kevin Berken, Preston Castille,*
*Simone Champagne, Sharon Latten-Clark, Lance*
*Harris, Paul Hollis, Sandy Holloway, Stacey Melerine,*
*Ronnie Morris, East Baton Rouge Parish School Board,*
*Livingston Parish School Board, Vernon Parish School*
*Board, and St. Tammany Parish School Board*

# EXHIBIT G-1

# Sunday Herald-Leader

# Context ■ Editorials ■ Business

## Section E

December 14, 1980

# Commandments ...
# Court ...
# Chaos

## The U.S. Supreme Court Has Ruled, But What Does That Ruling Mean?

By Andy Mead
Of The Herald Staff

Although he won't come right out and say it, the Rev. Tom Riner sounds much like someone who has just lost a battle and is about to win a war.

The battle, fought in the courts, was over posting copies of the Ten Commandments in Kentucky's public-school classrooms.

The war concerns the separation of church and state, an issue of growing significance throughout the country, and may be fought in the new, conservative-dominated Congress to be sworn in next month.

"There's going to be a showdown and it's going to be next year," said Riner, a Louisville minister and executive director of the Kentucky Heritage Foundation. "And it may be predicated on what's happening in Kentucky now."

What's happening now in Kentucky is that state officials have a U.S. Supreme Court decision and don't know what to do with it.

The decision, handed down last month by a court that split 5-4, said a 1978 state law requiring that copies of the Ten Commandments be posted in every public-school classroom in the state is unconstitutional.

The legislation was introduced by Rep. Claudia Riner, a Louisville Democrat who is Riner's wife. It said the state must post copies of the commandments as private contributions to pay for them become available.

After the law passed, the Riners led a drive that has placed the commandments in 21,000 of the state's 30,000 classrooms.

It's been a quarter-million-dollar venture, with most of the money coming from religious and civic groups and a fund-raising mail campaign that carried an endorsement from singer Pat Boone.

The Ten Commandments law was quickly challenged by five Louisville residents who claimed it violated constitutional guarantees of separation of church and state by favoring one religion over another.

Judge Squire Williams Jr. of Franklin Circuit Court was the first to hear the case. He said the law was constitutional.

The case moved to the Kentucky Supreme Court, which split 3-3 on the constitutionality question. That had

the effect of upholding Williams' decision.

The U.S. Supreme Court easily found a majority, deciding that the state law failed to pass even the first of three requirements it had established to test such church-state issues.

"It does not matter that the posted copies of the Ten Commandments are financed by voluntary private contributions, for the mere posting of the copies under the auspices of the legislature provides the 'official support of the State ... Government that the Establishment Clause (of the Constitution) prohibits," the justices said.

News of the decision was spread across the country by newspapers and television networks and merited a page in Time magazine. It seemed like a pretty straightforward story: The court had said the commandments can't be placed in classrooms.

When the decision got back to Kentucky, however, it quickly became very muddy.

The Riners claimed the court had not banned copies of the commandments but rather had merely thrown out the Ten Commandments law.

They said they had been using another law — one that allows local school boards to accept gifts — to put the commandments in all but nine of the state's 120 counties. (Fayette is one of the counties that does not have the copies posted.) Since the court had not addressed that law, they said, the decision was meaningless.

"They struck down the law mandating that the commandments be put in, but they did not outlaw the Ten Commandments," Mrs. Riner said.

She admitted, however, that while the Ten Commandments law had not been used in the strict sense, having it on the books "helped open up some areas" and made school

boards more willing to accept the copies as gifts.

Louisville lawyer William Stone, who represented the people challenging the law, naturally saw things differently.

"There is no doubt in my mind that when the court declared the law unconstitutional, they declared the posting of the commandments unconstitutional," he said.

When it came down to officially deciding what to do with those 21,000 copies already posted, state Superintendent of Public Instruction Raymond Barber asked Attorney General Steve Beshear for advice.

While Beshear was considering

the question, the Riners swung into action with a mailing from the Kentucky Heritage Foundation, asking supporters to "pray that Attorney General Beshear will not issue an opinion to censor the Ten Commandments from our schools." They also asked that supporters write to Beshear or call the attorney general's toll-free Consumer Protection number.

