**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| DARCY ROAKE, et al., | |
| PLAINTIFFS, | |
| v. | Civil Action No. 3:24-cv-517 |
| CADE BRUMLEY, et al., | Judge: JWD - SDJ |
| DEFENDANTS. | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND
ALTERNATIVE MOTION TO STAY PENDING APPEAL**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 1

    I.    THERE IS NO SUBJECT MATTER JURISDICTION. ....................................................... 1

        A.    Plaintiffs' Claims Are Not Ripe. ................................................................... 2

        B.    Plaintiffs Lack Article III Standing. ............................................................. 4

        C.    Brumley and Members of BESE Are Immune from Suit. ............................. 8

    II.    PLAINTIFFS FAIL TO STATE A CLAIM. ................................................................... 9

        A.    H.B. 71 Does Not Violate the Establishment Clause (Count I) .................... 9

        B.    H.B. 71 Does Not Prohibit the Free Exercise of Plaintiffs' Religion (Count II) ................ 18

    III. THE COURT SHOULD STAY ANY PRELIMINARY
        INJUNCTIVE RELIEF PENDING APPEAL. ............................................................... 20

CONCLUSION ........................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*A & R Eng'g & Testing, Inc. v. Scott,*
    72 F.4th 685 (5th Cir. 2023) ................................................................................................1

*ACLU v. Mercer County,*
    432 F.3d 624 (6th Cir. 2005) .............................................................................................11

*Agostini v. Felton,*
    521 U.S. 203 (1997) ...........................................................................................................13

*Am. Legion v. Am. Humanist Ass'n,*
    588 U.S. 29 (2019) ....................................................................................... 13, 16, 17, 20

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.,*
    103 F.4th 383 (5th Cir. 2024) .............................................................................................4

*Barber v. Bryant,*
    860 F.3d 345 (5th Cir. 2017) ..................................................................................3, 5, 6, 7

*Book People, Inc. v. Wong,*
    91 F.4th 318 (5th Cir. 2024) ............................................................................................3, 9

*Books v. Elkhart County,*
    401 F.3d 857 (7th Cir. 2005) .......................................................................................11, 16

*Briggs v. Mississippi,*
    331 F.3d 499 (5th Cir. 2003) .............................................................................................17

*Carney v. Adams,*
    592 U.S. 53 (2020) ...............................................................................................................5

*Casillas v. Madison Ave. Assocs., Inc.,*
    926 F.3d 329 (7th Cir. 2019) ...............................................................................................7

*Choice Inc. of Tex. v. Greenstein,*
    691 F.3d 710 (5th Cir. 2012) ...............................................................................................4

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993) .....................................................................................................18, 20

*Citizens for Clean Air v. U.S. Department of Transportation,*
    98 F.4th 178 (5th Cir. 2024) ................................................................................................6

*City of Austin v. Paxton,*
    943 F.3d 993 (5th Cir. 2019) ...............................................................................................8

*Clapper v. Amnesty Int'l,*
    568 U.S. 398 (2013) .............................................................................................................6

*Crawford v. Hinds County Board of Supervisors,*
    1 F.4th 371 (5th Cir. 2021) ..................................................................................................6

*Croft v. Governor of Tex.,*
    562 F.3d 735 (5th Cir. 2009) .............................................................................................13

*Croft v. Perry,*
  624 F.3d 157 (5th Cir. 2010) .................................................................. 9, 10, 16, 18, 19

*Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan,*
  938 F.3d 246 (5th Cir. 2019) .................................................................. 11, 13

*Doe v. Beaumont Indep. Sch. Dist.,*
  240 F.3d 462 (5th Cir. 2001) .................................................................. 16

*Doe v. City of Albuquerque,*
  667 F.3d 1111 (10th Cir. 2012) .............................................................. 10

*Doe v. Tangipahoa Par. Sch. Bd.,*
  494 F.3d 494 (5th Cir. 2007) .................................................................. 5

*Elec. Frontier Found. v. Office of Dir. Of Nat'l Intel.,*
  2009 WL 3297195 (N.D. Cal. Oct. 13, 2009) .......................................... 20

*Firewalker-Fields v. Lee,*
  58 F.4th 104 (4th Cir. 2023) .................................................................. 14

*Frame v. City of Arlington,*
  657 F.3d 215 (5th Cir. 2011) .................................................................. 6

*Freedom From Religion Found., Inc. v. County of Lehigh,*
  933 F.3d 275 (3d Cir. 2019) .................................................................. 17

*Fulton v. City of Philadelphia,*
  593 U.S. 522 (2021) .............................................................................. 19, 20

*Gregory v. Baucum,*
  2018 WL 10096597 (N.D. Tex. Feb. 23, 2018) ........................................ 20

*Hilsenrath on behalf of C.H. v. Sch. Dist. of the Chathams,*
  698 F. Supp. 3d 752 (D.N.J. 2023) ........................................................ 14

*Ingebretsen v. Jackon Public School District,*
  88 F.3d 274 (5th Cir. 1996) .................................................................. 5

*K.P. v. LeBlanc,*
  627 F.3d 115 (5th Cir. 2010) .................................................................. 8

*Kennedy v. Bremerton Sch. Dist.,*
  597 U.S. 507 (2022) ......................................................................11, 12, 13, 14, 15, 16

*Larson v. Valente,*
  456 U.S. 228 (1982) .............................................................................. 17, 19

*Lee v. Weisman,*
  505 U.S. 577 (1992) .............................................................................. 16

*Lemon v. Kurtzman,*
  403 U.S. 602 (1971) .............................................................................. 12

*Lozano v. Collier,*
  98 F.4th 614  (5th Cir. 2024) .................................................................. 14

*Lynch v. Donnelly*,
    465 U.S. 668 (1984) ...................................................................................................17

*Masterpiece Cakeshop v. Colorado Civil Rights Commission*,
    584 U.S. 617 (2018) ...................................................................................................19

*McCreary County v. ACLU*,
    545 U.S. 844 (2005) ............................................................................. 3, 5, 6, 10, 11, 12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ......................................................................20

*Moody v. NetChoice, LLC*,
    144 S. Ct. 2383 (2024) ......................................................................................... 10, 18

*Murray v. City of Austin*,
    947 F.2d 147 (5th Cir. 1991) ................................................................................ 5, 17, 20

*Murthy v. Missouri*,
    144 S. Ct. 1972 (2024) ............................................................................................ 5, 7

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    597 U.S. 1 (2022) .......................................................................................................14

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
    107 F.4th 415 (5th Cir. 2024) .....................................................................................10

