UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DARCY ROAKE, et al.,

PLAINTIFFS,

v.

CADE BRUMLEY, et al.,

DEFENDANTS.

Civil Action No. 3:24-cv-517

Judge: JWD - SDJ

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO EXCLUDE PUTATIVE EXPERT TESTIMONY**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................................i

TABLE OF AUTHORITIES ............................................................................................................ii

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................1

    I.    GREEN'S PROPOSED TESTIMONY IS UNRELIABLE. ................................................................1

        A. Plaintiffs offer no external standard validating Green's methodology. ..........................1

        B. Green's conclusions contradict Supreme Court and Fifth Circuit precedent. ...............4

        C. Green's background makes his proposed testimony unreliable ....................................4

    II.    GREEN'S PROPOSED TESTIMONY IS NOT RELEVANT. ...........................................................5

CONCLUSION ................................................................................................................................8

## TABLE OF AUTHORITIES

**Cases**

*Am. Freedom Def. Initiative v. Se. Pa. Transp. Auth.*,
    No. 14-5335, 2014 WL 6676517 (E.D. Pa. 2014) ............................................................. 5

*Atwater v. City of Lago Vista*,
    532 U.S. 318 (2001) ......................................................................................................... 7

*Brown v. Ill. Cent. R. Co.*,
    705 F.3d 531 (5th Cir. 2013) ........................................................................................ 1, 2

*Daubert v. Merrell Dow Pharm. Inc.*,
    509 U.S. 579 .................................................................................................................... 2

*Firewalker-Fields v. Lee*,
    58 F.4th 104 (4th Cir. 2023) ........................................................................................... 6

*Freedom From Religion Foundation, Inc. v. Mack*,
    49 F.4th 941 (5th Cir. 2022) ........................................................................................... 6

*Goodman v. Harris County*,
    571 F.3d 388 (5th Cir. 2009) .......................................................................................... 8

*Int'l Truck & Engine Corp. v. Bray*,
    372 F.3d 717 (5th Cir. 2004) .......................................................................................... 4

*Kennedy v. Bremerton Sch. Dist.*,
    597 U.S. 507 (2022) .................................................................................................. 5, 6, 7

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ......................................................................................................... 2

*Marsh v. Chambers*,
    463 U.S. 783 (1983) .................................................................................................. 5, 6, 7

*Moore v. Ashland Chem. Inc.*,
    151 F.3d 269 (5th Cir. 1998) .......................................................................................... 2

*N.Y. State Club Ass'n, Inc. v. City of New York*,
    487 U.S. 1 (1988) ............................................................................................................. 7

*Narcisse v. All Ways Transportation, LLC*,
    No. CV 22-387, 2023 WL 6544930 (M.D. La. Sept. 22, 2023) ...................................... 2

*Renfroe v. Parker*,
    974 F.3d 594 (5th Cir. 2020) .......................................................................................... 8

*Shurtleff v. City of Boston*,
    596 U.S. 243 (2022) ......................................................................................................... 7

*Town of Greece v. Galloway*,
    572 U.S. 565 (2014) .................................................................................................. 5, 6, 7

*United States v. Segura*,
    747 F.3d 323 (5th Cir. 2014) .......................................................................................... 4

*Walz v. Tax Comm'n*,
  397 U.S. 644 (1970) ................................................................................................... 5, 7

**Other Authorities**

Fed. R. Evid. 702 ................................................................................................................3

Americans United, *Kennedy v. Bremerton School District* ...............................................6

Daniel A. Farber, *Adjudication of Things Past: Reflections on History as Evidence*,
  49 Hastings L.J. 1009 (1998) .........................................................................................2

Daniel L. Dreisbach, *The Meaning of the Separation of Church and State: Competing Views*,
  The Oxford Handbook of Separation of Church and State in the United States
  (Oxford 2010) (Derek H. Davis, ed.) .............................................................................5

Jonathan D. Martin, *Historians at the Gate: Accommodating Expert Historical Testimony in Federal Courts*,
  78 N.Y.U. L. Rev. 1518 (2003) .....................................................................................3

