UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DARCY ROAKE, ET AL.

VERSUS

CADE BRUMLEY, ET AL.

CIVIL ACTION

NO. 24-517-JWD-SDJ

**PRINCIPLES TO BE UTILIZED FOR ANALYZING AND
DECIDING *DAUBERT* MOTIONS BEFORE
DISTRICT JUDGE JOHN W. DEGRAVELLES**

On September 11, 2024, this Court set a hearing on *Defendants' Motion to Exclude Putative Expert Testimony* (Doc. 53). (Doc. 62.) That hearing will take place on September 30, 2024, at 9:00 a.m. (*Id.*) The Court hereby advises the parties that it will utilize the following principles in analyzing and deciding Defendants' *Daubert* motion.

## I. Requirements of Rule 702

Pursuant to Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the rule's preconditions are met. Congress amended Rule 702 effective December 1, 2023[1] to read as follows:

Rule 702. Testimony by Expert Witnesses

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

---

[1] The amendments "shall take effect on December 1, 2023, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending." Fed. R. Evid. Refs & Annos (2023).

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

### *II. Proponent's Burden*

The Advisory Committee Notes[2] to the recently amended Rule 702 explain that

> [T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule. *See* Rule 104(a). This is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration."); *Huddleston v. United States*, 485 U.S. 681, 687 n.5 (1988) ("preliminary factual findings under Rule 104(a) are subject to the preponderance-of-the-evidence standard").

Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

### *III. Role of Court in Deciding Daubert Challenge*

When *Daubert*[3] is invoked to challenge an expert's opinions, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v.*

---

[2] "The Advisory Committee Notes are instructive on the drafters' intent in promulgating the federal rules." *United States v. Navarro*, 169 F.3d 228, 237 (5th Cir. 1999) (citing *Williamson v. United States*, 512 U.S. 594, 614–15 (1994) (Kennedy, J., concurring) ("When as here the text of a Rule of Evidence does not answer a question that must be answered in order to apply the Rule, and when the Advisory Committee's Note does answer the question, our practice indicates that we should pay attention to the Advisory Committee's Note. We have referred often to those Notes in interpreting the Rules of Evidence, and I see no reason to jettison that well-established practice here.")); *see also Ronaldo Designer Jewelry, Inc. v. Cox*, No. 17-2, 2020 WL 109830, at *1 (N.D. Miss. Jan. 9, 2020) ("Although not binding, the interpretations in the Advisory Committee Notes 'are nearly universally accorded great weight in interpreting federal rules.'" (quoting *Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005) (citation omitted))); *cf. also* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1029 (4th ed. 2023) ("In interpreting the federal rules [of civil procedure], the Advisory Committee Notes are a very important source of information and direction and should be given considerable weight. Although these Notes are not conclusive, they provide something akin to a 'legislative history' of the rules and carry, in addition, the great prestige that the individual members of the successive Advisory Committees, and the Committees themselves, have enjoyed as authorities on procedure.")

[3] *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579 (1993).

*Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id.* "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.'" *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. The Fifth Circuit has held that "when expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997) (internal citations omitted).

A district court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *General Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997) (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert testimony . . ."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have wide discretion in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." (cleaned up)).

Federal Rule of Evidence 104(a) states that "[t]he court must decide any preliminary question about whether a witness is qualified . . . or evidence is admissible." The Advisory Committee Notes to the 2023 amendments to Rule 702 emphasize:

> [The 2023] amendment is simply intended to clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702. Similarly, nothing in the amendment requires the court to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support. The Rule 104(a) standard does not require perfection. On the other hand, it does not permit the expert to make claims that are unsupported by the expert's basis and methodology.

3

Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment).

Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

No. 02-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

> As the Court in *General Electric Capital Business Funding Corp. v. S.A.S.E. Military Ltd.*, stated, "Experts should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the factfinder." No. SA-03-CA-189-RF, 2004 WL 5495590, at *5 (W.D. Tex. Oct. 21, 2004) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Trinity Med. Servs., L.L.C. v. Merge Healthcare Sols., Inc.*, No. 17-592, 2020 WL 1309892, at *7 (M.D. La. Mar. 19, 2020) (deGravelles, J.).

*Smiley v. New Hampshire Ins. Co.,* No. 17-1094, 2021 WL 292449, at *8 (M.D. La. Jan. 28, 2021) (deGravelles, J.).

