# Exhibit 13

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

REVEREND DARCY ROAKE and ADRIAN VAN YOUNG, on behalf of themselves and on behalf of their minor children, A.V. and S.V., et al.,

Plaintiffs,

v.

CADE BRUMLEY, in his official capacity as the Louisiana State Superintendent of Education, et al.,

Defendants.

CIVIL ACTION NO.
3:24-cv-00517-JWD-SDJ

**DECLARATION OF MOLLY PULDA IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Molly Pulda, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Plaintiff in the above-captioned matter, along with my husband, Gary Sernovitz. I am suing on behalf of myself and on behalf of my minor child, T.S.[1]

2. T.S. is currently enrolled in the NOLA Public School System in Orleans Parish. T.S.'s school is scheduled to begin the upcoming academic year on August 14, 2024.

3. Our family is domiciled, and our child attends school, in Orleans Parish.

4. I am Reform Jewish, as is my husband. We regularly attend synagogue, where my husband is a member of the board. I am on the board of a local Jewish community center.

5. We are intentionally and actively raising our child, T.S., in the Reform Jewish tradition. T.S. attends synagogue with us as well as weekly (and, in the coming academic year,

---

[1] In accordance with Federal Rule of Civil Procedure 5.2(3), all minor Plaintiffs are identified by their initials.

1

ROAKE-013

ROAKE-013-000001

twice-weekly) religious education classes at the synagogue. T.S. also has attended overnight Jewish summer camp.

6. My husband and I have chosen to educate T.S. in the public-school system because of our strong desire to separate T.S.'s secular education from T.S.'s religious education. We want to be able to oversee the latter and ensure that it is consistent with our Jewish belief and practice.

7. On behalf of myself and my minor child, I object to, and am offended by, H.B. 71 because, among other reasons, it forcibly imposes on T.S. overtly religious classroom displays that are, in many ways, contrary to our family's Jewish faith. I believe that H.B. 71 (1) misappropriates a Jewish text, ripping it from its Jewish context, (2) selectively edits that text by altering its meaning and obscuring or erasing its Jewish significance, and (3) then mandates the display of the altered text to non-Jews, in violation of core Jewish tenets that oppose proselytizing.

8. I believe that these displays are likely to result in religious coercion of T.S. and usurp my parental role in directing T.S.'s religious education, religious values, and religious upbringing.

9. I find the official version of the Ten Commandments set forth in H.B. 71 and displays of this state-selected religious scripture religiously offensive. This version does not comport with my view and understanding of the Ten Commandments. H.B. 71's characterization of the Ten Commandments as merely a "historically significant document" that reflects nothing more than the "necessity of civic morality to the functioning of self-government" improperly denies the sacred significance of the Ten Commandments to my Jewish faith. This official version of the Ten Commandments obscures, and conflicts with, the Reform Jewish tradition on the history and meaning of the commandments.

ROAKE-013-000002

10. I do not believe that the Ten Commandments are a universal benign ethical guide. The language of H.B. 71 omits key biblical text after the first commandment that, I believe, makes this clear: In the book of Exodus, chapter 20, in the Torah, the words "I am the Lord Your God" are followed by "who brought you out of the land of Egypt, out of the house of bondage." This clause is an important part of my Jewish understanding of the origins and purpose of the Ten Commandments, and omission of this text denies the commandments' specific meaning in my Jewish faith. I believe that this omission is tantamount to an official, governmental erasure of the Jewish significance of the Ten Commandments.

11. As Reform Jews, my husband and I also believe that introducing the Ten Commandments to T.S., and any action that could be construed as attempting to convey their proper religious meaning and interpretation, must occur in the context of the broader Reform Jewish tradition. In the modern Jewish tradition, the Ten Commandments would rarely, if ever, be displayed on the walls of a *religious* classroom at synagogue, as the commandments must be interpreted and reconciled with many other parts of the Torah and the interpretative body of work that has emerged over millennia to understand the Torah. In mandating such displays in the secular classroom, H.B. 71 interferes with my parental ability and right to address this religious doctrine with T.S. in a manner that complies with our faith.

12. For example, the official text mandated by H.B. 71 states: "Thou shalt not covet thy neighbor's wife, nor his manservant, nor his maidservant, nor his cattle, nor anything that is thy neighbor's." Torn from its Jewish context and presented to students like T.S. in the manner required under H.B. 71, I believe that this language endorses a point of view of God's commandments that specifically addresses property-owning men and implicitly denigrates women as equal adults. In fact, as a Reform Jew, the equality of men and women is a fundamental faith

3

tenet for me. It is a principle that is central to how my husband and I teach T.S. to read, abide by, and criticize Jewish texts and traditions. H.B. 71's required displays undermine my ability to do so.

13. The ability to direct and guide my child in matters of faith is an essential aspect of my religious exercise. H.B. 71 will significantly interfere with and substantially burden my ability to carry out this religious exercise.

14. I further believe, for the reasons above, that forcibly subjecting T.S. to the displays mandated by H.B. 71 will undermine and interfere with my and my husband's ability to instill in T.S. what it means to be specifically Jewish and our ability to introduce and teach the Ten Commandments to T.S. in a manner that comports with other important Jewish tenets. The displays will create confusion for T.S. by wrongly suggesting that the state-selected version of the Ten Commandments is the "correct" or authoritative version of scripture—even though it conflicts with our family's Jewish teachings—and will pressure T.S. to observe, meditate on, venerate, and obey the state's preferred religious beliefs and practices.

15. I also believe that because of the displays, T.S.—whom I believe to have been just one of a few Jewish students in T.S.'s class last year—will likely face situations in which T.S. feels pressured to suppress expression of T.S.'s own Jewish background and beliefs, including the fundamental Jewish belief in tolerating and supporting the expression of all faiths.

16. Finally, I strongly object to H.B. 71's religious displays because they would violate Jewish tenets that oppose proselytizing. In text and tradition, the Jewish faith teaches that proselytizing our religion to people of other faiths, trying to convert people to Judaism, or pressuring them to accept Jewish beliefs is wrong. These are religious values that my husband and I instill in T.S. I believe that school displays of the Ten Commandments will interfere with our

4

ability to do so and may place T.S., as one of the few Jewish students in T.S.'s class, in the position of being questioned by T.S.'s peers and being asked to defend or condemn this sacrilegious proselytizing.

I hereby declare under penalty of perjury that the foregoing is true and correct.

_____
Molly Pulda

Executed on this 2nd day of July, 2024

ROAKE-013-000005