# Exhibit 18-B

FILE:  HA
Cf:  HAA, HB, HD

# *SCHOOL BOARD CHARTERING AUTHORITY*

The Orleans Parish School Board (OPSB) is an authorized chartering authority as provided for in La. Rev. Stat. Ann. §17:3982.  The School Board has been granted authority to approve or deny charter school proposals for Type 1, 3, and 3B charters, and pursuant to La. Rev. Stat. Ann. §17:3983 may enter into any charter the School Board finds to be valid, complete, financially well-structured, and educationally sound in meeting the requirements of Louisiana Charter School Law.

The Orleans Parish School Board seeks to authorize high-quality charter schools with innovative and effective academic programs that align to the District Authorizing Priorities and the OPSB Board Vision and Goals for the purpose of increasing student performance, educational opportunities, and various learning choices for students and families.

DEFINITIONS

Closing School – a charter school authorized by the Orleans Parish School Board that surrenders the charter, has the charter revoked, or the charter is non-renewed; or a school directly operated by the School Board that the Superintendent seeks to transition to the operation of a new or existing charter operator.

New Operator – a non-profit organization that meets the state and local requirements to operate a charter school that does not, at the time of conclusion of the open siting process, operate an existing school authorized by the Orleans Parish School Board.

Existing Operator – a non-profit organization operating, at the time of the conclusion of the open siting process, at least one charter school authorized by the Orleans Parish School Board.

Charter School – an independent public school that provides a program of elementary and/or secondary education established pursuant to and in accordance with the provisions of the Louisiana charter school law to provide a learning environment that will improve pupil achievement.

Charter School Law – the Louisiana laws, La. Rev. Stat. Ann. §§17:3971 *et seq.*, governing the creation, operation, and oversight of charter schools.

Governing Board – the non-profit board responsible for directing a charter school's academic, financial, and legal performance, ensuring the implementation of and compliance with the charter operating agreement, and overseeing school-level decisions.

CHARTER SCHOOL AUTHORIZING

1. Charter Application Process.  In compliance with La. Rev. Stat. Ann. §17:3983, the School Board shall, at a minimum, annually review and formally act upon each charter proposal received within the timelines established by the State Board of Elementary and Secondary Education (BESE).

    A. Eligibility to Submit an Application:

        1. Charter applications must meet the requirements of Louisiana Charter School Law, OPSB Charter Request for Applications Guidelines, and this policy in order to be

ROAKE-018-B

considered for approval by the Superintendent.

2. Charter governing boards shall be registered as a nonprofit and listed in good standing with the Louisiana Secretary of State.

3. Charter governing boards shall meet the required minimum number of members as outlined in the application Guidelines and this policy.

4. Charter applicants shall comply with the assurances of the eligibility determination forms included in the application materials.

B. Application Cycle. The Superintendent shall consider applications for each specified type of charter school (Type 1 or Type 3) for approval at least once each calendar year in accordance with state timelines, this policy, and school district guidelines. Applications that are not timely submitted during the designated period provided by the district will not be considered. The application cycle will proceed as follows:

1. Letter of Intent. As a prerequisite for application submission, the charter applicant must submit a letter of intent to the School Board in accordance with district timelines, this policy, and district guidelines. The letter of intent shall include the vision, the mission, grades served, anticipated number of students to be served, and the intended start-date of the proposed charter school. The letter shall also include the proposed school's academic features for the purpose of increasing student performance.

2. Application Pre-Submission Process. In order to support the development of quality charter applications, the school district will provide an orientation session for interested applicants prior to application submission. Attendance is required in order to be eligible to submit an application during that application cycle. Participation in the orientation will provide applicants with a clear understanding of the application process, expectations for high-quality applications, and the School Board's expectations upon approval.

3. Application Review Process. A third-party evaluation team contracted by the School Board will review, evaluate, provide feedback and make a final recommendation to the Superintendent regarding the application. There will be several opportunities throughout the process for feedback from the applicants on the third-party review. An internal team of school district employees with expertise in each section of the application will review and provide an evaluation to the Superintendent regarding the application. A community review process, as established by the school district administration, will be utilized to review pertinent sections of the applications and to provide feedback to the Superintendent regarding the application.

4. Governing Board Capacity Interview. Governing board members of the charter applicant group must attend a capacity interview. The purpose of the interview is to assess the capacity of the governing board to create and operate a high-quality charter school.

5. Public Hearing. Charter applicants will have an opportunity to present at a School Board public hearing.

6. Recommendation to Approve or Deny. The third-party evaluator will provide a final evaluation recommendation report to be considered by the Superintendent. The Superintendent is not bound by the recommendation of the third-party evaluation

team. The Superintendent will announce a recommendation to either approve or deny each individual application during a public School Board Meeting. The charter applicant will be provided a copy of the Superintendent's recommendation in advance of the board meeting.