The mailing noted that Beshear did not vote for the Ten Commandments bill when he was in the Legislature — he abstained — and said he might "misinterpret" the court's decision.

A stack of mail soon piled up in

(Turn to U.S. RULING, E-2)



THE TEN COMMANDMENTS

I am the Lord thy God

Thou shalt have
no other gods before me

Thou shalt not
make unto thee
any graven image

Thou shalt not
take the name of the Lord thy
God in vain

Remember the Sabbath day
to keep it holy

Honor thy father
and thy mother

Thou shalt not
kill

Thou shalt not
commit adultery

Thou shalt not
steal

Thou shalt not
bear false witness

Thou shalt not
covet

# U.S. Ruling Doesn't End Commandments Battle

## From Page E-1

Beshear's office, but Deputy Attorney General Robert Chenoweth said the issue was "a legal question, which isn't influenced by the number of cards and letters."

Then, late last month, Barber and Beshear held a joint press conference to announce that they could not decide what the court meant when it struck down the Ten Commandments law and would ask the court to clarify the question of what to do with the copies already posted.

That brought sharp comments from both sides of the case, with both Riner and Stone insisting that Beshear should have been able to see quite easily that each one's side was correct.

Beshear said he wanted to try for a clarification from the court because "this is such an emotional issue and, with the attorney general's opinions having no force in law, whatever we said is not going to satisfy anybody's mind."

The Department of Education officially asked the court last week to say specifically whether the commandments must come down from the walls. The issue is temporarily in limbo while everyone waits to learn if the court will say more.

No one really expects it will.

Each year, the court receives hundreds of requests for rehearings and grants only a few.

That means the interpretation probably will have to be made in Kentucky. Beshear has said that if the court declines to rehear and explain the case, his office will either issue an opinion or ask the Franklin Circuit Court for one.

Two University of Kentucky constitutional-law professors said last week that they doubted the justices would consider the state's questions in this matter because it was very clear what they meant in the first place.

"It's totally unlikely that the court would explain one of it's decisions," said professor Paul Oberst. "I think it would be expected (by the court) that if something is unconstitutional, it's unconstitutional. It is the Ten Commandments being on the walls that is unconstitutional. They (the justices) are saying they can't be there."

Professor Alvin Goldman agreed.

"The court usually avoids spelling out obvious remedies," he said. "It said that it is unconstitutional for the Ten Commandments to be posted.

The clear implication is that where they are posted, they shall be removed."

Since the court decision came down, the Riners have been preparing for the worst by laying plans for the "showdown" Riner says will come next year.

They began by going to Washington and interviewing Supreme Court clerks about their chances for a rehearing, Riner said. He won't divulge all he learned in those "off-the-record" conversations, but he does not sound optimistic.

He said a clerk to one of the justices in the majority against the commandments told him they handed down the decision because "their feeling is the court is going to change soon and this is their way of leaving their mark."

Riner then went to the office of Sen. Jesse Helms, the conservative North Carolina Republican, and began laying the groundwork for legislation that will end court bans on school prayer, Bible readings and the Ten Commandments.

He hopes to have copies of the commandments in every public-school classroom in the country someday.

"I think America is just completely fed up with having the Constitution misread as a document to prohibit any reference to God in public places," Riner said last week. "In this next Congress, we're going to see legislation covering much more than just prayer in schools (which Helms already supports)."

The Senate already has passed a bill that would not allow the federal bench to rule on some "voluntary" school prayer cases. Supporters of the measure hope a more conservative House of Representatives will join the Senate next year.

And regardless of what happens in the Supreme Court, Congress or the Kentucky attorney general's office, Riner says he believes few of those 21,000 copies of the Ten Commandments already posted will ever come down.

"We've had state representatives and coaches call us and say the National Guard isn't big enough to take them down," he said. "There is a feeling in the Christian community in this country that this (Ten Commandments case) plus that attorney general in Tennessee saying athletic teams can't pray before games may be the straw that broke the camel's back.

"There is a second great American Revolution taking place. This is one nation under God."

# EXHIBIT G-2



# EXHIBIT G-3

# Church Reactions to Court's Ruling on Ten Commandments Vary

**By Jennifer Hewlett**
Staff Writer



Supreme Court ruling on the Ten Commandments in public schools: Thou shalt not post.