*NiGen Biotech, L.L.C. v. Paxton*,
    804 F.3d 389 (5th Cir. 2015) ........................................................................................8

*School District of Abington Township v. Schempp*,
    374 U.S. 203 (1963) .....................................................................................................5

*Shurtleff v. City of Boston*,
    596 U.S. 243 (2022) ............................................................................................. 13, 15

*Staley v. Harris County*,
    461 F.3d 504 (5th Cir. 2006) ........................................................................................2

*Staley v. Harris County*,
    485 F.3d 305 (5th Cir. 2007) .................................................................................... 2, 3

*Stone v. Graham*,
    449 U.S. 39 (1980) ................................................................................ 4, 5, 11, 12, 19

*Tex. All. for Retired Ams. v. Scott*,
    28 F.4th 669 (5th Cir. 2022) ..................................................................................... 8, 9

*Texas Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ........................................................................................7

*Town of Greece v. Galloway*,
    572 U.S. 565 (2014) ...................................................................................................15

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .....................................................................................................7

*United States v. Rahimi*
  144 S. Ct. 1889 (2024) .................................................................................................. 10

*Van Orden v. Perry*,
  351 F.3d 173 (5th Cir. 2003) .................................................................... 3, 10, 16, 19

*Van Orden v. Perry*,
  545 U.S. 677 (2005) ...................................................................................... 3, 5, 13, 20

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
  535 U.S. 635 (2002) ........................................................................................................ 8

*Wallace v. Jaffree*,
  472 U.S. 38 (1985) ......................................................................................................... 13

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ......................................................................................................... 6

## Statutes, Regulations, and Other Authorities

La. R.S. § 17:262 ................................................................................................................. 9

La. R.S. § 17:2122 ...................................................................................... 9, 12, 13, 15

La. Admin. Code § 28:337(B)(41) ................................................................................... 9

*The New England Primer* and the *McGuffey Readers* .......................................... 13, 15

Amicus Br. of ACLU and Americans United for Separation of Church and State et al.,
  588 U.S. 29 (Jan. 30, 2019), 2019 WL 410764 ..................................................... 17

v

## INTRODUCTION

Plaintiffs' opposition brief confirms that the Court need do no more than dismiss the Complaint for lack of jurisdiction. Plaintiffs all but admit that binding Fifth Circuit case law holds that this case is not ripe. They also all but admit that binding Fifth Circuit case law holds that they lack Article III standing, a defect that cannot be remedied given the filing date-specific focus of the inquiry. And Plaintiffs have no answer to the state official Defendants' invocation of sovereign immunity. For these reasons, the Court should dismiss for lack of jurisdiction, without prejudice to any Plaintiff filing a new lawsuit if an actual controversy arises in the future. Moreover, Defendants respectfully submit that, in the interests of conserving the Court's and the parties' resources, the Court can resolve this case in a summary order without the need for a hearing. Nonetheless, if oral argument would aid the Court, Defendants stand ready to assist.

Although the Court need not reach the merits, the Complaint also fails to state a claim for relief. Plaintiffs now agree that, because they elected to bring a facial challenge, binding Fifth Circuit precedent requires them to plausibly allege that *every* application of H.B. 71 is unconstitutional—which they do not and cannot allege. This case is thus easily resolved on the merits in light of the Supreme Court's recent admonition that facial challenges are disfavored and difficult to win. On any of these bases, dismissal is in order. But if the Court were inclined to deny dismissal and enter an injunction, Defendants respectfully request a stay of that order pending appeal.

## ARGUMENT

### I.     There Is No Subject Matter Jurisdiction.

"Article III jurisdiction is always first." *A & R Eng'g & Testing, Inc. v. Scott*, 72 F.4th 685, 689 (5th Cir. 2023) (quotation omitted). And where, as here, the dispute is not ripe, Plaintiffs lack standing, and multiple Defendants are immune from suit, Article III jurisdiction is "also last." *Id.*

**A.  Plaintiffs' Claims Are Not Ripe.**

Plaintiffs seek to enjoin displays they have never seen, that have never been posted, and whose ultimate form(s) Defendants have not determined (if they will ever determine them at all). Both ripeness factors thus point toward dismissal: The claims are not fit for judicial decision, and Plaintiffs would suffer no hardship if this Court withholds consideration now without prejudice to a future lawsuit involving an actual display. Plaintiffs' response only confirms as much.

**1.** Plaintiffs' claims are not fit for judicial decision. Binding Fifth Circuit precedent is on point. *See Staley v. Harris County*, 485 F.3d 305, 309 (5th Cir. 2007) (en banc). In *Staley*, the Fifth Circuit held that a challenge to a future "redisplay" of a monument featuring an open Bible was unripe where "no decision ha[d] been made regarding any aspect of the future display." *Id.* That left the Fifth Circuit "unable to conduct the fact-intensive and content-specific analysis required" not just by any Supreme Court precedent but—the Fifth Circuit emphasized—the "Supreme Court decisions *addressing the constitutionality of Ten Commandments displays.*" *Id.* at 308–09 (emphasis added). This case is even less ripe. *See* Defs.' MTD 9–11, ECF 39.

Seeking to evade *Staley*, Plaintiffs contend that H.B. 71 sets out details about the displays that were not available in *Staley*. *See* Pls.' Reply & MTD Resp. 17–18, ECF 47 ("Pls.' Resp."). Not so. In *Staley*, the court knew exactly what the "Mosher monument" entailed down to its inscription, the size of the open Bible on its façade, the details of its refurbishment, and the precise location of its display case in the courthouse. *See Staley v. Harris County*, 461 F.3d 504, 506–07 (5th Cir. 2006). While the appeal was pending, the county "removed the monument from the public grounds and placed it in storage" during courthouse renovations, but it "specifically … asserted that it will display the monument again after the renovations are complete." *Staley*, 485 F.3d at 307–08. Still, the court held plaintiff's challenge to the future display "not ripe for review." *Id.* Though the court knew what the monument looked like before and knew it would be displayed again, what mattered in *Staley*, as here,

2

is that the required "fact-intensive and content-specific analysis" was impossible without an actual display at the courthouse. *Id.* at 309. Indeed, this case is even easier: Not only has "no decision … been made" about what context will surround the Commandments in any future H.B. 71 display, *id.* at 308, but no H.B. 71 display has ever appeared anywhere in the past.