Maxine D. Goodman, *Slipping Through the Gate*,
  60 Baylor L. Rev. 824 (2008) ........................................................................................3

Note, *Past Imperfect*,
  110 Yale L.J. 1531 (2001) .............................................................................................2

**INTRODUCTION**

Plaintiffs protest too much. They offer a 19-page response to an 8-page motion, but never engage with the main arguments. As to reliability, they do not deny that they have no objective and independent validation of Green's methodology. Instead they say history is different and therefore the usual standards for expert testimony do not apply, ignoring the wealth of scholarship showing that expert testimony about history is uniquely *susceptible* to methodological problems. And as to relevance, Plaintiffs never attempt to explain how Green's testimony is at all relevant to the governing hallmarks standard.

Green can of course file an amicus brief in support of Plaintiffs, and Defendants would not object. But what Green offers cannot be relied on as an *evidentiary* foundation for a ruling in this case. The putative expert testimony should therefore be excluded, or in the alternative, disregarded entirely.

**ARGUMENT**

I. **Green's proposed testimony is unreliable.**

   **A. Plaintiffs offer no external standard validating Green's methodology.**

As Defendants explained, blackletter Fifth Circuit law requires a putative expert to provide external validation of the methodology used. Defs.' Mot. to Exclude 2–4, ECF 53-1 (citing *inter alia Brown v. Ill. Cent. R. Co.*, 705 F.3d 531 (5th Cir. 2013)). In response, Plaintiffs still fail to offer any external, independent methodological standards that validate Green's methodology. Instead they argue (1) *Defendants* did not offer any independent methodological standards (Pls.' Opp. to Mot. to Exclude 5, ECF 61); (2) history experts do not have to follow the methodology requirements other experts follow (*id.* at 5–6); and (3) courts allow expert testimony on history in other cases (*id.* at 4–5). None of these arguments are availing.

First, it is the proposed expert's burden to provide independent validation of his methodology: "*an expert bears the burden* of furnishing 'some objective, independent validation of [his] methodology.'

1

'The expert's assurances that he has utilized generally accepted [principles] is insufficient.'" *Brown*, 705 F.3d at 536 (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 274 (5th Cir. 1998)) (emphasis added). That obligation tracks the plaintiff's burden of proof, allows the Court to assess whether the methodology is reliable, and gives opposing parties the opportunity to challenge the reliability of the methodology (an *ipse dixit* is hard to impeach). Simply describing the expert's methodology without tethering it to the wider historiographical enterprise, as Plaintiffs do, is insufficient to meet Plaintiffs' burden.

Second, a history expert does have to put forward "some objective, independent validation" of his methodology, just like other kinds of experts. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (*Daubert* applies to all forms of expert testimony). To be sure, social science experts, including history experts, have different accepted methodologies than hard-science experts. *Id.* at 152 (focus on "relevant field").[1] But that does not—and under *Daubert* and *Kumho Tire* cannot—mean that there can be no objective, independent validation of a historian's methodology at all. To the contrary, "the trial judge *must* determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 592; second alteration in original).

And historian experts have presented a special difficulty for courts. For many decades now scholars have identified pitfalls peculiar to admitting expert testimony on history, particularly with respect to methodology. *See, e.g.*, Daniel A. Farber, *Adjudication of Things Past: Reflections on History as Evidence*, 49 Hastings L.J. 1009, 1011–12 (1998) ("By putting the historian's professional role under stress, the courtroom highlights some of the tensions internal to that role."); Note, *Past Imperfect*, 110 Yale L.J. 1531, 1540 (2001) ("American historians and legal scholars have wrestled with the question

---

[1] This Court has frequently explained the distinction. *See, e.g.*, *Narcisse v. All Ways Transportation, LLC*, No. CV 22-387, 2023 WL 6544930, at *3 (M.D. La. Sept. 22, 2023).