### IV. Factors for Measuring Reliability of Expert's Opinion

The Fifth Circuit held that *Daubert* made

> "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be

(and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The [Supreme] Court summarized:

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins*, 121 F.3d at 989 (internal citations omitted).

Cases following *Daubert* have expanded upon the factors listed above and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Joiner*, 522 U.S. at 142; *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011 at *1 (M.D. La. Oct. 12, 2010) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

The Supreme Court recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

In that vein, the Fifth Circuit has concluded that "soft sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering. *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997)).

> In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations. Because there are areas of expertise, such as the "social sciences in which the research theories and opinions cannot have the exactness of hard science methodologies," trial judges are given broad discretion to determine "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case."

*Id.* (internal citations omitted) (relying on *Pipitone*, 288 F.3d at 247).

V.  **Qualifications**

Additionally, Federal Rule of Evidence 702 requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded by statute on other grounds*. The Supreme Court in *Kumho Tire*, 526 U.S. at 148–149, 156, and *Daubert*, 509 U.S. at 592, endorsed expert testimony based on personal observation and experience. *See also, LeBlanc v. Chevron USA, Inc.*, 396 F. App'x. 94, 100 (5th Cir. 2010) (per curiam). Additionally, the 2000 Advisory Committee Notes to Rule 702 state, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience" which may be the "predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

If the expert's testimony does not rest on traditional scientific methods, the court may permit testimony "where a proposed expert witness bases her testimony on practical experience rather than scientific analysis." *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013). "In

6

such cases . . . courts recognize that '[e]xperts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called "general truths derived from . . . specialized experience."'" *Id*. at 412 (quoting *Kumho Tire*, 526 U.S. at 149–50 (citation omitted)); *see also Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) ("[T]here is no question that an expert may still properly base his testimony on 'professional study or *personal experience*.'" (emphasis added)).

Courts have rejected the notion that the Federal Rules of Evidence require an expert to have previously opined on a specific issue to be "qualified" as an expert on that issue. *See, e.g., BP Expl. & Prod., Inc. v. Callidus Techs., L.L.C.*, No. 02-2318, 2003 WL 26118097, at *1–2 (E.D. La. Apr. 8, 2003). Furthermore, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Carlson*, 822 F.3d at 199 (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

Nevertheless, the Fifth Circuit has stated that it "require[s] that a '[]witness's qualifying training or experience, and resultant specialized knowledge, are *sufficiently related* to the issues and evidence before the trier of fact [such] that the witness' proposed testimony will help the trier of fact.'" *Macy v. Whirlpool Corp.*, 613 F. App'x 340 (5th Cir. 2015) (emphasis by *Macy*) (quoting *United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2013)).

### VI.    Correctness of the Expert's Opinions

It is not the role of the court to decide whether an expert's opinions are correct or, in the case of competing and conflicting expert opinions, which one is right or even which one has the greater support.

> It will often occur that experts come to different conclusions based on contested sets of facts. Where that is so, the Rule 104(a) standard does not necessarily require exclusion of either side's experts. Rather, by deciding the disputed facts, the jury can decide which side's experts to credit. "[P]roponents 'do not have to demonstrate

7

> to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable . . . *The evidentiary requirement of reliability is lower than the merits standard of correctness.*"' Advisory Committee Note to the 2000 amendment to Rule 702, quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994).

Fed. R. Evid. 702 advisory committee's note to 2023 amendment (emphasis added).

### VII.   *Sufficiency of Facts and Data Relied Upon*

Rule 702(b) requires that expert testimony be "based upon *sufficient* facts or data." (emphasis added). "The word 'sufficient' signifies that the expert may properly base her opinion on something less than all the pertinent facts or data." 29 Victor J. Gold, *Federal Practice & Procedure* § 6268 (2d ed. 2020). The 2023 Advisory Committee Notes state the same.

> Some challenges to expert testimony will raise matters of weight rather than admissibility even under the Rule 104(a) standard. For example, if the court finds it more likely than not that an expert has a sufficient basis to support an opinion, the fact that the expert has not read every single study that exists will raise a question of weight and not admissibility. But this does not mean, as certain courts have held, that arguments about the sufficiency of an expert's basis always go to weight and not admissibility. Rather it means that once the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence.

Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

When an alleged lack of sufficient facts and data considered by the expert is the basis for the challenge, the question becomes how much is enough? Professor Gold provides a clue.