7. The School Board may vote to approve or deny the Superintendent's recommendation regarding charter applications. A simple majority vote of the School Board Members present shall be required for approval of the Superintendent's recommendation. ***A two-thirds (⅔) supermajority of the full membership of the School Board*** shall be required for rejection of the Superintendent's recommendation. However, if the School Board fails to reject the Superintendent's recommendations five (5) calendar days after the Superintendent's presentation of recommendations, the Superintendent may implement any such recommendations submitted to the School Board. If multiple recommendations are presented at the meeting, the School Board may vote on all the recommendations as a slate or make a motion to pull out individual recommendations for a separate vote.

2. <u>Charter Approval Extension to Begin Operation</u> - In accordance with La. Rev. Stat Ann. §17:3983, a charter school that has not begun operation within twenty-four (24) months after the approval of the charter may be granted an extension of the time period within which the charter must begin operation by the charter governing authority. Such extensions for the time period within which a charter must begin operation may be requested for a period of no more than twenty-four (24) months.

    A. Approved operators must submit a letter of intent prior to March 1st of the calendar year in which the approval will expire that:

        1. Explains the rationale for the extension request including any known reasons why the site has not opened and what would be necessary for opening within the requested timeframe.

        2. Outlines the plans to open within the requested extension period including: desired location or neighborhood of the school; personnel and timeline for onboarding; operational and facility considerations; and requested school year in which the school will begin operations.

        3. Details any requested changes that may be different from original charter application. Specify any of the following changes: board of directors, educational service provider, applicant and leadership team, contractual obligations, expansion of schools in any location. Changes that would differ from the intent or substance of the original application may not be accepted and may necessitate a new application through the standard charter application process.

    B. Approval of the extension request shall be at the discretion of the Superintendent based on system-wide needs, changes to the status of schools for existing operators (recent academic, financial and operational performance of existing schools), and any other factors the Superintendent considers relevant. The recommendation for approval or denial of the request will be presented to the Orleans Parish School Board.

    C. Upon approval, extensions may be granted up to two (2) years after expiration date. Subsequent approval to open the school (siting process) will be granted upon approval from the Superintendent.

3. <u>School Transformation Open Siting Process</u> – Upon the circumstance that an existing operator surrenders the charter, has the charter revoked, or the charter is non-renewed, and the Superintendent seeks to keep a closing school open the following school year through a transformation process, or the Superintendent seeks to find a new operator for a school directly run by the district, the school district shall conduct an open siting process as provided for in this section.

   A. A competitive process, to be established by the Superintendent, will be open to new and existing eligible operators and may include the following potential pathways to siting:

| Pathway to Siting | Eligible Operator | Description |
|---|---|---|
| Transformation – New Charter | Existing or new operator, with approved charter | Operator who has a charter approved by the School Board that has not yet been sited by the Superintendent. |
| Transformation – Replication | Existing operator eligible to replicate | Operator must meet policy requirements for charter automatic replication. |
| Transformation – Consolidation | Existing operator, no approved charter | Existing operators that meet the outlined criteria below. A consolidation is for existing operators that seek to serve students from the closing school by expanding their current program across multiple campuses or unifying their existing school and the closing school onto one campus. |

   B. All current students enrolled in the closing school in grades specified by the Superintendent in the open siting process shall have the option to continue enrollment at the new school.

   C. The open siting process will include engagement with all relevant stakeholder groups, as established by the Superintendent.

   D. The following eligibility criteria applies to each pathway:

      1. <u>Transformation – New Charter</u>:

         New and existing operators with charters approved by the School Board that have not yet been sited may apply.

      2. <u>Transformation – Replication</u>:

         An existing operator that has the ability to replicate, pursuant to this policy, may execute such ability in this situation, as a transformation.

      3. <u>Transformation – Consolidation</u>:

         A consolidation is for existing operators that seek to serve students from the closing school by expanding their current school across multiple campuses or unifying their current school and the closing school onto one campus.

         The existing operator shall assume all students specified in the open siting process and shall have the option to reconfigure their grade spans by location to meet the

ROAKE-018-B-000004

needs of their program. An existing operator that would like to be considered for consolidation will be eligible based on academic, organizational and financial effectiveness measures to be set by the School Board.

E. The Superintendent will review the required submissions as part of the school district's open siting process and make the determination of a new operator for the closing school. The Superintendent will inform all relevant stakeholders and the School Board of the determination in a timely manner. The Superintendent may make a determination that the best interest of the students may not be an operator selected through the open siting process and in such cases, will determine another option.

F. Nothing in this section shall be construed to prohibit the Superintendent from conducting an open siting process for purposes other than school transformations.