File Photo

Separation of church and state is required under the U.S. Constitution, but that's difficult to achieve when so many of the country's laws are based on Judeo-Christian beliefs, said some Lexington ministers.

The ministers were responding to the U.S. Supreme Court's decision earlier this week to strike down a 1978 Kentucky law requiring the Ten Commandments to be posted in public schools if the necessary funds to do so are provided by non-governmental sources.

Some of the local religious leaders contacted by the Herald said they think the commandments should be posted, while others objected to the idea. But nearly all agreed that issues involving separation of church and state, such as this one, will never be easily resolved.

"I would have preferred that the commandments had been left in the schools," said the Rev. Sewell Woodward Jr., pastor of Centenary United Methodist Church.

"I think there is some question whether that's a promotion of religion in school. But contained within those ideas (the commandments) are rules accepted by other religions too. It's a matter of judgment.

"Don't you find it rather ironic that the Ten Commandments are chiseled in marble on the Supreme Court building?" the minister asked.

"I hadn't thought a whole lot about it (the court ruling) because I

□ **More religion news is on pages B-2 and B-4.**

don't really have that strong feelings one way or another," said the Rev. Richard Landon, interim pastor of Trinity Baptist Church. "As a minister it doesn't upset me because the Ten Commandments are not hanging on classroom walls."

"The responsibility for religious instruction primarily rests in the home and churches," Landon said.

The Rev. Robert Wehage, associate pastor of Christ the King Church, said he supports the court's decision.

One reason Catholic schools were opened in the United States was because public schools were slanted toward Protestants, Wehage said. "Their (Catholic students') faith was held up to ridicule."

He said he feared that those who so fervently favor the posting of the commandments might be trying to force their beliefs on others. There is a big difference in the way the commandments are taught in fundamentalist churches as opposed to the way they are taught in other churches, he said.

"Morality needs to be taught. But religious instruction needs to be done through religious bodies," he said.

"I see no problem with the Ten Commandments being posted in the schools," said the Rev. T.H. Peoples Jr., minister of Pleasant Green Baptist Church. "I think it is a code of

conduct. I think it states basically that there is one God, and that's what America is all about."

Peoples said the United States was founded on Judeo-Christian principals, and to ignore the Ten Commandments is to ignore history.

He said that if the commandments have to be removed from classrooms, then evolution should not be taught in public schools.

"We ought to respect one another's views. The Ten Commandments should not be taught in the schools, but that doesn't mean they shouldn't be placed there," he said.

"We have to realize we live in a pluralistic society. We can't impose our values on others," said the Rev. Lawrence Durr, pastor of Hunter Presbyterian Church.

"Most Christians would disagree with posting the Koran in our public schools."

Durr said that if everyone had the freedom to post whatever they wished in public schools then beliefs that most people don't adhere to could be propagated within the school system.

"I view the Ten Commandments as a religious document, and not as a secular document, and therefore it doesn't belong in the schools," said Rabbi William J. Leffler of Temple Adath Israel.

"If we're going to post the Ten Commandments, then let's post it in the original Hebrew," he said.

"I'm getting tired of people such as Claudia Riner (a state representative who urged passage of the Ten

Commandments law) insinuating that religious documents are secular. The Ten Commandments are sacred. They're not secular," he said.

The Rev. H. Gene Templar, pastor of Faith Lutheran Church, said he doesn't think the commandments should be placed in classrooms, but that there is little reason to fuss about copies already posted in many Kentucky classrooms.

"I think I subscribe to the separation of church and state," he said. "But whether or not they're (the Ten Commandments) sitting there looking at me in the schoolroom doesn't bother me too much."

"Those commandments pretty much sum up our whole way of life. They're so much a part of the fabric of our society."

Templar said the issue has received more attention than it deserves. He said that instead of making a fuss over the posting of the commandments in schools, people should be more concerned with serious problems in schools, such as drug abuse.

"I'm disappointed (in the court decision)," said the Rev. Marshall J. Leggett, pastor of Broadway Christian Church. "The vote was very close. I believe there are many Americans who agree with the four (justices) in the minority."

"Margaret Chase Smith (a former U.S. senator from Maine) once said 'I believe there are many religions, but one morality, and the Ten Commandments best reflect that one morality,'" he said.