Plaintiffs also contend that a facial challenge to all hypothetical applications of H.B. 71 transforms their case to a pure question of law. *See* Pls.' Resp. 16 ("Does the imposition of the Ten Commandments on the minor-child Plaintiffs, in accordance with the minimum statutory dictates of the Act, violate the First Amendment?"). That argument, however, runs into their lack of standing. That is because such a facial challenge is directly foreclosed by *Barber v. Bryant*, 860 F.3d 345, 354 (5th Cir. 2017), which reiterated that there is no "basis for standing to challenge the endorsement of beliefs that exist only in the text of the statute." Rather, *Barber* could not be clearer: "In cases involving religious displays … , we have required *an encounter with the offending item* … to confer standing," *id.* at 353 (emphasis added)—an encounter that Plaintiffs do not and cannot allege.

This cautious approach makes good sense in the context of the Ten Commandments, where some displays have been struck down and some upheld depending on their context—including by the same Court on the same day. *See Van Orden v. Perry*, 545 U.S. 677 (2005); *McCreary County v. ACLU*, 545 U.S. 844, 860 (2005); *see also Van Orden v. Perry*, 351 F.3d 173, 178, 180 (5th Cir. 2003) (court's "delicate task" is to "plac[e] th[e] display of the decalogue in its full setting," focusing on the "specific facts and context of the display"), *aff'd*, 545 U.S. 677 (2005). This case is thus a far cry from *Book People, Inc. v. Wong*, 91 F.4th 318, 334 (5th Cir. 2024), which concerned a law that was allegedly causing plaintiffs "immediate economic injury" and involved a compelled-speech claim that turned on a pure question of law that required "no further factual" development.

So the problem persists that Plaintiffs have not seen an H.B. 71 display, nor does anyone know what any such display may look like—and there is no basis to believe that H.B. 71 displays will look

anything like the standalone Ten Commandments displays at issue in *Stone v. Graham*, 449 U.S. 39 (1980), *see* Defs.' MTD 24–33 (illustrations of potential displays). *See* Ex. G, Faircloth Decl. ¶¶ 2–8 (collecting *Stone* displays). Under *Staley* and *Barber*, therefore, Plaintiffs' claims are unfit for judicial decision.

**2.** Plaintiffs also face no hardship from dismissal without prejudice. *See Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 396 (5th Cir. 2024). The type of hardship relevant to ripeness "inhere[s] in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief, and the harm of being forced to modify one's behavior in order to avoid future consequences." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (cleaned up). As Defendants have explained, Defs.' MTD 11–12, none of those hardships would flow from dismissal here.

Resisting this conclusion, Plaintiffs argue the hardship inquiry turns entirely on a mashup of the Article III injury and irreparable harm standard. Pls.' Resp. 18. But that misunderstands that any hardship must flow *from* "withholding court consideration." *Choice Inc.*, 691 F.3d at 715. Plaintiffs fail to explain how withholding consideration now leads to any "harmful creation of legal rights or obligations; practical harms on the interests [they] advance[];" or "the harm of being forced to modify [their] behavior in order to avoid future adverse consequences." *Id.* And Plaintiffs still fail to identify any impediment to their filing suit when (or if) specific H.B. 71 displays are (1) donated or funded and (2) posted where their children might actually view a display that they believe violates their constitutional rights. Accordingly, the Court should dismiss on ripeness grounds without prejudice to a Plaintiff filing a future case with an H.B. 71 display (if any are donated or funded) in hand.

**B.  Plaintiffs Lack Article III Standing.**

The ripeness problems also highlight Plaintiffs' Article III standing problem. Standing is measured "as of the time [Plaintiffs] brought th[e] lawsuit"—June 24. *Carney v. Adams*, 592 U.S. 53, 59

(2020). As of that date, Plaintiffs met none of standing's three elements (injury in fact, traceability, and redressability), *see* Defs.' MTD 12–17; and Plaintiffs' response confirms they cannot meet their burden to show standing, *see* Pls.' Resp. 7–15.

**1.** Plaintiffs have not established a "'concrete, particularized, and actual or imminent'" injury-in-fact. *Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024). As just explained, Fifth Circuit precedent precludes Plaintiffs from raising an Establishment Clause *facial* challenge based on the text of H.B. 71; and because Plaintiffs and their children have not "encountered" an H.B. 71 display, they cannot raise an *as-applied* challenge either. *See Barber*, 860 F.3d at 353–54 ("In cases involving religious displays and exercises, we have required an encounter with the offending item or action to confer standing. … The religious-display cases do not provide a basis for standing to challenge the endorsement of beliefs that exist only in the text of the statute.").

Plaintiffs contend that *School District of Abington Township v. Schempp*, 374 U.S. 203 (1963), and *Ingebretsen v. Jackon Public School District*, 88 F.3d 274 (5th Cir. 1996), carry them past *Barber* here. Pls.' Resp. 7, 10. Not so. As for *Schempp*, the religious "exercises [were] being conducted" in the plaintiffs' children's classrooms at the time they filed suit—the statutes requiring the exercises were passed years before. 374 U.S. at 224; *see id.* at 205–08 & n.1 (Pennsylvania case); *id.* at 211–12 (Maryland case). The case is therefore fully consistent with the Fifth Circuit's subsequent decision in *Barber* and other precedents echoing it. *See Murray v. City of Austin*, 947 F.2d 147, 150 (5th Cir. 1991) (requiring a "personal[] confront[ation]" with a cross insignia to establish standing); *see Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 497–99 (5th Cir. 2007) (en banc) (ordering dismissal for lack of standing because there was no evidence that plaintiffs were exposed to challenged prayers at school board meetings).

As for *Ingebretsen*, that case involved a law making "inappropriate government involvement in religious affairs *inevitable*," 88 F.3d at 278 (emphasis added) (citation omitted). Yet we know from (*inter alia*) *Van Orden*, *McCreary*, and even *Stone* itself that Ten Commandments displays are not "inevitabl[y]"

"inappropriate," *supra* Section I.A; *see McCreary*, 545 U.S. at 846 ("*Stone* did not purport to decide the constitutionality of every possible way the Commandments might be set out by the government, and under the Establishment Clause detail is key."). So the binding rule here is the one laid out in *Barber*: "In cases involving religious displays and exercises, we have required an encounter with the offending item or action to confer standing." 860 F.3d at 353.