of whether serving as an expert witness inevitably compromises a historian's objectivity."); Maxine D. Goodman, *Slipping Through the Gate*, 60 Baylor L. Rev. 824, 827 (2008) (describing problem of identifying problematic historian expert methodologies in the context of Holocaust-related litigation). Indeed, the article cited by Plaintiffs includes an extended discussion of the problems inherent in evaluating and admitting historian expert testimony:

> Unfortunately, historians often neglect the conventional methods of their craft when offering expert testimony. Outside the courtroom, historians generally expect one another to formulate complex, nuanced, and balanced arguments that take into account all available evidence, including any countervailing evidence. At trial, however, the pressures of the adversary system routinely push historians toward interpretations of the past that are compressed and categorical … . As a result, historians now frequently offer unreliable evidence.

Jonathan D. Martin, *Historians at the Gate: Accommodating Expert Historical Testimony in Federal Courts*, 78 N.Y.U. L. Rev. 1518, 1521 (2003). Given these inherent problems with historian expert testimony, if there is a "special rule" for historian expert testimony it should be one that is *more* suspicious of historical methodology rather than *less*, as Plaintiffs propose. Happily, however, the Court need not decide the exact bounds of reliable historical methodology here because Plaintiffs have not even tried to present an objective, independent source of validation for Green's methodology.

Third, Plaintiffs' argument that historian expert testimony is admitted in many cases, Pls.' Opp. 4–5, begs the question. Of course historical experts have been properly allowed in other cases. But expert testimony on history has also been excluded where the testimony is unreliable or irrelevant. The question for the Court is how to categorize this testimony.

And expert testimony on history adds nothing to a case if the putative expert does not introduce any additional "facts in issue" or "help the trier of fact to understand the evidence." Fed. R. Evid. 702. Here, the facts are not in dispute and thus not "in issue"—all parties agree that the *McGuffey's Readers*, the *New England Primer*, and other documents were used and taught in "many" schools. Defs.' Mot. to Exclude 3, 8. And offering an expert's impressions of documentary evidence

3

already available to the Court does not help the trier of fact understand that evidence in this case. *See, e.g.*, Green Rep. 22–23 (comparing inclusion of Ten Commandments lessons in *McGuffey Readers* with the total number of lessons in the *Readers* while admitting no knowledge of "the extent to which common-school teachers may have relied on those particular readings … , as opposed to the dozens of others available in the same book"). In addition, the purpose for which the evidence is being propounded—whether the use of those documents was "prominent" or "widespread"—is itself irrelevant. *See infra* Section II. All that puts this proposed testimony firmly into the camp of rejected history experts.

### B. Green's conclusions contradict Supreme Court and Fifth Circuit precedent.

Plaintiffs attempt to discount Supreme Court and Fifth Circuit precedent that contradicts Green's conclusions. Pls.' Opp. 10 & n.5. But neither citation is dictum, and even dicta from the Supreme Court and Fifth Circuit should often be persuasive to district courts. "A statement is dictum if it could have been deleted without seriously impairing the analytical foundations of the holding and being peripheral, may not have received the full and careful consideration of the court that uttered it. A statement is not dictum if it is necessary to the result or constitutes an explication of the governing rules of law." *United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) (quoting *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004)). No fair reader could think that *American Legion*'s lengthy discussion of the Ten Commandments' role in American society was not at least "an explication" of the Supreme Court's holding that displays can have multiple purposes, nor could they think that discussion did not receive "full and careful consideration" of the Supreme Court. Thus—holding or dicta—Green's opinion contradicts the Supreme Court and is thus *ipso facto* unreliable.