> [S]ufficiency is a function of the nature and scope of the opinion offered, the quantity of data both available and pertinent to the issue at hand, and what is deemed sufficient by experts in the pertinent field when working outside the courtroom. Included in the analysis under Rule 702(b) should be whether the expert ignored a significant portion of seemingly important data. For example, assume that the plaintiff in an auto accident case calls an accident reconstruction expert who testifies defendant was traveling over the speed limit. The expert bases her opinion entirely upon the extent of damage to the vehicles, but admits she did not measure the skid marks, consider the extent of the personal injuries, or examine any other physical evidence important to estimating speed. If an expert "cherry picks" favorable data in this manner but ignores a significant quantity of other important

8

facts, the trial court would be justified in concluding that the expert's testimony is not based on sufficient facts or data.

Gold, *supra*, at § 6268.

Further, "in determining the admissibility of expert testimony, the district court should approach its task 'with proper deference to the jury's role as the arbiter of disputes between conflicting opinions.'" *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d at 1077 (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). "'As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *Id.* (quoting *Viterbo*, 826 F.2d at 422). Nevertheless, in any case, "[m]atters left for the jury's consideration include the alleged miscalculations, erroneous assumptions, and inconsistencies that plaintiffs object to." *Imperial Trading Co. v. Travelers Prop. Cas. Co. of America*, No. 06-426, 2009 WL 2356292, at *3 (E.D. La. July 28, 2009) (citing *Southwire Co. v. J.P. Morgan Chase & Co.*, 258 F. Supp. 2d 908, 935 (W.D. Wis. 2007) ("the alleged errors and inconsistencies are grounds for impeaching the credibility of the experts and the reliability of their ultimate findings; however, mistakes and miscalculations are not grounds for excluding evidence.") (citing *Daubert*, 509 U.S. at 596))).

## VIII. Legal Conclusions

Federal Rule of Evidence 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." However, the Fifth Circuit has "repeatedly held that this rule does not allow an expert to render conclusions of law." *Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

"The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one." *Owen*, 698 F.2d at 240. In *Owen*, the Fifth Circuit explained:

> The example given in the Advisory Committee Notes to Rule 704 is helpful. The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well is a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read. Moreover, allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."

*Id.*

The Fifth Circuit has described permissible ultimate-issue questions as those which are "fact-oriented." *United States v. Lueben*, 812 F.2d 179, 183–84 (5th Cir.), *opinion vacated in part*, 816 F.2d 1032 (5th Cir. 1987). As stated by Judge Vance:

> Of course, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid . 704(A). Moreover, testimony should not be excluded simply because a witness is trained in the law or because the testimony will touch on legal topics. In distinguishing admissible testimony from inadmissible testimony, *the task for the Court is to ask whether the expert's opinions bear on some factual inquiry or whether they bear solely on the legal conclusions that are urged*. In other words, "an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied."

*Woodard v. Andrus*, No. 03-2098, 2009 WL 140527, at *2 (W.D. La. Jan. 20, 2009) (quoting *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) (emphasis added)).

## IX. *Daubert*, Bench Trials, and Preliminary Injunctions

"[S]ince Rule 702 is aimed at protecting jurors from evidence that is unreliable for reasons they may have difficulty understanding, in a bench trial there is greater discretion regarding procedure and even the stringency of gatekeeping." 29 Victor J. Gold, Federal Practice & Procedure § 6270 (2d ed. 2020).

> In a bench trial, the principal reason for the Court's gatekeeping function is not implicated, namely to guard against jury confusion which may result from irrelevant and/or unreliable expert opinion testimony. The purpose of the Court's gatekeeping function required by Daubert is "to ensure that only reliable and relevant expert testimony is presented to the jury." "Most of the safeguards provided for in Daubert are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."

*Hunters Run Gun Club, LLC v. Baker*, No. 17-176, 2019 WL 2516876, at *1 (M.D. La. June 18, 2019) (Dick, C.J.) (citations omitted); *see also Nassri v. Inland Dredging Co.*, No. 11-853, 2013 WL 256747, at *1 (M.D. La. Jan. 23, 2013).

Or, stated another way, "[t]here is less need for the gate keeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005); *see also Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *Smiley,* 2021 WL 292449, at *8–9.