## CHARTER SCHOOL OPERATING REQUIREMENTS

The School Board is committed to ensuring academic excellence, fiscal responsibility, and operational accountability among its authorized charter schools, while honoring and respecting the autonomy of such schools consistent with the purposes established in Louisiana Charter School law, La. Rev. Stat. Ann. §§17:3971 et seq.

The Orleans Parish School Board has adopted the following criteria as mandatory elements of all charter *Operating Agreements* executed by the School Board. Should the provisions of this policy contradict or conflict with language in any other School Board policy, the requirements of this policy shall prevail.

1. <u>Academic Excellence</u> - All charter schools shall maintain academic excellence. Should any charter school be designated *Academically Unacceptable* (assigned a letter grade of F) under the standards established in the state accountability system, the Superintendent shall initiate a review of the charter, as set forth in the Charter School Accountability Framework.

2. <u>Autonomy</u> - Each charter school shall have complete autonomy over all areas of school operation as set forth in each school's *Operating Agreement*, as long as such operations are in compliance with all applicable federal, state, and municipal laws and regulations. Areas of school autonomy shall include, but not be limited to, the following:

    A. School programming, instruction, curriculum, materials and texts;

    B. Yearly school calendars and daily schedules;

    C. Hiring, firing, performance management and evaluation, employment terms and conditions, teacher/administrator certification, salaries and benefits, and optional participation in Teachers Retirement System of Louisiana and collective bargaining;

    D. Budgeting, purchasing, procurement, and contracts, including the management of transportation at the school site or operator level.

3. <u>Governing Boards</u> - The governing board of each Orleans Parish School Board-authorized charter school shall comply with the following:

    A. All applicable requirements set forth by the Louisiana Nonprofit Corporations Law and the Louisiana Secretary of State, including the provision that the nonprofit shall remain in good standing at all times during the term of its charter.

B. All laws and requirements applicable to public bodies made applicable to charter schools, including but not limited to Louisiana Open Meetings Law, Louisiana Public Records Law, Louisiana Local Government Budgets Act, and the Louisiana Code of Governmental Ethics.

C. Each governing board shall maintain a website that prominently posts the following information: (1) the names of all the governing board members; (2) a valid email address and/or telephone number of at least one governing board member who shall be responsible for responding to email correspondence or telephone calls received within a reasonable time; (3) a calendar of all governing board meetings that is regularly updated and includes an accurate representation of the time and location of the meetings; and, (4) minutes of all governing board meetings, which shall be posted no later than fourteen (14) calendar days after the next meeting.

D. Each governing board shall operate in accordance with its duly-adopted bylaws, which shall include a conflict of interest policy that is consistent with applicable law including, but not limited to, the Louisiana Code of Governmental Ethics.

E. Each governing board shall consist of no fewer than seven (7) members. Governing board members shall represent a diverse set of professional skills and practical work experience in areas such as education, public/non-profit and/or for-profit administration or operations, community development, finance, and law. Each charter school shall be required to fully comply with the requirement of this subparagraph upon the next renewal of the school's charter contract.

F. At least sixty percent (60%) of the members of each governing board shall reside (legal domicile) in Orleans Parish, including at least one parent or legal guardian of one or more students currently enrolled at any school operated by that governing board in Orleans Parish. The parent or legal guardian requirement may also be satisfied by a recent graduate (within the past 5 years) or the parent/guardian of a recent graduate (within the past 3 years) of a school in Orleans Parish operated by that governing board. Each charter school shall be required to fully comply with the requirement of this subparagraph upon the next renewal of the school's charter contract, and prior to that time shall fill board member vacancies and make new board member appointments with Orleans Parish residents, if the board's membership is comprised of less than sixty percent (60%) residents of Orleans Parish.

G. Each governing board shall conduct a criminal history review in accordance with BESE Bulletin 126, *Charter Schools*, §2905 for each new board member and each individual the Charter Board intends to hire who might reasonably be expected to be placed in a position of supervisory or disciplinary authority over school children. The criminal history review results of board members shall be submitted to the Orleans Parish School Board within ninety (90) days of the member's appointment.

   1. A governing board shall notify OPSB (within 24 hours of becoming aware) of the arrest of any members of the governing board, employees, contractors, subcontractors, or any person directly or indirectly employed by the governing board for a crime listed in La. Rev. Stat. Ann. §15:587.1(C) or any crime related to the misappropriation of funds or theft.

H. Each governing board member shall file a financial statement, in accordance with La. Rev. Stat. Ann. §42:1124.3, within ninety (90) days of confirmation by the board, unless the confirmation is made less than ninety (90) days prior to the annual statutory filing deadline,

in which case the statutory filing deadline shall apply.