# EXHIBIT G-4

# Educators Decry High Court Ruling

**BY CINDY SCHROEDER**
Enquirer Reporter

"I just hate it," one Northern Kentucky educator said. It ignores the roots of America's legal system, a legislator said.

Other school officials said they would defer comment until they could read the Supreme Court ruling Monday that banned posting of the Ten Commandments in Kentucky public schoolrooms.

However, Ohio's school officials won't have to ponder the close court ruling because the state has no such Ten Commandments law. One was introduced last year in the Ohio legislature, but got nowhere.

The Kentucky law, passed in 1978, mandated all public schools post the Ten Commandments. Because of various court challenges, most Northern Kentucky schools have been slow to post plaques.

**WHEN TOLD** of the ruling, James Jenkins, Dixie Heights High School principal, said, "I just hate it. I really don't think that's hurting anyone's beliefs (posting the Ten Commandments by the main classroom entrance). However, he added, "We'll try to abide by the law."

"We'll have to see how the decision is worded and compare that with what we're doing," said John Grubbs, superintendent of Kentucky's Walton-Verona Schools.

In his district, copies of the commandments are posted in the elementary and high schools, Grubbs said.

Myron Reinhardt, acting superintendent of Campbell County Schools, said the issue "probably will be discussed" at the regular school board meeting Friday at the central office in Alexandria.

"If the Supreme Court has a ruling, I think we'll be obliged to obey it," Reinhardt said.

"**WE GAVE** two church-related groups permission to put Ten Commandment plaques in classrooms of two schools as far as I know," Reinhardt said.

"I want to get an opinion from our school board attorney before we do anything," said William Voelker, principal of A.J. Jolly School in Alexandria where Carthage United Methodist Church Women raised money to put plaques in the school last year. "I haven't seen the full statement."

The Fort Thomas Board of Education had approved a policy last week that would have allowed Ten Commandments plaques to be posted in its schools by outside groups, but had not had an opportunity to publicize it yet.

Dr. Fred Williams, superintendent, said a local church had given one of the system's teachers a framed copy of the Ten Commandments and she had asked if she could hang it in her school.

"We hadn't mailed out the board's decision yet," Williams said. "We won't be putting any (Ten Commandment plaques) on the walls of our classrooms now."

**BOONE COUNTY** Board of Education had approved posting the Ten Commandments, but only if final litigation ruled in favor of it, Superintendent C.R. Norman said.

Rep. Claudia Riner, D-Louisville, who was instrumental in getting the controversial Ten Commandments law passed in 1978, held an optimistic view of the vote.

"I'm very pleased that four of the justices recognized the roots of our legal system are based in the Ten Commandments," Riner said of the 5-4 decision.

Riner, who is not a lawyer, said she interpreted the U.S. Supreme Court decision as ruling against the state law that mandated posting the Ten Commandments in classrooms, and not against the posting of the commandments.

"When the State Supreme Court ruled last spring, (Chief) Justice (John) Palmore said he wasn't ruling on the issue of the Ten Commandments in the classroom, but ruling that the state cannot mandate putting them in," Riner said.

**IN AN** attorney general's opinion issued Aug. 28, 1978, Robert Chenoweth, assistant attorney general, said the commandments could be received by local boards and posted.



Enquirer photo BY MARK TREITEL

DIXIE HEIGHTS students, waiting for rides, sit under school's only copy of Ten Commandments, posted over an office door.

# EXHIBIT G-5

# Messenger ✦ Inquirer

VOL. 106   NO. 322          OWENSBORO, KY., TUESDAY, NOVEMBER 18, 1980          ☆20¢

# Ten Commandments requirement rejected

**By RICHARD CARELLI**
Associated Press

WASHINGTON — The Supreme Court on Monday struck down a Kentucky law that required the posting of the Ten Commandments on classroom walls in public schools.

The nation's highest court struck down the law by a 5-4 vote. The court's narrow majority said in an unsigned opinion that the law violated the Constitution's guarantee of religious freedom.

"The pre-eminent purpose for posting the Ten Commandments on schoolroom walls is plainly religious in nature," the court said in reversing a Kentucky Supreme Court ruling. "The Ten Commandments is undeniably a sacred text in the Jewish and Christian faiths, and no legislative recitation of a supposed secular purpose can blind us to that fact."