*Barber* also teaches that requiring "an encounter with the offending item" in "religious display … cases represent[s] the outer limits" of where courts find "Establishment Clause injuries." *Id.* So Plaintiffs' analogies to other statutory claims do not help. *See* Pls.' Resp. 10–11. Indeed, *Frame v. City of Arlington*, 657 F.3d 215, 235 (5th Cir. 2011) (en banc), concerned only whether Plaintiffs had a private right of action under Title II and instructed to "apply established standing doctrine to weed out any hypothetical claims." Similarly unhelpful is *Crawford v. Hinds County Board of Supervisors*, 1 F.4th 371, 376 (5th Cir. 2021), in which a wheelchair-bound man suffered a *present injury* of "systematic exclusion" from jury service because of courthouses' ongoing accessibility issues—evidenced by two past instances of denial of the right to serve on a jury because of wheelchair inaccessibility. And altogether afield is *Citizens for Clean Air v. U.S. Department of Transportation*, 98 F.4th 178, 187 (5th Cir. 2024), which addressed an APA challenge to an agency action based on a procedural-right violation.

Moreover, Plaintiffs' standing theory "require[s] guesswork as to how independent decisionmakers will exercise their judgment." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 413 (2013). No one has committed to donating displays (much less specific displays that could be analyzed for context) or the funds for such a display, so it is entirely speculative what sort of display (if any) a hypothetical donor may provide. Plaintiffs' "theory of *future* injury" resulting from independent decisionmakers' judgment "is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *Id.* at 401 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

As Defendants explained, Plaintiffs' inability to show Article III injury is not surprising—it is a product of their premature resort to the federal courts five days after the Governor signed H.B. 71. The Fifth Circuit prevents this Court from expanding the "outer limits" of Article III injury to find standing here. *Barber*, 860 F.3d at 358. But nothing prevents Plaintiffs from filing a new lawsuit if and when they actually suffer an Article III injury.

**2.** Because Plaintiffs have not alleged an injury, they have also failed to show "any concrete link between their injuries and the [D]efendants' conduct." *Murthy*, 144 S. Ct. at 1997. Worth repeating is the undisputed fact that the Complaint's over 100 paragraphs of "Factual Allegations" never mention a single Defendant. *See* Compl. ¶¶ 37–155, ECF 1. In response, Plaintiffs claim that the Defendants' "implementation responsibilities under the Act" are sufficient such that "this [traceability] link *will* occur once Defendants take actions." Pls.' Resp. 14 (emphasis added). In so claiming, Plaintiffs concede that any alleged injury is not traceable to any Defendant at the time they filed this lawsuit— the key point in time—and no link exists today. And their reliance on *Texas Democratic Party v. Abbott*, 961 F.3d 389, 399 (5th Cir. 2020), further belies their position. There, the *facial* "invalidity of a Texas election statute" was traceable to statewide election officials. *Id.* So Plaintiffs confirm that the alleged facial invalidity of H.B. 71 is their *only* alleged injury that is purportedly traceable to any Defendant— and that injury is altogether foreclosed by *Barber*, 860 F.3d at 354.

**3.** Because Plaintiffs have not experienced any injury-in-fact (much less one traceable to any particular Defendant's conduct), there is also "no injury for [this] federal court to redress." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019); *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.").

### C. Brumley and Members of BESE Are Immune from Suit.

The claims against Defendants Brumley and BESE members independently warrant dismissal because they "are effectively suits against a state" barred under the Eleventh Amendment. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Nor can Plaintiffs invoke *Ex parte Young*'s equitable exception since (1) Plaintiffs cannot identify any ongoing violation by these Defendants and (2) these Defendants do not have the requisite authority to enforce H.B. 71. *See* Defs.' MTD 17–20.

In response, Plaintiffs acknowledge *Ex parte Young* is their only way around sovereign immunity. *See* Pls.' Resp. 18–19. Conceding that they have not alleged an ongoing violation, Plaintiffs invoke an out-of-circuit case to suggest a continuing violation is unnecessary. *See* Pls.' Resp. 20–21. That is incorrect. *Ex parte Young*'s "straightforward inquiry" asks "whether [the] complaint alleges an ongoing violation of federal law." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *see NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). And purging the ongoing violation requirement would turn *Ex parte Young* inside out. *See K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (Only once "a state actor enforces an unconstitutional law" is he "stripped of his official clothing and becomes a private person subject to suit.").

Nor could Plaintiffs identify the requisite enforcement authority to invoke *Ex parte Young*— "compulsion or constraint," *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022), like "prohibiting payment of claims under [an] abortion statute," "rate-setting," "sending letters threatening formal enforcement," or a "threat of criminal prosecution," *City of Austin*, 943 F.3d at 1001–02 (collecting cases). The Fifth Circuit has repeatedly held that the "general duty to see that the laws of the state are implemented" is insufficient. *Scott*, 28 F.4th at 671. Yet Plaintiffs retreat to the same allegations about BESE's and Brumley's generalized responsibilities to promulgate and implement rules concerning H.B. 71 that supposedly "will necessarily result in the constraint or compulsion of Plaintiffs." Pls.' Resp. 18–19; *see* Compl. ¶¶ 19–21.

8

For Brumley's part, Plaintiffs cannot identify how H.B. 71 (or any other statute) gives Brumley the authority of "compulsion or constraint"—and especially not over these Plaintiffs. *See Scott*, 28 F.4th at 671. H.B. 71 simply requires the Department of Education to "identify," and "list," "free [compliance] resources on the department's internet website." La. R.S. § 17:2122. And that limited statutory directive is far afield of *Book People*, 91 F.4th at 335, in which the Texas Legislature gave the Texas official the statutory carrots and sticks to "compel [plaintiffs] to submit ratings with which they disagree[d]," and "constrain [plaintiffs] from continuing to do business with school districts if they fail[ed] to submit the required ratings or decline[d] to acquiesce in the State's revised ratings."

For BESE members, there is no basis to think any rule they promulgate will necessarily compel or constrain anyone. Remember, BESE's rule about the "In God We Trust" motto simply tells schools to adopt "policies and procedures that address … display of the national motto in each classroom in each school under its jurisdiction in accordance with R.S. 17:262." La. Admin. Code § 28:337(B)(41).

## II.    Plaintiffs Fail to State a Claim.

Even if this Court reaches the merits, it should dismiss the Complaint. None of Plaintiffs' counterarguments refute the obvious: Plaintiffs do not and cannot plausibly allege that every potential H.B. 71 display violates the Establishment Clause or their Free Exercise rights. Defs.' MTD 20–47.