### C. Green's background makes his proposed testimony unreliable.

Plaintiffs attempt to wave off Green's lifetime work as a "culture warrior" involved on the losing side of almost every major church-state conflict of the past two decades. Pls.' Opp. 10–11. But

4

no disinterested observer could fail to notice Green's longtime role as a contender in one of the most contested areas of American public life—a fact which Plaintiffs do not even attempt to deny. Given his unique background and the other indicators of unreliability, this provides further justification for excluding or disregarding his testimony. Defs.' Mot. to Exclude 4–6.[2]

## II.     Green's proposed testimony is not relevant.

The Court should also exclude Green's testimony because it addresses the wrong historical analysis. After *Kennedy*, Establishment Clause claims are governed by the "hallmarks" test, which asks whether the challenged practice reflects the "hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 537 & n.5 (2022). Green's report instead addresses whether there is a "longstanding" or "unbroken" "practice of widespread, permanent displays of the Ten Commandments in public schools." Green Rep. 18–26. Because Green's report does not go to Plaintiffs' burden under *Kennedy*, his testimony is not helpful to the factfinder and thus should be excluded, even if the Court gives the report less scrutiny at this preliminary-injunction stage. *See* Defs.' Mot. to Exclude 6–8; *Am. Freedom Def. Initiative v. Se. Pa. Transp. Auth.*, No. 14-5335, 2014 WL 6676517, at *2–4 (E.D. Pa. 2014) (excluding expert testimony from preliminary-injunction hearing because it was not relevant under the prevailing First Amendment test).

Resisting this conclusion, Plaintiffs do not claim that Green's testimony is relevant even under the hallmarks. Instead, Plaintiffs say *Kennedy* did not "reduce" the test "to the six hallmarks," but instead merely "[r]eaffirm[ed] the standard previously" applied in cases like *Town of Greece*, *Marsh*, and *Walz*. Pls.' Opp. 13–14; *compare* Americans United, *Kennedy v. Bremerton School District*,

---

[2] AUSCS takes offense that its anti-Catholic origins were mentioned. Pls.' Opp. 12 n.6. But those origins matter in this case because AUSCS has never disavowed them, and specifically did not disavow those anti-Catholic origins during the decade Green was superintending its litigation practice. *Cf.* Daniel L. Dreisbach, *The Meaning of the Separation of Church and State: Competing Views*, in The Oxford Handbook of Separation of Church and State in the United States (Oxford 2010) (Derek H. Davis, ed.) at 219 (discussing anti-Catholic origins of AUSCS).

5

https://perma.cc/3AQQ-BJ8F (counsel for Plaintiffs describing *Kennedy* as "adopt[ing] a new" analysis that "gut[s]" and "und[oes] fifty years of foundational First Amendment law").

But this is wrong—as *Kennedy* itself demonstrates. On Plaintiffs' telling, a *Town of Greece*-style historical analysis asks "whether the 'specific practice'" at issue was engaged in at the founding and has continued in an "unambiguous and unbroken history" ever since. Pls.' Opp. 14–15. But the *Kennedy* Court did not conduct anything like that analysis in upholding the practice challenged there. *Kennedy* makes no reference whatsoever to whether public-school football coaches engaged in post-game prayers at the founding or whether such prayers "have become part of the fabric of our society." *Cf.* Pls.' Opp. 15 (quoting *Town of Greece* and *Marsh*). Instead, the Court upheld the practice because it did not reflect one of the "foremost hallmarks of religious establishments," such as "forc[ing] citizens to engage in 'a formal religious exercise.'" *See Kennedy*, 597 U.S. at 532–42 & n.5. So too here—both in methodology and result.

Furthermore, Plaintiffs' position is inconsistent with post-*Kennedy* precedent. The Fifth Circuit has already explained that "offering" *Marsh*'s "unambiguous and unbroken history" language "as a legal standard confuses a sufficient condition for a necessary one." *Freedom From Religion Foundation, Inc. v. Mack*, 49 F.4th 941, 950 (5th Cir. 2022). And we know from *Kennedy* that the same is true for the sufficient conditions identified in the other Supreme Court legislative prayer case, *Town of Greece*. Yet language from *Marsh* and *Town of Greece* is exactly what Plaintiffs offer as the legal standard here—and the language Green's report is aimed at addressing.