Additionally, "[t]he law is well-settled that because the procedures governing a preliminary injunction are generally less formal than those at trial, the court may rely upon otherwise inadmissible evidence when considering a preliminary injunction." *Half Price Books, Recs., Mags., Inc. v. Barnesandnoble.com, LLC*, No. 02-2518, 2003 WL 23175432, at *1 (N.D. Tex. Aug. 15, 2003) (citing *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that

is less complete than in a trial on the merits."); *Sierra Club, Lone Star Chapter v. Fed. Deposit Ins. Corp.,* 992 F.2d 545, 551 (5th Cir. 1993) ("[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence . . . ."); *Fed. Sav. & Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 558 (5th Cir. 1987) (citing *Camenisch* for the proposition that "a preliminary injunction proceeding is not subject to jury trial procedures"); *Texas Com. Bank Nat'l Assoc. v. State of Fla.,* No. 96-2814, 1997 WL 181532, at *4 (N.D. Tex. April 9, 1997) (in deciding whether to grant a preliminary injunction, "the court may rely on hearsay evidence and may even give inadmissible evidence some weight"), *aff'd,* 138 F.3d 179 (5th Cir. 1998).

> Thus, as one district court in the Fourth Circuit explained:
>
> District courts in this circuit have held that defects in evidence offered in support of a preliminary injunction generally go to the weight of the evidence rather than whether the Court may consider it at all. Thus, some courts have decided to consider all proffered evidence and assign it whatever weight is appropriate under the circumstances. *See Hispanic Nat'l Law Enforcement Assoc. NCR v. Prince George's Cnty*, 535 F. Supp. 3d 393, 409–10 (D. Md. 2021) (denying a motion to strike allegedly inadmissible declarations in support of a preliminary injunction motion); *Stone v. Trump*, 280 F. Supp. 3d 747, 767 (D. Md. 2017) (stating, in connection with a motion for preliminary injunction, that "[t]he weight to be accorded to affidavit testimony is within the discretion of the court, and statements based on belief rather than personal knowledge may be discounted"). Others, when presented with proffered *expert* testimony related to a preliminary injunction motion, have undertaken a "less formal review" of the testimony to see whether it contains the indicia of reliability that courts look for in serving their gatekeeper function under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *See Defs. of Wildlife and S.C. Coastal Conservation League v. Boyle*, Civ. No. 2:22-112-RMG, 2023 WL 2770280, at *2 (D.S.C. Apr. 4, 2023). While the evidentiary rules are somewhat relaxed at this stage, courts have therefore found that Federal Rule of Evidence 702 and the line of cases under *Daubert* remain "useful guideposts" in determining what kinds of expert evidence are appropriate to consider in deciding on the motion. *St. Michael's Media Inc. v. Mayor and City Council of Baltimore*, 566 F. Supp. 3d 327, 353–56 (D. Md. 2021).

*G. W. Aru, LLC v. W. R. Grace & Co.-Conn.*, No. 22-2636, 2023 WL 5434666, at *2 (D. Md. Aug. 23, 2023); *see id.* at *4 (declining to strike expert declaration and instead finding that "the defects

. . . go to the weight that the Court will give [the expert's] technical statements and analysis in deciding on Plaintiffs' Motion for a Preliminary Injunction." (citing *Parks v. City of Charlotte*, No. 17-670, 2018 WL 4643193, at *4 (W.D.N.C. Sept. 27, 2018) (stating, in the context of a preliminary injunction, that a party's "*Daubert* arguments . . . are more instructive on the weight of the evidence rather than its admissibility at this procedural posture"); *see also Black Emergency Response Team v. Drummond*, No. 21-1022, 2023 WL 6810561, at *1–2 (W.D. Okla. Oct. 16, 2023) (describing *Daubert* "as a useful method for evaluating the weight of the evidence presented on a request for a preliminary injunction[,]" declining to apply *Daubert* to exclude evidence, and noting objections in weighing expert's testimony).

### X.     Conclusion

> "As one Court of Appeals has stated, trial judges are gatekeepers, not armed guards." 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6268.2 (2d ed. 1987) (citing *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 86 (1st Cir. 1998)); *see also, Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363 (W.D.N.Y. 1999) ("[T]rial judges acting as gatekeepers under Daubert must not assume 'the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul' and thereby usurp 'the ageless role of the jury' in evaluating witness credibility and weight of the evidence.") (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1045 (2d Cir. 1995)).

*Smiley,* 2021 WL 292449, at *8.

Signed in Baton Rouge, Louisiana, on September 13, 2024.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**