I. No more than one member of the immediate family, as defined in the *Louisiana Code of Governmental Ethics*, La. Rev. Stat. Ann. §42:1102, may serve on a governing board in accordance with La. Rev. Stat. Ann. §42:2.2.

J. No elected official, as defined by the *Louisiana Code of Governmental Ethics*, and no individual formerly classified as an elected official for a period of one year following the termination of his or her service, may serve on a governing board.

K. No governing board member may be employed by the school, in any manner, in accordance with La. Rev. Stat. Ann. §17:3991. No governing board member may be employed by the Orleans Parish School Board, in any administrative capacity.

L. No governing board member shall receive any compensation, other than optional reimbursement of actual expenses incurred while fulfilling duties as a member of the board, in accordance with La. Rev. Stat. Ann. §17:3991, nor shall they solicit or accept personal gifts from any person or entity doing business, or seeking to do business, with the governing board or charter school, in accordance with La. Rev. Stat. Ann §42:1115.

M. Governing boards shall notify OPSB within thirty (30) days of any change to its board of directors, its signing authority, its corporate legal status, or any change in its standing with the Louisiana Secretary of State's Office.

   1. Within three (3) months of the appointment or election of a new board chair, the new board chair is required to attend an OPSB governance training session, including a meeting with the Superintendent or his designee.

   2. Within three (3) months of the appointment or election of a new governing board member, the new member is required to attend an OPSB governance training session.

4. <u>Governing Board Finances</u> - Each governing board of one or more Orleans Parish School Board-authorized charter schools shall be required to:

   A. Hire or procure the services of one or more qualified and competent business professionals to produce all financial and accounting information required by its *Operating Agreement*, School Board policy, state law or regulations. Such individual shall be required to meet one of the qualifications set forth in Chapter 13 of Louisiana Board of Elementary and Secondary Education (BESE) Bulletin 1929, *Louisiana Accounting and Uniform Governmental Handbook* (LAUGH).

   B. Submit to the Orleans Parish School Board an annual financial audit, in accordance with the provisions of La. Rev. Stat. Ann. §§24:513 et seq., and according to the timelines established by the Orleans Parish School Board administration.

   C. Should gross mismanagement of public funds or financial malfeasance on the part of the charter school or its governing board be documented in the annual audit, the School Board may immediately convene to reconsider the charter, following the procedures established in School Board policy *HB, Oversight and Evaluation of Charter Schools.*

   Governing board members shall disclose to the Louisiana Board of Ethics and OPSB any situation in which they or their immediate family might benefit from a proposed action of the governing board or the charter school, in accordance with La. Rev. Stat. Ann §42:1114.

5. <u>Automatic Replication</u> - A school not in its initial charter term, and meeting the standards for Automatic Renewal in accordance with La. Rev. Stat. Ann. §17:3992(A)(2)(c) shall be deemed eligible for automatic replication if:

    A. It has earned a school performance score of A or B for three consecutive years;

    B. It is not labeled as "Urgent Intervention Required" by the Louisiana Department of Education due to performance on the Louisiana Department of Education's subgroup category;

    C. It is either:

        1. an elementary school with a progress index score of greater than 90; or

        2. a high school, serving grades 9-12, with an index score of greater than 85 in each component of the School Performance Score; or

        3. a combination school, serving both elementary and high school grades, that meets (c)(i) and (c)(ii) of this subparagraph.

    D. Written notification of intent to replicate shall be provided to the School Board by January 1st of the school year prior to the replication. Once notification has been provided, the replicating charter school and the Superintendent shall present a new charter agreement to the School Board for approval by not later than April 1st.

    E. The term of any new charter school created by this provision shall be set to equal the lesser of either five (5) years, or the remaining length of the charter agreement of the replicating school, in accordance with the provisions of this policy. In the case that the charter is set to five (5) years, the new (i.e. replicated) school shall be subject to the Third Year Review and Extension standards established in section 8 of this policy.

    F. Including the replicated school, the operator may not operate more than 15% of the schools in Orleans Parish, unless this provision is suspended by the Superintendent in accordance with Part 2 Legal and Policy Requirements of Charter Schools, subsection (I)(9) of this policy.