The 1978 law provided for each posted copy to contain, in small print, this notation concerning the display's purpose:

"The secular application of the Ten Commandments is clearly seen in its adoption as the fundamental legal code of Western Civilization and the Common Law of the United States."

Under the law, no tax money could be spent for the posted copies. Private donations were called for.

Monday's decision did not totally ban the Ten Commandments from public schools, just as the court's controversial 1963 ruling did not ban all Bible reading from the schools.

"This is not a case in which the Ten Commandments are integrated into the school curriculum, where the Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion or the like," the court said. "Posting of religious texts on the wall serves no such educational function."

The court's majority relied heavily on a 1971 decision that fashioned a three-pronged test for determining whether a state law violates the First Amendment's "establishment of religion" prohibition.

In the 1971 ruling, Chief Justice Warren E. Burger said, "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, and finally the statute must not foster an excessive government entanglement with religion."

Monday's decision said the Ken-

tucky law "has no secular legislative purpose and is therefore unconstitutional."

The law was challenged by four Louisville residents represented by the Kentucky Civil Liberties Union.

Voting to strike down the law were Justices William J. Brennan Jr., Byron R. White, Thurgood Marshall, Lewis F. Powell Jr. and John Paul Stevens.

Burger and Justice Harry A. Blackmun dissented, voting instead to hold off any decision until examining the arguments more closely.

Justices Potter Stewart and William H. Rehnquist said the Kentucky Supreme Court was right in upholding the law.

Sydell Stone, one of three Louisville women who challenged the law, said, "You've put sunshine in my heart on this rainy day," after she was notified of the Supreme Court decision. "I think it's a victory for the Constitution, particularly at this time in our history."

Rep. Dexter Wright, R-Louisville, a co-sponsor of the law, described the decision as "another case where the Supreme Court has overstepped its authority. We realize it interprets the law

*(Please see RULING, back page)*

## Will wait to remove plaques
## *Local officials cautious*

**By STEWART JENNISON**
Messenger-Inquirer

Owensboro and Daviess County school officials said Monday that they will wait for instructions before removing plaques displaying the Ten Commandments from school walls.

Their statements came after the U.S. Supreme Court ruled that the Kentucky law mandating the posting of the commandments in schools is unconstitutional.

It was not clear Monday night whether the court's decision would mean the plaques would have to come down. Private groups raised the money to buy the framed and glass-protected copies of the commandments, which are now hung in about 685 city and county classrooms.

Glenn Duncan, the Daviess County schools superintendent, said he found the court's decision very disturbing. He said he will await word from the Kentucky Department of Education before deciding what to do.

Duncan said the copies are hung in most schools and in every classroom of some schools. There's also one hung in the room where the county board of education conducts its business.

Ken Wills, the principal of Newton Parrish Elementary School in Owensboro, said that he plans to keep his donated plaques hanging until he is told to do otherwise by the city school board.

The Supreme Court's ruling overturned a Kentucky Supreme Court ruling that upheld a 1978 state law allowing the display of privately financed "permanent copies" of the Ten Commandments.

Owensboro Superintendent James Hilliard said he also wants to hear the Frankfort interpretation of the high court decision before yanking the 18-by-24-inch wall plaques.

Removing the copies may not be such a serious move, from the students' vantage, Hilliard suggested.

"I have some question that just posting them has that much impact. It's like a picture on the wall they get used to seeing.

"I've got a feeling children learn the Ten Commandments or whatever other rules they operate by before they get to school," Hilliard said.

State law said copies of the Ten Commandments could be placed in public

schools provided they were bought by the state superintendent of public instruction from funds donated to the state treasury.

But little money was sent directly to the state, and in July 1979, representatives of the Kentucky Heritage Foundation and the Daviess County Homemakers Club told the Owensboro Board of Education that they were willing to take the chance on a legal complaint by directly contributing the plaques to local schools.

Anna Fuqua, spokesman for the Owensboro-based Concerned Women of Kentucky, which worked with the Heritage Foundation to support the project, said Monday the plaques are legally the property of the schools.

If the schools feel they must dispose of the copies, she said the organization is willing to collect and store them.