### A.  H.B. 71 Does Not Violate the Establishment Clause (Count I).

**1.** Plaintiffs freely concede that they assert a "facial challenge." Pls.' Resp. 1, 22. That means they "must show that there is no set of circumstances under which" H.B. 71 "is constitutional"—*i.e.*, that it is "unconstitutional in every application." *Croft v. Perry*, 624 F.3d 157, 164 (5th Cir. 2010). But as Defendants' illustrations demonstrate, there are endless ways to formulate H.B. 71-compliant displays that satisfy the Establishment Clause; indeed, all of them pass muster under the now-governing historical hallmarks test. Defs.' MTD 24–33.

In response, Plaintiffs complain that *Croft* is the only time the Fifth Circuit has applied the no-set-of-circumstances test to Establishment Clause claims. Pls.' Resp. 22. But they notably do not dispute that *Croft* is binding Fifth Circuit precedent that dictates the analytical framework here—and it is a framework that makes good sense since it governs most First Amendment facial claims. Plaintiffs then ask this Court to ignore Fifth Circuit precedent and the illustrations, insisting that the Court should evaluate H.B. 71 "independent of particular applications." *Id.* at 22–23. That is incorrect: "To decide [a] facial challenge[]," courts "*must* explore the laws' full range of applications," *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2398 (2024) (emphasis added), to decide, in this case, if "there is no set of circumstances under which [the implementation of H.B. 71] is constitutional." *Croft*, 624 F.3d at 164.[1]

So Plaintiffs fall back on the only position they can take given their strategic choice to bring a facial claim: that *any* display of the Ten Commandments in public-school classrooms is unconstitutional, "[n]o matter the details," "content," or "exact parameters." Pls.' Resp. 1, 5, 23. But even Plaintiffs' own favored, *Lemon*-era precedent repudiates that position: "under the Establishment Clause detail is key." *McCreary*, 545 U.S. at 846. "[C]ontext matters" in evaluating "the government's use of religious symbolism." *Croft*, 624 F.3d at 168 ("[t]he whole of the thing always matters"). The Court's "delicate task" is to "plac[e] th[e] display of the decalogue in its full setting," focusing on the "specific facts and context of the display." *Van Orden*, 351 F.3d at 178. As the illustrations in the opening brief show, Plaintiffs cannot plausibly claim that every possible H.B. 71 display of the

---

[1] Plaintiffs cite a Tenth Circuit case that viewed the no-set-of-circumstances language as referring to "the *result* of a facial challenge in which a statute fails to satisfy the appropriate constitutional standard," "not as setting forth a *test* for facial challenges." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012). But, as both the Supreme Court and Fifth Circuit have more recently confirmed, that is not correct. *Moody*, 144 S. Ct. at 2398; *see United States v. Rahimi*, 144 S. Ct. 1889, 1896–97, 1903 & n.2 (2024) (test failed because challenged statute "constitutional … as applied to the facts" of one particular case); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415, 425 (5th Cir. 2024) (test failed because agency could take actions consistent with its statutory authority to redress plaintiffs' concerns with the potential exercise of that authority).

Commandments, however contextualized, violates the Establishment Clause—and Plaintiffs conspicuously do not claim that every single illustration violates the Establishment Clause.

**2.** Nor does *Stone* dictate otherwise. *Stone* applied the *Lemon* test. But as Plaintiffs concede (at 26), that test has now been "abandoned" by the Supreme Court. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 534 (2022). And while Plaintiffs try to re-ground *Stone* on a different rationale, Pls.' Resp. 26, the decision was unambiguously *Lemon* to the core: Because Kentucky's law "had no secular legislative purpose" as required by *Lemon*, *Stone* reasoned, it was "therefore unconstitutional," *Stone*, 449 U.S. at 40–41.

Plaintiffs also advance a fallback argument, insisting that *Stone* remains "binding" despite *Lemon*'s demise until the Supreme Court formally overrules *Stone*. Pls.' Resp. 24–25. But if the Court's rejection of *Stone*'s analytical framework did not implicitly overrule the case (and it did), it certainly prevents courts from *extending Stone* beyond its facts. *See Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 257–59 & n.11 (5th Cir. 2019). Even before *Kennedy*, courts had recognized that "[w]hatever is left of *Stone* is limited to circumstances involving public displays of the Ten Commandments in isolation." *ACLU v. Mercer County*, 432 F.3d 624, 634 (6th Cir. 2005); *see Books v. Elkhart County*, 401 F.3d 857, 864–66 (7th Cir. 2005) (upholding Ten Commandments situated in display of many documents). The facts here are distinct from those in *Stone* in at least two key respects.

*First*, *Stone*, unlike this case, did not involve pre-enforcement adjudication of displays of unknown content. Rather, there had been significant "de facto" enforcement—"15,000 framed copies" had been "placed in all classrooms in 55 counties." *Stone v. Graham*, 599 S.W.2d 157, 159 (Ky. 1980) (Lukowsky, J., for reversal). And we know what those displays looked like: The text of the Commandments "stood alone," with "no context that might have indicated an object beyond the religious character of the text." *McCreary*, 545 U.S. at 867–68; *see* Ex. G, Faircloth Decl. ¶¶ 2–8. Meanwhile, no one knows what any H.B. 71 displays will ultimately look like here, and the potential

11

display illustrations all contextualize the Ten Commandments for a wide array of pedagogical purposes. The contrast proves why "context matters" in these cases:

 

Faircloth Decl., Ex. G-2; Townsend Decl., Ex. A-4, ECF 39-2. And now that *Kennedy* has confirmed *Lemon*'s abrogation, *Stone* certainly does not apply to the kind of elaborate, creative, and diverse displays that H.B. 71 permits and Defendants might consider here. *See McCreary*, 545 U.S. at 867 ("*Stone* did not purport to decide the constitutionality of every possible way the Commandments might be set out by the government[.]"); Defs.' MTD 40.

    *Second*, unlike Louisiana, Kentucky failed to substantiate any "secular legislative purpose" for requiring its public schools to display the Ten Commandments in their classrooms. *Stone*, 449 U.S. at 40–41 (quoting *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971)). Whereas the *Stone* display contained a single-sentence notation untethered to the public-school context, *id.*, H.B. 71 requires that each display include a three-paragraph context statement regarding "The History of the Ten Commandments in American Public Education" to explain Louisiana's historical and educational purposes for enacting the law. La. R.S. § 17:2122(B)(3).[2] As H.B. 71 acknowledges, the Supreme Court

---

[2] The *Stone* law also required the context statement to be "[i]n small print." *Stone*, 449 U.S. at 39 n.1, 41. And as the picture above demonstrates, in reality, the statement appeared in print so small as to be virtually indecipherable. *Supra* p. 12 (faint

has validated this historical purpose of displaying the Ten Commandments—"one of the foundations of our legal system." *Id.* § 17:2122(A)(3) (quoting *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 53 (2019)); *see id.* § 17:2122(A)(2), (6) (citing *Van Orden*, 545 U.S. at 688). And the statute cites historical sources supporting Louisiana's educational purpose for displaying them in public schools specifically. *See, e.g.*, *id.* § 17:2122(B)(3) (citing, *inter alia*, *The New England Primer* and the *McGuffey Readers*).