Likewise, while Plaintiffs insist (without citation) that they do not "bear the evidentiary burden under *Kennedy*'s historical test," Pls.' Opp. 13, the Fourth Circuit has squarely held to the contrary: "the plaintiff has the burden of proving a set of facts that would have historically been understood as an establishment of religion." *Firewalker-Fields v. Lee*, 58 F.4th 104, 122 n.7 (4th Cir. 2023). And the Fourth Circuit's rule is consistent with the ordinary principle: in *most* cases, "the burden of showing a

6

statute to be unconstitutional is on the challenging party, *not* on the party defending the statute." *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 17 (1988); *see, e.g.*, *Atwater v. City of Lago Vista*, 532 U.S. 318, 336 (2001) (burden is on the challenger to cite "particular evidence that those who framed and ratified the Fourth Amendment sought to limit" the challenged practice).

Meanwhile, the upshot of Plaintiffs' burden-allocation position is that *every* government action presumptively violates the Establishment Clause unless the government can point to a specific historical practice justifying it. They point to nothing justifying that sweeping idea. Plaintiffs also fail to explain why applying *Kennedy* would require historical experts when a key purpose of the hallmarks test it adopted was to give "busy local officials and lower courts" "helpful hallmarks … to rely on." *Shurtleff v. City of Boston*, 596 U.S. 243, 285 (2022) (Gorsuch, J., concurring in the judgment). Indeed, *Kennedy*'s author has now twice applied the hallmarks test without any expert testimony on the issue. *See Kennedy, supra*; *Shurtleff*, 596 U.S. at 285–88 (Gorsuch, J., concurring in the judgment).

Hallmarks aside, Plaintiffs also fail to show that Green's testimony would be relevant even under their preferred version of the historical analysis. Defs.' Mot. to Exclude 8. And Plaintiffs' response only confirms their problem. As explained above, Plaintiffs cite three cases as exemplifying their preferred version of historical analysis under the Establishment Clause—*Town of Greece*, *Marsh*, and *Walz*. Yet as with *Kennedy* and *Shurtleff*, not a single one of these cases relied on expert testimony to reach their conclusions. *See generally Town of Greece v. Galloway*, 572 U.S. 565, 577–92 (2014); *Marsh v. Chambers*, 463 U.S. 783, 786–95 (1983); *Walz v. Tax Comm'n*, 397 U.S. 644, 667–80 (1970).

Next, Plaintiffs claim that in addition to quibbling with the characterization of undisputed facts, "Dr. Green's opinions are also relevant to Plaintiffs' claims that the Act adopts and prescribes a religiously preferential version of the Ten Commandments, and that displays posted in accordance with the Act will result in unconstitutional coercion of the minor-Plaintiffs." Pls.' Opp. 16 n.13 (citations omitted). But if the first of these points required an expert, surely it would be a theologian

7

or Scripture scholar rather than a law professor specialized in history. *See Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) (expert may not "go beyond the scope of his expertise in giving his opinion"). And as for the second, whether an action "will result in unconstitutional coercion" is straightforwardly—indeed *explicitly*—a legal opinion, and "[e]xperts cannot 'render conclusions of law' or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020).

## CONCLUSION

Green's testimony should be excluded or, in the alternative, disregarded completely.

Dated: September 10, 2024

Respectfully submitted,

**ELIZABETH B. MURRILL**
**Attorney General of Louisiana**

 /s/ *J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA*
 *Solicitor General*

 /s/ *Zachary Faircloth*
ZACHARY FAIRCLOTH (La #39875)
 *Principal Deputy Solicitor General*
MORGAN BRUNGARD (La #40298)
 *Deputy Solicitor General*
OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70804
Telephone: (225) 326-6766
Facsimile:  (225) 326-6795
aguinagab@ag.louisiana.gov
faircothz@ag.louisiana.gov
brungardm@ag.louisiana.gov

*Counsel for Defendants Cade Brumley, Conrad Appel, Judy Armstrong, Kevin Berken, Preston Castille, Simone Champagne, Sharon Latten-Clark, Lance Harris, Paul Hollis, Sandy Holloway, Stacey Melerine, Ronnie Morris, East Baton Rouge Parish School Board, Livingston Parish School Board, Vernon Parish School Board, and St. Tammany Parish School Board*

*pro hac vice granted

8