6. <u>Admissions and Student Population</u>- As stated in La. Rev. Stat. Ann. §17:3972, "it is the intention of the Legislature that the best interests of at-risk pupils be the overriding consideration in implementing" state charter school law. Accordingly, while the School Board recognizes that Type 1, 3 and 3B charter schools are subject to different laws and state regulations, it is the intent of the School Board to create and implement policy that is consistent across charter types in order to serve the needs of Orleans Parish's at-risk student population, while recognizing the unique elements of each school's history and culture, and encouraging differentiation in school programming:

    A. <u>At-Risk Students</u>: Type 1 charter schools shall comply with the minimum at-risk student population percentages provided for in La. Rev. Stat. Ann. §17:3991. Type 3 and 4 charter schools shall comply with the minimum at-risk student population percentages as provided for in La. Rev. Stat. Ann. §17:3991, unless otherwise agreed to as part of the charter schools' operating agreement. Charter schools that are in good standing in regard to compliance with the parish-wide common enrollment system and student expulsion process policies may be exempted from the minimum enrollment percentages required by La. Rev. Stat. Ann. §17:3991.

The required percentage of at-risk pupils shall be calculated in accordance with state law and BESE policy, including the provisions of La. Rev. Stat. Ann. §17:3991.1 with respect to the dependent children of permanent employees of a corporate partner. The performance of each charter school with respect to these provisions shall be reviewed annually, and documentation of efforts shall be provided to the School Board upon request, per the terms of the charter school's *Operating Agreement*. Charter schools shall maintain compliance with federal and state law and regulations with respect to any student with an *Individualized Education Plan* (IEP), and the provisions of the school's operating agreement pursuant to services for such students.

All charter schools authorized by OPSB, including Type 3B's, shall report their at-risk data to OPSB. This reporting requirement does not relieve charter schools of any existing obligations to report at-risk data directly to federal or state agencies. Any school not meeting the minimum requirement for two (2) consecutive years may be subject to Intervention, as set forth in the charter school's *Operating Agreement* and in accordance with the provisions of policy *HB, Oversight and Evaluation of Charter Schools*. No adverse action under this subsection, including Intervention, shall be applied to any charter school unless the school is first determined either to be in material noncompliance with the terms of its *Operating Agreement*, or fails to earn a rating of "Meets Standard" pursuant to the Orleans Parish School Board *Charter School Accountability Framework*, as set forth in policy *HB, Oversight and Evaluation of Charter Schools*.

B. <u>Prohibited Admissions Criteria</u>: All charter schools shall be prohibited from establishing academic admissions requirements, including restrictions on admissions on the basis of the results of any test or on the achievement of a certain academic record (GPA, writing sample, or required coursework), except as provided for in Section 10, *Schools with Academic Admissions Requirements*, of this policy. All charter schools shall be prohibited from establishing admissions requirements based on student conduct, behavior, or prior disciplinary record, except as provided for alternative schools in Section 11, *Alternative Education Schools*, of this policy.

C. <u>Admissions Provisions</u>: The School Board recognizes two (2) categories of admissions provisions in charter *Operating Agreements*:

   1. <u>Mission-Specific Admissions Requirements</u>, pursuant to La. Rev. Stat. Ann. §17:3991, which provides that enrollment in a charter school may be made contingent on the satisfaction of non-academic admissions requirements or preferences that are "consistent with the school's role, scope, and mission….Such admissions requirements shall be specific and shall include a system for admission decision which precludes exclusion of pupils based on race, religion, gender, ethnicity, national origin, intelligence level as ascertained by an intelligence quotient examination, or identification as a student with an exceptionality.

      Charter schools with mission-specific admissions requirements shall be subject to the following provisions:

      a. <u>Eligibility</u>**:**  Type 1 and Type 3 charter schools may establish mission-specific admissions requirements, subject to approval of the School Board within the provisions of an approved charter application or by material amendment to an existing *Operating Agreement*.

      b. No renewal Operating Agreement for any charter school first chartered prior to July 1st, 2015 may incorporate any new admissions requirements pursuant to this subsection, unless such modifications are separately approved by the School

Board through the material amendment process provided for in the charter school's existing *Operating Agreement*.

    c. All such admissions requirements or preferences shall be administered in accordance with School Board policies, and with procedures of the common enrollment system established for this purpose, for all charter schools otherwise required to participate in such system pursuant to Section 6, *Enrollment*, Part A, of this policy.

    d. Pursuant to La. Rev. Stat. Ann. §17:3991, Type 3B charter schools shall remain open-enrollment and are prohibited from establishing admissions requirements under this subsection.

2. <u>Focus Programs</u>, which are programs that deliver a rigorous, developmentally appropriate educational model that substantially differentiates daily schedules, curriculum design, instructional approach, and/or standards from what is available to other students in the school. Focus programs that are recognized in the common enrollment system shall be subject to the following provisions:

    a. <u>Eligibility</u>**:** Any charter school, including a Type 3B charter school, may offer one or more focus programs subject to the approval of the Superintendent, with enrollment in such programs based solely on student interest.

    b. No more than one-third (33%) of the total number of seats at the charter school, or at any single grade level within the charter school, may be designated for focus program enrollment without School Board approval.

    c. No audition, test, performance task, or any condition of enrollment may be required for enrollment in a focus program, other than a confirmation of intent by the student's parent or guardian at the time of registration.