Although members of the group apparently have met a tough legal setback, Mrs. Fuqua said the new conservatism of the U.S. Senate and White House may make the coming years a better time to push for restoration of the Ten Commandments through national legislation.



—Mark Mahoney, Messenger-Inquirer

A student at Tamarack Elementary School in Owensboro walks beneath a plaque bearing the Ten Commandments. The U.S. Supreme Court ruled Monday that a state law requiring the display of the Ten Commandments in state schools is unconstitutional.

# *RULING*

Continued from front page

but it doesn't make the law. The people passed this law.''

Mrs. Stone, a Unitarian, said the Ten Commandments ''must be considered a religious document and a religious document does not belong in the school system.''

Ann Bowers, who calls herself a non-believer in any form of organized religion, said the decision ''couldn't have come at a better time. They're getting a new administration in Washington and the possibility's always there for a new president to appoint a new justice to the court. One more dissenting vote in this case would have made quite a difference.''

Patricia Bricking, a Roman Catholic and the mother of three children in public schools, said, ''It's just great, just great what the court has done. It was ludicrous that this had to go as far as the Supreme Court.''

A schoolteacher, Mrs. Bricking said the commandments aren't posted in her elementary school, adding that she was ''ecstatic about the ruling.''

# EXHIBIT G-6

# Ten Commandments fight is likely for Kentucky

**By BILL BARTLEMAN
and NORMAN MARTIN
Sun Staff Writers**

Supporters of Kentucky's Ten Commandments law say they will fight a U.S. Supreme Court decision that posting the commandments violates the U.S. Constitution.

The high court Monday ruled in a 5-4 vote that posting the Ten Commandments violates the Constitution's freedom-of-religion guarantees.

The Rev. Tom Riner, president of the Kentucky Heritage Foundation, a prime force in raising private funds to pay for copies of the Ten Commandments, said he anticipates that legislation will be introduced in the next session of the Kentucky General Assembly to "correct" the wording of the statute struck down by the high court.

Riner, a Louisville minister, is the husband of state Rep. Claudia Riner, D-Louisville, primary sponsor of the 1978 legislation calling for the Ten Commandments to be posted in classrooms.

Bill Stone, Kentucky Civil Liberties Union attorney, said the Supreme Court decision leaves no doubt that posting the Ten Commandments in classrooms is unconstitutional. He said he doesn't believe a bill could be written that would not violate the Constitution.

Stone represented four Louisville residents who filed legal action opposing the 1978 law.

Western Kentucky school superintendents, meanwhile, awaited word from the state superintendent of public instruction on what to do about copies of the Ten Commandments now on display in classrooms.

"Right now, KRS 158.178 is statute, and until I am advised that the news media are correct, I will simply leave the Ten Commandments up in the classrooms," said Dr. Daniel Keck, superintendent of Paducah schools. "When they (state officials) tell me to take them down, I will take them down."

Ed Fossett, attorney for the state Department of Education, said he had not seen the ruling, and was not prepared to advise local school officials.

Fossett said that when he does receive a copy of the ruling, he will review it with the state attorney



This copy of the Ten Commandments in a Tilghman High math class, and others posted in most schools, will remain until official notice is given.

(Staff photo by Barkley Thieleman)

(Continued On Back)

# Ten Commandments . . .

(Continued From Page 1)
general's office.

Framed copies of the Ten Commandments are posted in most schools in western Kentucky; the copies were paid for with private donations, most of which came from Kentucky Heritage Foundation fundraising and from local churches.

Riner, meanwhile, claimed the high court ruling was based on the wording of the Kentucky statute, and not the constitutionality of the Ten Commandments being posted in classrooms.

Riner speculated that legislation will be introduced during the 1982 legislative session stating that "no document, whether Bible or Ten Commandments, would be censored or banned simply because it has a religious connotation."

Stone, however, disagreed with Riner on the nature of the ruling. He said the decision addressed the posting of the Ten Commandments in public classrooms, not simply the wording of Kentucky's law.

"The pre-eminent purpose for posting the Ten Commandments on schoolroom walls is plainly religious in nature," the court said. "The Ten Commandments is undeniably a sacred text in the Jewish and Christian faiths, and no legislative recitation of a supposed secular purpose can blind us to that fact."