*Stone* did not analyze, because Kentucky did not provide, these historical and educational bases for displaying the Ten Commandments in the classroom. Yet these are exactly the sort of "plausible" legislative statements of "secular purpose" to which even *Lemon*-era courts had to "defer." *Wallace v. Jaffree*, 472 U.S. 38, 74–75 (1985) (O'Connor, J., concurring); *accord McCreary*, 545 U.S. at 864. While Plaintiffs cherry-pick legislator statements about the law's importance, Pls.' Resp. 27, even under *Lemon*, that "[s]ome legislators may have religious motives" could "not invalidate an act with an otherwise secular legislative purpose," *Croft v. Governor of Tex.*, 562 F.3d 735, 742–43 (5th Cir. 2009).

This case is factually and procedurally distinct. Given "the tension between [*Stone*] and intervening Supreme Court decisions," this Court cannot "extend" *Stone* to these facts. *Dialysis Newco*, 938 F.3d at 257–59 & n.11; *see Agostini v. Felton*, 521 U.S. 203, 237 (1997) (courts should follow undermined Supreme Court decisions only if they "directly control[]" (citation omitted)).

**3.** Instead of applying *Lemon*'s (and *Stone*'s) "examination of a law's purposes, effects, and potential for entanglement with religion," *Kennedy* instructs courts to look elsewhere—to the six "hallmarks of religious establishments the framers sought to prohibit." 597 U.S. at 534, 537 & n.5; *see Shurtleff v. City of Boston*, 596 U.S. 243, 286 (2022) (Gorsuch, J., concurring in judgment). Plaintiffs resist the hallmarks altogether as "plucked … from Justice Gorsuch's *concurrence* in *Shurtleff*." Pls.' Resp. 28. The problem for Plaintiffs is that *Kennedy* (authored by Justice Gorsuch) "adopt[ed] … these hallmarks

---

blurry line beneath "covet" and above border). Moreover, *contra* Pls.' Resp. 27 n.35, that is indeed not a "lengthy context statement." Defs.' MTD 40.

as the guiding principles for Establishment Clause jurisprudence." *Hilsenrath on behalf of C.H. v. Sch. Dist. of the Chathams*, 698 F. Supp. 3d 752, 761–62 & n.14 (D.N.J. 2023). And in post-*Kennedy* cases, both this Court and the Fifth Circuit have decided Establishment Clause claims with reference to them. *See, e.g.*, *Lozano v. Collier*, 98 F.4th 614, 628 (5th Cir. 2024) (per curiam); *Erie v. Hunter*, 675 F. Supp. 3d 647, 657–58 (M.D. La. 2023). Thus, after *Kennedy*, Establishment Clause plaintiffs bear "the burden" of "proving that th[e] facts align with a historically disfavored establishmentarian practice," *Firewalker-Fields v. Lee*, 58 F.4th 104, 122 n.7 (4th Cir. 2023)—which Plaintiffs do not plausibly allege.

The hallmarks question is not whether a practice is *itself* old; it is whether the practice (old or new) fits within one of the historical "hallmarks of an established religion." *Kennedy*, 597 U.S. at 537 & n.5. And like most constitutional questions, it turns not on individual Founders' private views but on the "public understanding" of what an establishment was "when the [provision] was adopted." *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 37 (2022).[3] So Plaintiffs' reliance on their putative "expert" is unavailing, as he does not address the hallmarks at all. And, now that the Supreme Court has identified the hallmarks, applying them to individual cases involves the sort of "reasoning by analogy" that is "a commonplace task for any lawyer or judge"; it is not a fact question for experts at all. *Id.* at 28–29.[4] By ignoring the hallmarks, Plaintiffs and their putative expert all but concede that they cannot reasonably analogize H.B. 71 to any of them.

**4.** Eschewing the hallmarks, Plaintiffs offer other "historical" tests, suggesting that *Kennedy* either requires the government to show an "unambiguous and unbroken" history of "the *specific*

---

[3] Regarding Madison and Jefferson, Plaintiffs' own example amply demonstrates the perils of this blinkered approach to historical analysis. In support of their argument that "the Founders had a broad view of what constitutes impermissible religious coercion by the government," Plaintiffs cite an 1808 letter from President Jefferson explaining why he declined to issue a Thanksgiving proclamation. Pls.' Resp. 29–30. But Jefferson was both distinctly in the minority on this issue and personally inconsistent: "President Washington" and "almost all" his other successors have issued such proclamations, *Lynch v. Donnelly*, 465 U.S. 668, (1984); *see, e.g.*, President Biden, *A Proclamation on Thanksgiving Day, 2023*, https://tinyurl.com/3m9vs99r; and Jefferson himself "concluded his second inaugural address by inviting his audience to pray," *McCreary*, 545 U.S. at 888 (Scalia, J., dissenting). Indeed, while President, Jefferson attended Christian worship services held in the Capitol building. James H. Hutson, Religion and the Founding of the American Republic 84–94 (1998).
[4] For the same reasons, Defendants are contemporaneously filing a motion to exclude Professor Green's testimony.

*practice*" tracing back to the Founding, or asks courts to divine the private "views of [James] Madison and [Thomas] Jefferson" on the practice. Pls.' Resp. 28–29. Neither is true, as demonstrated most clearly by the fact that *Kennedy* upheld the challenged practice there—a football coach's post-game prayers—without engaging these analyses. *See* 597 U.S. at 532–43.

Even under Plaintiffs' unfounded variations on the historical analysis, H.B. 71 still passes muster. As for their Madison-and-Jefferson test, "when designing a seal for the new Nation in 1776," Jefferson and Benjamin Franklin "proposed a familiar Biblical scene" closely related to the Ten Commandments—"Moses leading the Israelites across the Red Sea." *Shurtleff*, 596 U.S. at 287 n.11 (Gorsuch, J., concurring in judgment). And as for Plaintiffs' "specific practice" test, there *is* a "tradition long followed" of religious content in public schools, stretching back to their advent. *Town of Greece v. Galloway*, 572 U.S. 565, 577 (2014). And that history includes—specifically—the Ten Commandments, Defs.' MTD 36–38, which "were a prominent part of American public education for almost three centuries." La. R.S. § 17:2122(B)(3) (citing, *inter alia*, *The New England Primer* and the *McGuffey Readers*).