7. <u>Enrollment</u>

    A. Each new, extended, or renewed charter school *Operating Agreement* shall include provisions requiring participation in the common enrollment system adopted by the School Board, and operated in a transparent and publicly accountable manner in accordance with the provisions of Orleans Parish School Board policy and the terms of Orleans Parish School Board charter school *Operating Agreements*. Compliance with this provision shall be measured as a component of each school's annual evaluation.

    B. No new, extended, or renewal charter school *Operating Agreement* executed on or after January 1, 2016 may include a neighborhood, zip code, or geographic zone enrollment preference or priority that does not conform to the standard community preferences determined by the School Board in accordance with La. Rev. Stat. Ann. §17:3991.

    Any school first authorized prior to July 1st, 2015 and whose *Operating Agreement* incorporated a ZIP code-based neighborhood preference may retain such preference for up to two-thirds (67%) of seats (overall and in each grade level), effective either at renewal or upon entry into the common enrollment system.

    C. OPSB may annually establish enrollment projections and targets for every school under the school board's jurisdiction and require enrollment of additional or fewer students throughout the school year as necessary.

ROAKE-018-B-000010

D. <u>School Operator Enrollment Limit:</u>  The Superintendent may limit the percentage of system enrollment that any single operator of schools or charter governing authority may serve, in order to ensure that a diverse system of schools led by multiple high quality operators exists at all times.  For the purposes of this provision, "system enrollment" shall be defined to include all Orleans students enrolled in grades kindergarten through 12 in public schools under the jurisdiction of OPSB.

   1. The School Board may, upon the Superintendent's recommendation and by a two-thirds vote of the membership, authorize any operator to serve more than fifteen percent (15%) of system enrollment.

   2. Suspension of Enrollment Limit – In order to ensure that adequate seats are available to serve all students seeking public school seats in Orleans Parish, the Superintendent may authorize a one-year suspension of the percentage limit under this policy for one or more operators when it is determined that emergency or exigent conditions exist which necessitate the creation of additional capacity in the system

      a. Prior to any such determination, the Superintendent shall collaborate with school operators in the establishment of enrollment projections, as provided for in this Policy.

      b. The Superintendent shall then present a report regarding the determination to the School Board at its next regular meeting. Such report shall address the circumstances that required the suspension, the anticipated length of the suspension, and the school district's plan to address the circumstances which necessitated the suspension.

      c. Any suspension of the percentage limit under this subsection of the policy extending beyond one school year shall require a two-thirds vote of the membership of the School Board.

E. A waitlist shall be maintained in the common enrollment system for any charter school with eligibility criteria as provided for in the school's *Operating Agreement*, such as academic requirements, language requirements, or open house requirements.  An applicant shall be placed on a school's waitlist when the applicant has met the school's admissions criteria, but the school's enrollment has reached capacity in the applicant's grade level.  Applicants shall be chronologically ranked on the waitlists according to their random numbers assigned by the common application process software.  Waitlists shall be administered in a transparent manner in accordance with district policies and school procedures established for this purpose.  Waitlists will expire on September 1 annually.

8. <u>Early Childhood</u>

   A. Each charter school that operates an early childhood program, either directly or via partnership, that accepts public funds for serving students prior to entering kindergarten shall participate fully in all requirements of the *Louisiana Early Childhood Education Act* (La. Rev. Stat. Ann. §§17:407.21 et seq.), including full participation in the Community Network's Coordinated Enrollment Process for Orleans Parish, beginning with the process to enroll students for the 2016-17 school year.

   B. Each charter school authorized by the School Board to serve Pre-Kindergarten students shall be required to adhere to the following policies:

1. All publicly-funded Pre-Kindergarten students at the charter school shall be permitted to enroll in Kindergarten at the charter school as continuing students, including any students designated as "at-risk" pursuant to state law that attended Pre-Kindergarten tuition-free due to a charter school's use of *Minimum Foundation Program* (MFP) or other funds.

2. For charter schools offering a tuition-based Pre-Kindergarten program option, at least fifty percent (50%) of the school's total Kindergarten enrollment shall be reserved for continuing students as identified in subsection (B)(1) of this Paragraph, students admitted who are economically disadvantaged, or are enrolled by lottery, or a combination of both.

9. <u>Discipline</u>- Each charter school shall adopt and implement explicit discipline policies consistent with applicable state statutes and the school's *Operating Agreement*. Each charter school authorized by the School Board shall be required to participate in any common expulsion process adopted by the School Board as a condition of the school's charter agreement. Compliance with this provision shall be measured as a component of each school's annual evaluation.