"I think he is grasping for straws," Stone said in a telephone interview from his Louisville office when asked about Riner's comments. "I believe he thinks the ruling was based on using tax dollars to pay for the commandments . . . but that isn't so. It doesn't matter the source of the funds, what matters is the substance of the material being posted."

Stone said he received a "congratulatory" telephone call from the attorney who represented Riner and the Kentucky Heritage Foundation . "I think everyone in the legal community involved in this understands the ruling," Stone said.

Riner also said he is asking supporters of the law to write to Dr. Raymond Barber, state superintendent of public instruction, asking that he allow officials of each school system to decide if it they want to keep the Ten Commandments posted in their classrooms.

"It was a close decision and we feel like it is one that will be reversed in the future," Riner said. He said one and maybe two Supreme Court vacancies are expected to occur during President-elect Ronald Reagan's term. He said he thinks any Reagan appointees would conservatives rather than "liberal as many of the justices are today."

Bill Brown, superintendent of McCracken County schools, said he would wait to avoid confusion over the ruling. "I don't know whether the suit was to get them out of the classrooms or to stop the state from purchasing them," Brown said.

"Of course, none of ours was purchased with tax dollars. They were all donated by local churches," he said. Every classroom in the county system has a copy on the wall.

"My personal opinion is I don't see anything wrong with it, but here again I am not going to get into a religious debate or whatever," said Robert Jeffrey, superintendent of Murray city schools. But, he added, there will be no hesitation by him or the Murray school board in taking the Ten Commandments down once there has been an official ruling by the state board of education.

Fulton city schools won't have to worry about the situation. They never put any copies up. "We didn't have any up and didn't plan on putting any up until some civic or religious organization came forward with a request and the funds," said superintendent Ron McAlister. "If we had a request, we probably would have gone along with it."

All area superintendents contacted indicated there had been little or no community reaction other than calls from the news media.

## Chapter 158.178
## Kentucky Revised Statutes

Ten commandments to be displayed — (1) It shall be the duty of the superintendent of public instruction, provided sufficient funds are available as provided in subsection (3) of this section, to ensure that a durable, permanent copy of the Ten Commandments shall be displayed on a wall in each public elementary and secondary school classroom in the Commonwealth. The copy shall be sixteen (16) inches wide by twenty (20) inches high.

(2) In small print below the last commandment shall appear a notation concerning the purpose of the display, as follows: "The secular application of the Ten Commandments is clearly seen in its adoption as the fundamental legal code of Western Civilization and the Common Law of the United States."

(3) The copies required by this section shall be purchased with funds made available through voluntary contributions made to the state treasurer for the purposes of this section.

# EXHIBIT G-7

# Ten Commandments displayed in Washington

The Kentucky Heritage Foundation recently expanded the scope of its mission to include Washington, D.C. All seven Kentucky Congressmen as well as Sen. Ford and Sen. Huddleston were presented framed prints of the Ten Commandments to be hung in their Washington offices.

Fifth District Congressman, Tim Lee Carter wasted no time in hanging the Ten Commandments in his Washington office. Presenting the framed copy is Rev. Tom Riner, Executive Director of the Kentucky Heritage Foundation.

Presentations were also made to Deputy Att. General, Benjamin Civiletti for the Justice Department and to Mr. Phil Spector for the White House.

Waiving its strict ban on photographs, the U.S. Supreme Court gave special permission for the Kentucky Heritage Foundation to take two rare and remarkable pictures of the Ten Commandments as they are displayed inside the courtroom:

1. Directly above the Chief Justice is the hugh, marble relief of the Ten Commandments. It forms the base of the American Eagle symbolizing that American laws and institutions have been rooted in this ancient moral and legal code.

2. Inscribed in the marble wall to the left of the Supreme Court Justices is another figure of Moses holding the Ten Commandments.

In over 80 counties in Kentucky, local groups are actively working to put the Ten Commandments in the public school classrooms.

5,000 framed copies of the Ten Commandments are being placed in schools throughout the state including schools in the following 30 counties:

Ballard, Boyle, Brechinridge, Bullitt, Caldwell, Casey, Crittenden, Estill, Gallatin, Graves, Floyd, Hancock, Harlan, Harrison, Hickman, Hopkins, Jefferson, Livingston, Magoffin, Marion, Mason, Nelson, Ohio, Pulaski, Russell, Shelby, Taylor, Webster, Whitley, and Wolfe.