Plaintiffs' putative expert attempts to nitpick H.B. 71's account of the relevant textbooks, but close inspection reveals that he largely *agrees* with it. Green agrees that from the first "quasi-public prototypes" of American public schools, religious content was pervasive. Green Rep. 18. He agrees that the *New England Primer* was an "early textbook[]" with "religious references." *Id.* He agrees that the "McGuffey *Readers*" were "used in many common schools throughout much of the nineteenth century." *Id.* at 22. And he agrees that the *Readers* both "reproduce[d] the Ten Commandments verbatim" and incorporated specific commandments "as part of a lesson or story." *Id.* at 23; *see* Defs.' MTD 37 (describing example of the latter); *see also* Faircloth Decl. ¶¶ 9–19 (collecting relevant excerpts from the *Primer*, the *Readers*, and Webster's *American Spelling Book*).

At bottom, Professor Green simply disagrees with H.B. 71's statement that all this makes the Ten Commandments "prominent." Green Rep. 21–24. But the Constitution does not require courts

to "set [them]selves up as arbiters of the adequacy of the historical analysis contained in documentary exhibits appearing on public grounds." *Books*, 401 F.3d at 865–66 (upholding Ten Commandments display). And the historical question here has already been asked and answered. Binding precedent holds that the Ten Commandments have had an "extraordinary influence" "upon the civil and criminal laws of this country" and "the ideal of a just society." *Van Orden*, 351 F.3d at 181; *Am. Legion*, 588 U.S. at 53 ("They have historical significance as one of the foundations of our legal system …."). It is therefore little surprise that public schools have often wanted students to know about them.

**5.** Pivoting from history, Plaintiffs say that under *Lee v. Weisman*, 505 U.S. 577, 589 (1992), "the Establishment Clause forbids any coercion arising from the 'subtle coercive pressure[s]' intrinsic to the school context." Pls.' Resp. 35. But as *Kennedy* explains, *Lee* does not prohibit "coercive pressure" in the abstract; it prohibits the government from "forc[ing] citizens to engage in 'a formal religious exercise,'" like prayer or Bible reading, *Kennedy*, 597 U.S. at 537 (quoting *Lee*, 505 U.S. at 589)—which is not at issue here. The Fifth Circuit, too, has articulated this line in distinguishing *Lee*. *See Croft*, 624 F.3d at 169 (agreeing with defendant's argument that the "Court has limited its concern about psychological coercion to religious exercises"); *see Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462, 470 (5th Cir. 2001) (en banc) ("If no religious *activity* is at issue, any speculation as to whether students might feel pressured to participate is irrelevant." (emphasis added)).

Meanwhile, neither the Supreme Court nor the Fifth Circuit has ever adopted the bizarre notion that being in the same room with passive religious symbols amounts to being coerced to engage in a religious exercise. Rather, the Justices have repeatedly taken as given the constitutionality of the Ten Commandments displays in buildings throughout our Nation's capital, *see Am. Legion*, 588 U.S. at 53, even though citizens must walk by them on a daily basis and even sit beneath them in the Supreme Court's courtroom. The Fifth Circuit has upheld a "Latin cross with three crosslets" on a city seal, though the plaintiff was required to see it if he wanted to pay utility bills or visit the municipal building.

*Murray*, 947 F.2d at 150. And if Plaintiffs were right, any student in any of the States or municipalities whose "seals and flags … include religious symbols or mottos" could demand that those flags be taken down from their classrooms. *Freedom From Religion Found., Inc. v. County of Lehigh*, 933 F.3d 275, 284 (3d Cir. 2019); *see, e.g.*, *Am. Legion*, 588 U.S. at 55–56 & n.23 (Maryland's flag includes "two crosses"); *Briggs v. Mississippi*, 331 F.3d 499, 503 (5th Cir. 2003) (upholding former Mississippi flag, which featured a symbol "frequently … described as … a St. Andrew's Cross"). That is not the law.

Plaintiffs' invocation of *Larson v. Valente*, 456 U.S. 228 (1982), is likewise inapt. According to Plaintiffs, H.B. 71 violates *Larson* by setting out what Plaintiffs call a "Protestant version of the Ten Commandments." Pls.' Resp. 34. But *Larson* involved a law that imposed *legal obligations* (registration and reporting requirements) on some religious organizations but not others—which is not this case. 456 U.S. at 230. More, the Supreme Court has rejected the notion that *Larson* means the government discriminates between religions by owning and displaying a nativity scene on government property. *Lynch v. Donnelly*, 465 U.S. 668, 687 n.13 (1984). Indeed, *American Legion* upheld a Latin cross—rejecting this exact theory pressed by Plaintiffs' counsel that *Larson*'s "principle of denominational neutrality" forbade "a towering Latin cross" because it is "the universally acknowledged symbol of the Christian faith." Amicus Br. of ACLU and Americans United for Separation of Church and State et al., at *4– 5, *14–16, *Am. Legion*, 588 U.S. 29 (Jan. 30, 2019), 2019 WL 410764.

In any event, as Defendants have explained, H.B. 71 employs this version not to take any position on Plaintiffs' theological disputes, but simply because it was the one upheld in *Van Orden*. Defs.' MTD 46. Moreover, Defendants might consider versions of a display that would expressly identify the differences in translation and organization across faith traditions—negating the absurd suggestion that Louisiana has promulgated "an official, denominational version of the Ten Commandments." Pls.' Resp. 1. Plaintiffs' sole response is to ask the Court to close its eyes to such

constitutional applications of H.B. 71, Pls.' Resp. 33–34, but under the rigorous test for facial challenges, that path is foreclosed by precedent, *supra* p. 9.

* * *

Facial challenges are "hard to win." *Moody*, 144 S. Ct. at 2397. That is fatal here because Plaintiffs do not and cannot plausibly allege that every application of H.B. 71 is unconstitutional. The Court should therefore dismiss Count I for failure to state a claim under the Establishment Clause.

### B.  H.B. 71 Does Not Prohibit the Free Exercise of Plaintiffs' Religion (Count II).

Plaintiffs' attempt to repackage their Establishment Clause challenge as a Free Exercise claim fares no better. As Plaintiffs do not dispute, the nine non-religious Plaintiffs cannot bring a Free Exercise claim because they do not exercise any religion. *Compare* Defs.' MTD 44, *with* Pls.' Resp. 37–44. And the religious Plaintiffs do not plausibly claim that Defendants have prohibited them from believing, professing, or engaging in any "conduct motivated by religious belief." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993). That forecloses their claim.