10. <u>Transportation</u>

    Any charter operator that transports children on school buses shall require its school bus service provider, including the charter operator itself if acting as the bus provider, to comply with the regulations set forth in New Orleans City Code of 1995, Article XVI.

    Each charter operator shall provide free transportation services for all students enrolled in the charter school who reside within Orleans Parish and more than one mile from the charter school's location, as outlined below, at a minimum:

    A. whatever transportation is necessary to implement any *Individualized Education Plan* (IEP) for a child with an identified exceptionality, without regard to how far the child resides from the charter school;

    B. free transportation for students enrolled in grade 8 or below who reside more than one mile from the charter school, with the exception of grade 8 students who are enrolled in high school, the earliest pickup being no earlier than 6:05 a.m., by a vehicle approved for student transportation in accordance with BESE Bulletin 119, *Louisiana School Transportation Specifications and Procedures*; and,

    C. free transportation, free public transportation payments and/or reimbursements for all other students who reside more than one mile from the school.

11. <u>Schools with Academic Admissions Requirements</u>

    As set forth in La. Rev. Stat. Ann. §17:3991, a school which was first chartered prior to July 1, 2012, and which incorporated achievement of a certain academic record as part of its admissions requirements may continue to utilize such admission requirements." Further, "such admissions requirements shall not work to exclude students based on race, religion, gender, ethnicity, national origin, intelligence level as ascertained by an intelligence quotient examination, or identification as a student with an exceptionality as defined in La. Rev. Stat. Ann. §17:1942."

    The School Board recognizes the unique role and mission of charter schools with academic admissions requirements as an option for all Orleans Parish students and

families. Accordingly, the School Board shall provide for the following policy accommodations for such schools:

A. Schools shall be subject to these provisions if first chartered prior to July 1, 2012 and the terms of the charter school's *Operating Agreement* identifies it as a selective admissions school, pursuant to La. Rev. Stat. Ann. §17:3991.

B. Charter schools subject to this provision shall adhere to the following provisions, which shall be incorporated in any renewal *Operating Agreement*:

   1. <u>Academic Excellence</u>:  Notwithstanding the standards set forth in the Orleans Parish School Board *Charter School Accountability Framework*, charter schools with academic admissions requirements shall be required to achieve EITHER a letter grade of A under the state accountability system, OR a ranking in the top 10% of schools in the state serving the same grade levels, in order to be deemed to have met the standard for Measure 1 (State Accountability).

   2. <u>Access</u>:

      a. All admissions processes for charter schools with academic admissions requirements shall be conducted through the common enrollment system adopted by the School Board, effective at the next renewal of the school's *Operating Agreement*.  This requirement shall be implemented in a transparent and publicly accountable manner that is in strict accordance with state and federal law, with all eligibility standards that are established for each such charter school in its respective *Operating Agreement*, and with the provisions of subsection (C) (1) of Section 11, *Schools With Academic Admissions Requirements*, of this policy.

      b. Each charter school with academic admissions requirements shall maintain citywide access for all students meeting the eligibility standards and preference criteria set forth in the charter school's *Operating Agreement*; no neighborhood or other geographic priorities shall be permitted.

      For charter schools with existing neighborhood boundaries, the provisions of this subsection shall be effective not later than the enrollment process for the 2017-18 school year.  Any charter school subject to the provisions of this subsection which may have its academic admissions requirements revoked by the School Board subsequent to its implementation shall be permitted to retain its prior neighborhood attendance zone upon such revocation.

   3. <u>At-Risk Students</u>:  Charter schools with academic admissions requirements shall comply with the provisions of La. Rev. Stat. Ann. §17:3991, which requires that the percentage of at-risk students in the charter school shall be equal to not less than the percentage of at-risk students enrolled in the school in the year prior to the charter school's conversion, unless otherwise negotiated with the Orleans Parish School Board as a provision of the school's *Operating Agreement*.  The required percentage of at-risk students shall be calculated in accordance with state law and BESE policy, including the provisions of La. Rev. Stat. Ann. §17:3991.1 with respect to the dependent children of permanent employees of a corporate partner.

      The performance of each charter school with respect to the provisions of this subsection shall be reviewed annually, and documentation of efforts shall be provided to the School Board upon request, per the terms of the charter school's *Operating Agreement*.  Schools shall maintain compliance with federal and state law and

regulations with respect to students with an *Individualized Education Plan* (IEP), and the provisions of the school's *Operating Agreement* pursuant to services for such students.