In addition to donating copies for public schools, most of the local groups sponsoring this project have also placed the Ten Commandments in the offices of elected officials, public libraries, and courtrooms in their county.

The goal of the Kentucky Heritage Foundation is to help local groups place framed copies of the Ten Commandments in schools in all 120 counties by the end of this school year.                    +



**TIM LEE CARTER AND REV. TOM RINER**

# EXHIBIT G-8

Case 3:24-cv-00517-JWD-SDJ    Document 53-2    08/30/24    Page 23 of 24

## LESSON LXXXIII.
### *The Ten Commandments.*

1. Every little boy and girl should know the Ten Commandments and be careful to obey them.

2. They were written by God himself, on two tables of stone. He then gave the tables to his servant Moses while he was upon Mount Sinai, amid thunders and lightnings and smoke.

3. The Ten Commandments embrace our duty to God and our neighbors. These are called the law of God.

4. All sin consists in breaking this law. Unfortunately we have all broken it, and have thus become exposed to the penalty, which says, "The soul that sinneth, it shall die."

5. But there is a way of escape from the punishment which we all deserve. The Savior has died and suffered for us. He is able and willing to save all who will seek the forgiveness of God through him.

#### THE TEN COMMANDMENTS.

1. Thou shalt have no other Gods before me.

2. Thou shalt not make unto thee any graven image, or any likeness of any thing that is in heaven above, or that is in the earth beneath; or that is in the waters under the earth. Thou shalt not bow down thyself to them, nor serve them; for I the Lord thy God am a jealous God, visiting the iniquity of the fathers upon the children, unto the third and fourth generations of them that hate me, and showing mercy unto thousands of them that love me, and keep my commandments.

3. Thou shalt not take the name of the Lord thy God in vain; for the Lord will not hold him guiltless that taketh his name in vain.

Generated on 2024-08-28 15:10 GMT / https://hdl.handle.net/2027/hvd.hn6n5r
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google

Original from
HARVARD UNIVERSITY

Case 3:24-cv-00517-JWD-SDJ     Document 53-2     08/30/24     Page 24 of 24

4. Remember the sabbath day, to keep it holy. Six days shalt thou labor, and do all thy work ; but the seventh day is the sabbath of the Lord thy God : in it thou shalt not do any work, thou, nor thy son, nor thy daughter, thy man-servant, nor thy maid-servant, nor thy cattle, nor the stranger that is within thy gates : for in six days the Lord made heaven and earth, the sea, and all that in them is, and rested on the seventh day : wherefore the Lord blessed the sabbath day, and hallowed it.

5. Honor thy father and thy mother, that thy days may be long in the land which the Lord thy God giveth thee.

6. Thou shalt not kill.

7. Thou shalt not commit adultery.

8. Thou shalt not steal.

9. Thou shalt not bear false witness against thy neighbor.

10. Thou shalt not covet thy neighbor's house, thou shalt not covet thy neighbor's wife, nor his man-servant, nor his maid-servant, nor his ox, nor his ass, nor any thing that is thy neighbor's.

---

*Questions.*—1. By whom were the Ten Commandments written ? 2. On what were they written ? 3. To whom did God give them ? 4. Who was Moses ? 5. Is there any thing unreasonable enjoined in the Ten Commandments ? 6. What punishment will God inflict upon those who break his law ? 7. In prefixing this penalty has not God shown his desire to have us obey and be happy ? 8. How can we escape from the punishment due to us ? 9. Was not God very merciful to give his son to die for our sins ? 10. Can we expect forgiveness unless we repent and break off from our sins ?

| where-fore | com-mand-ments | a-dul-te-ry |
| re-mem-ber | pun-ish-ment | thou-sands |
| neigh-bor | un-for-tu-nate-ly | sab-bath |
| guilt-less | for-give-ness | hal-low-ed |

o 2

Generated on 2024-08-28 15:10 GMT / https://hdl.handle.net/2027/hvd.hn6m5r
Public Domain, Google-digitized / http://www.hathitrust.org/access_use#pd-google

Digitized by Google     Original from HARVARD UNIVERSITY