**1.** Plaintiffs fail to cite a single case in which a court has held passive religious symbolism to violate the Free Exercise Clause. That is because mere non-participatory exposure to objectionable speech does not violate the Free Exercise Clause. Indeed, in the analogous context of the Pledge of Allegiance, it is well-settled that religious objectors have a right to opt out of *reciting* or *standing for* the Pledge, but they do not have a right to *stop* it—despite the unavoidable exposure from one's teacher and classmates reciting it. *See* Defs.' MTD 44–45.

Resisting this conclusion, Plaintiffs say "[t]here is no way for students here to opt out." Pls.' Resp. 38–39. But that misses the point—this case is far easier than the Pledge cases, because here there is nothing for students to opt out *from*. In the Pledge context, students are generally statutorily "required to recite the … pledge," *Croft*, 624 F.3d at 162, while H.B. 71 does not require them to do anything at all. Not knowing if any (much less all) H.B. 71 displays will appear in especially visible

18

parts of the classroom, Plaintiffs resort to speculating that schools "might make" "extraordinary efforts" to "draw students' attention to" H.B. 71 displays. Pls.' Resp. 37. Again, non-participatory exposure does not violate the Free Exercise Clause—but the fact that Plaintiffs do not even know to what degree they *will* be exposed (especially given no displays have even been donated or funded yet) makes this facial challenge an *a fortiori* case.

Nor can the Pledge (and national motto) cases be dismissed on the ground that courts "have deemed" the Pledge "to be secular conduct." Pls.' Resp. 38. The Free Exercise Clause does not depend on whether the *government's action* is religious; it depends on whether the *plaintiff's* religious conduct is impermissibly burdened. Moreover, just as the Pledge has "secular purposes" even as it "acknowledg[es] … religious heritage," *Croft*, 624 F.3d at 167, so too the Ten Commandments "have both a religious and secular message," *Van Orden*, 351 F.3d at 180.

And even if a Ten Commandments display *could* rise to the level of coercing an individual to abandon one's own religion or to practice another's, *cf.* Pls.' Resp. 37–38, Defendants' illustrated displays would not, *see* Defs.' MTD 42–43. Unlike the bare-bones display in *Stone*, displays showcasing the Ten Commandments alongside other historical documents, legal context, and pop-culture references can have no conceivable tendency to coerce students to "read, meditate upon, [or] perhaps to venerate and obey, the Commandments." 449 U.S. at 42.

**2.** Finally, even if Plaintiffs' religious exercise were implicated, H.B. 71 would be subject to rational-basis review because it is neutral and generally applicable. *See, e.g.*, *Fulton v. City of Philadelphia*, 593 U.S. 522, 533–34 (2021); *see* Defs.' MTD 45–47. In arguing otherwise, Plaintiffs invoke *Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 584 U.S. 617, 634–38 (2018), but that case involved government officials "disparag[ing]" the claimant's "religion" in penalizing his religious exercise under state law. Nothing of the sort is going on here. As with their *Larson* claim above, Plaintiffs' theory appears to be that any "explicitly religious" display reflecting a "particular" faith tradition is

19

presumptively unconstitutional. Pls.' Resp. 41. But that is impossible to reconcile with the multitude of cases upholding such displays—including *Van Orden*, which had the *same text* that will be included in H.B. 71 displays. 545 U.S. at 707; *see Murray*, 947 F.2d at 150 (upholding cross in county seal over claim that challenged version was "used only by the Roman Catholic denomination").

H.B. 71 does not "infringe upon or restrict practices because of their religious motivation." *Lukumi*, 508 U.S. at 533. It does not provide "a mechanism for individualized objections" on religious or non-religious bases. *Fulton*, 593 U.S. at 533 (quotation omitted). And its "design" does not demonstrate "deliberate[] disrespect[]" for any faith. *Am. Legion*, 588 U.S. at 64. Thus, strict scrutiny does not apply. Plaintiffs have forfeited any argument that H.B. 71 would fail under rational-basis review. The Court should thus dismiss Count II for failure to state a claim.

## III. The Court Should Stay Any Preliminary Injunctive Relief Pending Appeal.

Pursuant to Rule 8 of the Federal Rules of Appellate Procedure, Defendants ask that the Court stay any injunction pending appeal because this case is barred under Fifth Circuit precedent, it fails on the merits, and the equities and the public interest would favor a stay. *See* Defs.' MTD 49. Plaintiffs' complaint (at 44–45) that this request is premature is wrong and rests on non-binding case law that hurts, rather than helps, Plaintiffs. *See Gregory v. Baucum*, 2018 WL 10096597 (N.D. Tex. Feb. 23, 2018) (no injunction at issue); *Elec. Frontier Found. v. Office of Dir. Of Nat'l Intel.*, 2009 WL 3297195, at *2 (N.D. Cal. Oct. 13, 2009) (resolving the stay issue for efficiency purposes *even though* defendants "ha[d] not moved for the relief of a stay pending appeal"); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1241 (C.D. Cal. 2007) (court partially granted injunction and had not "finalize[d] the terms"). If Plaintiffs are concerned that no notice of appeal is on file right now, Defendants can represent that they would file one within hours of any preliminary-injunction order.

## CONCLUSION

The Court should dismiss, or stay any injunction pending appeal.

Dated: August 30, 2024

Respectfully submitted,

**ELIZABETH B. MURRILL**
**Attorney General of Louisiana**

_/s/ J. Benjamin Aguiñaga_
J. BENJAMIN AGUIÑAGA*
  *Solicitor General*

_/s/ Zachary Faircloth_
ZACHARY FAIRCLOTH (La #39875)
  *Principal Deputy Solicitor General*
MORGAN BRUNGARD (La #40298)
  *Deputy Solicitor General*
OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70804
Telephone: (225) 326-6766
Facsimile:   (225) 326-6795
aguinagab@ag.louisiana.gov
fairclothz@ag.louisiana.gov
brungardm@ag.louisiana.gov

*Counsel for Defendants Cade Brumley, Conrad Appel, Judy Armstrong, Kevin Berken, Preston Castille, Simone Champagne, Sharon Latten-Clark, Lance Harris, Paul Hollis, Sandy Holloway, Stacey Melerine, Ronnie Morris, East Baton Rouge Parish School Board, Livingston Parish School Board, Vernon Parish School Board, and St. Tammany Parish School Board*

*pro hac vice granted*