4. <u>Accountability</u>: Any charter school with academic admissions requirements failing to meet any requirements set forth under this Section for two (2) consecutive years may be subject to Intervention, as set forth in the charter school's *Operating Agreement* and in accordance with the provisions of policy *HB, Oversight and Evaluation of Charter Schools*.

    a. No adverse action under any portion of this Section, including Intervention, shall be applied to any charter school unless the charter school is first determined either to be in material noncompliance with the terms of its *Operating Agreement*, or fails to earn a rating of "Meets Standard" pursuant to the Orleans Parish School Board *Charter School Accountability Framework*, as set forth in policy *HB, Oversight and Evaluation of Charter Schools*, and as modified within this Section.

    b. The provisions of this Section may be temporarily suspended, either in full or in part, by the Superintendent and referred to the Orleans Parish School Board for reconsideration, if it is determined that substantial changes have been made to either the state accountability system, as set forth in BESE *Bulletin 111, Louisiana School, District, and State Accountability System*, or to the policies of the common enrollment system adopted by the School Board, with respect to such charter schools.

C. Charter schools subject to this provision and in good standing shall be granted the following accommodations in recognition of their unique role and mission:

1. <u>Admissions and Enrollment</u>: Notwithstanding any provisions of Orleans Parish School Board policy or procedures of the common enrollment system to the contrary, charter schools with academic admissions requirements shall be exempted from any mid-year enrollment or backfilling requirements that may otherwise be applicable.

    The administration of any processes required to determine eligibility for admission to such charter schools, including verification of domicile and any testing or assessments permitted by such charter schools' *Operating Agreements*, shall be administered by the school in accordance with district policies and school procedures established for this purpose in its *Operating Agreement*. All costs for any additional processes pursuant to this subsection that extend beyond the standard procedures of the common enrollment system shall be borne solely by the school.

2. <u>Transportation</u>: Notwithstanding the provisions of Section 10, *Transportation*, of this policy, charter schools with academic admissions requirements shall be required to provide free and adequate transportation to any requesting student enrolled in the charter school if the student resides more than one mile from such charter school. The transportation so provided may include payment and/or reimbursement of the cost of access to public transportation. Each charter school shall provide whatever transportation is necessary to implement any individualized education program for a student with exceptionality, without regard to how far the child resides from the charter school.

12. <u>Emergency Powers</u>

The Superintendent shall have the authority to require one or more charter schools under

OPSB's jurisdiction to temporarily close, hold or dismiss students, or evacuate the school facilities in the event that a credible threat of terror, or an official state of emergency is declared for the area in which any school under OPSB's jurisdiction is located.

13. Test Monitoring

The Orleans Parish School Board holds proper test security and administration to be of the utmost importance and deems any violation of test security to be serious. All charter schools shall adhere to state test security policies as detailed in BESE Bulletin 118, *Statewide Assessment Standards and Practices*, the Test Administration Manuals for each test, and administrative procedures approved by the Superintendent.

   A. Beginning July 1, 2017, each charter school under the local school board's jurisdiction shall, at its own expense, annually provide for one day of independent test monitoring from a third-party entity approved by the Superintendent, during a state assessment testing window determined by OPSB, for one or more tests that contribute to a school's Assessment Index calculated by the Louisiana Department of Education.

   B. The Superintendent may, without advance notice and at OPSB's expense, assign test monitors to a charter school for any assessment required by federal law, state law or BESE regulation, or School Board policies and procedures. Such test monitors must be granted access to the facility, classrooms, and testing materials in accordance with written procedures developed by OPSB that comply with state test security and student privacy law and regulations.

| | |
|---|---|
| Revised: June 14, 2016 | Revised: August 22, 2019 |
| Revised: November 15, 2016 | Revised: November, 19, 2020 |
| Revised: May 18, 2017 | Revised: September 23, 2021 |
| Revised: June 15, 2017 | Revised: January 19, 2023 |
| Revised: May 17, 2018 | Revised: May 18, 2023 |
| Revised: October 11, 2018 | Revised: February 26, 2024 |

Ref:   La. Rev. Stat. Ann. §§15:587.1, 17:10.7.1, 17:3971, 17:3972, 17:3973, 17:3974, 17:3983, 17:3983.1, 17:3991, 17:3991.1, 17:3992, 17:3996, 42:1114, 42:1115
   *Louisiana School, District, and State Accountability System,* Bulletin 111
   *Statewide Assessment Standards and Practices,* Bulletin 118
   *Louisiana School Transportation Specifications and Procedures,* Bulletin 119
   *Charter Schools,* Bulletin 126
   *Louisiana Accounting and Uniform Governmental Handbook* (LAUGH), Bulletin 1929, Louisiana Department of Education
   Board minutes, 9-10-15, 6-14-16, 11-15-16, 5-18-17, 6-15-17, 5-17-18, 10-11-18, 8-22-19, 11-19-20, 9-23-21, 1-19-23, 5-18-23, 2-26-24

Orleans Parish School Board