## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DARCY ROAKE, ET AL.**

**VERSUS**

**CADE BRUMLEY, ET AL.**

**CIVIL ACTION**

**NO. 24-517-JWD-SDJ**

## <u>RULING ON DEFENDANTS'</u>
## <u>MOTION TO EXCLUDE PUTATIVE EXPERT TESTIMONY</u>

Before the Court is *Defendants' Motion to Exclude Putative Expert Testimony* ("Motion" or "*Daubert* Motion") (Doc. 53) filed by defendants Cade Brumley, Conrad Appel, Judy Armstrong, Kevin Berken, Preston Castille, Simone Champagne, Sharon Latten-Clark, Lance Harris, Paul Hollis, Sandy Holloway, Stacey Melerine, Ronnie Morris, East Baton Rouge School Board, and St. Tammany Parish School Board (collectively, "AG Defendants").[1] (Doc. 53.) It is opposed by plaintiffs Reverend Darcy Roake and Adrian Van Young, on behalf of themselves and on behalf of their minor children, A.V. and S.V.; Reverend Mamie Broadhurst and Reverend Richard Williams, on behalf of themselves and on behalf of their minor child, N.W.; Reverend Jeff Sims, on behalf of himself and on behalf of his minor children, A.S., C.S. 1, and C.S. 2; Jennifer Harding and Benjamin Owens, on behalf of themselves and on behalf of their minor child, A.O.; Erin Hawley and David Hawley, on behalf of themselves and on behalf of their minor children, A.H. and L.H.; Dustin McCrory, on behalf of himself and on behalf of his minor children, E.M., P.M., and L.M.; Gary Sernovitz and Molly Pulda, on behalf of themselves and on behalf of their minor child, T.S.; Christy Alkire, on behalf of herself and on behalf of her minor child, L.A.; and

---

[1] These defendants are all represented by the Louisiana Attorney General. The remaining defendant, Orleans Parish School Board ("OPSB"), did not join in this Motion.

Joshua Herlands, on behalf of himself and on behalf of his minor children, E.H. and J.H. (collectively, "Plaintiffs"). (Doc. 61.) AG Defendants filed a reply. (Doc. 63.)

The Court held a hearing on October 21, 2024, to address AG Defendants' Motion challenging Plaintiffs' introduction of Stephen K. Green as an expert witness under the *Daubert* standard. See *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The challenged witness, Steven K. Green, testified. At the conclusion of his direct examination, Green was tendered as an expert in the history of the United States Constitution and the First Amendment with respect to religious matters, the history of religion in U.S. public schools, and denominational variations in the text of the Ten Commandments. Green was cross-examined, and then the Court allowed a redirect examination. The Court then heard oral argument on the *Daubert* Motion following which the Court took the matter under advisement. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, the Motion is denied.

## I.     BACKGROUND

This case involves the alleged unconstitutionality of House Bill No. 71, Act 676 ("H.B. 71" or the "Act"). This law provides in relevant part:

> No later than January 1, 2025, each public school governing authority shall display the Ten Commandments in each classroom in each school under its jurisdiction. The nature of the display shall be determined by each governing authority with a minimum requirement that the Ten Commandments shall be displayed on a poster or framed document that is at least eleven inches by fourteen inches. The text of the Ten Commandments shall be the central focus of the poster or framed document and shall be printed in a large, easily readable font.

Also pending before the Court are Plaintiffs' *Motion for Preliminary Injunction* (Doc. 20), AG Defendants' *Consolidated Motion to Dismiss, Opposition to Plaintiffs' Motion for Preliminary Injunction, and Alternative Motion to Stay Pending Appeal* (Docs. 39, 39-1, 40) and Defendant

OPSB's Rule 12(b)(1) *Motion to Dismiss and Opposition to Motion for Preliminary Injunction* (Doc. 38).[2]

Plaintiffs signaled their intention to offer the testimony of historian Steven K. Green, J.D., Ph.D. ("Green") in connection with the hearing of the above motions which was held on October 21, 2024, at which time Green testified. Plaintiffs also introduced Green's expert report. (Green Expert Report, Doc. 50-2.)

In his report and testimony, Green offered opinions regarding "the history of the U.S. Constitution and First Amendment with respect to religious matters; the history of the Ten Commandments with respect to U.S. law and government; the history of displays of the Ten Commandments in public schools; and the denominational nature of the specific version of the Ten Commandments adopted in House Bill No. 71, Act No. 676 . . . ." (*Id.* at 5.) In his report and testimony, Green offered "four key conclusions":

- The Religion Clauses of the First Amendment were rooted in the Founders' profound concerns for protecting the conscience of individuals and religious communities; avoiding official denominational preferences, including official promotion of religious doctrine; and preventing the religious divisiveness that flows from government favoritism of some religions or non-religion.

- The historical record demonstrates that the Ten Commandments are not a foundation of the American Government or legal system.

- There is no evidence of a longstanding historical acceptance and practice of widespread, permanent displays of the Ten Commandments in public school classrooms.

- The version of the Ten Commandments adopted under H.B. 71 is Protestant and thus religiously exclusive.

(*Id.* at 5–6.)[3]

---

[2] The hearing and argument on these other motions were held at the same time as the *Daubert* hearing. Because Green's opinions were potentially germane to the preliminary injunction motion, the Court heard Green's substantive testimony at the same time.

[3] All page citations are to document page numbers, not internal page numbers.

## II.     STEVEN K. GREEN'S QUALIFICATIONS

Green is the subject of AG Defendants' *Daubert* Motion. Although the Motion does not challenge Green's qualifications, the Court summarizes them here for context.[4] Green earned a B.A. degree in History and Political Science, *Magna Cum Laude*, from Texas Christian University in 1978 where his minor was Religious Studies. (*Id.* at 32.) He graduated from the University of Texas School of Law in 1981, earning a J.D. degree. (*Id.*) In 1987, he received a Master's degree in American Religious History from the University of North Carolina, Chapel Hill and a Ph.D. in Constitutional History from the same university in 1997. (*Id.*) He is currently the Fred H. Paulus Professor of Law and Affiliated Professor of History and Religious Studies at Willamette University in Salem, Oregon, where he was also the Director of the Willamette Center for Religion, Law and Democracy from 2007 to 2020. (*Id.*) He has authored "seven books and more than fifty scholarly articles and book chapters" in the area of "the intersection of law, religion, and history." (*Id.* at 3; *see also id.* at 33–40.)

## III.     SUMMARY OF PARTIES' ARGUMENTS

### A.   *Summary of AG Defendants' Arguments*

AG Defendants make four main arguments in support of their motion to exclude Green:

1. Green has failed "to identify any external standard validating his methodology . . . ." (Doc. 53-1 at 5; *see also id.* at 6–8.)

2. His opinions "attempt[ ] to overrule the Supreme Court on historical questions it has already definitively asked and answered." (*Id*; *see also id.* at 8.)

3. "Green's background as an advocate . . . means his proffered opinions are not truly independent and are thus unreliable." (*Id.*; *see also id.* at 8–10.)

4. Green's opinions are not relevant because (a) "the standard [governing the Establishment Clause] is not concerned with whether a specific challenged

---

[4] Green's complete curriculum vitae is found in the record at Doc. 50-2 at 32–41.

practice occurred in the past, but instead with whether the current challenged practice reflects any of the already-identified hallmarks of a religious establishment[,]" and (b) his opinions do "not tend to establish any fact at issue [since] the historical facts are not in dispute, just how to characterize those facts." (*Id*; *see also id*. at 10–12.)

### B.  Summary of Plaintiffs' Responses

Plaintiffs respond to AG Defendants' arguments as follows:

1.  Green used traditional and accepted methods of historical analysis. (Doc. 61 at 10.) These methods included "standard and well-accepted methodologies used by historians, such as "gather[ing] and review[ing] 'both primary and secondary sources' and 'analyz[ing] how reliable the source is, and how consistent it is with other evidence[.]'" (*Id*., citing Green's Expert Report, Doc. 50-2 at 4; *see also id*. at 10–14.)

2.  The Supreme Court's rulings "say nothing about the reliability of Dr. Green's historical opinions, and they are certainly not a basis for excluding Dr. Green's testimony here." (*Id*. at 15, noting that "[t]ellingly, Defendants do not cite a single case to support the tortured argument.")

3.  AG Defendants' argument that Green's opinions are unreliable because of bias rests on his representation "more than two decades ago" as a lawyer for Americans United for Separation of Church and State, which is one of the organizations associated with Plaintiffs' counsel in this action. (*Id*. at 17–18.) However, "Defendants do not . . . point to any evidence of actual bias" and they ignore "over twenty years of academic and historical research, study and writing" in this area. (*Id*.) Furthermore, any alleged bias goes to the weight, not the admissibility, of the expert testimony. (*Id*. at 18–19.)

4.  AG Defendants' argument that Green's opinions are irrelevant rests on an erroneous interpretation of *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022). (*Id*. at 19; *see also id*. at 19 n.10, citing arguments on this issue made in connection with the briefing on AG Defendants' Motion to Dismiss; *see also id*. 19–22). Indeed, Green's analysis is "directly relevant to *Kennedy*'s historical analysis." (*Id*. at 22; *see also id*. at 22–25.)

### C.  Summary of AG Defendants' Reply

In their reply, AG Defendants repeat many of the same arguments made in their opening brief. (Doc. 63.) They reiterate that Plaintiffs bear the burden of "provid[ing] independent

validation of [Green's] methodology[,]" and Green's "assurances that he has utilized generally accepted [principles] is insufficient." (Doc. 63 at 5–6, quoting *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013).) AG Defendants argue that historians are not exempt from this requirement. (*Id*. at 6.) They point to scholarship identifying the "special difficulty" of historians giving expert testimony. (*Id*. at 6–7, citations omitted.)

AG Defendants repeat that "Green's conclusions contradict Supreme Court and Fifth Circuit precedent," and charge that Green is a "culture warrior" who has been "on the losing side of every major church-state conflict of the past two decades." (*Id*. at 8, citations omitted). They also return to their argument that Green uses the wrong analysis and should be using *Kennedy's* "hallmarks of religious establishment." (*Id*. at 9–12.)

## IV.    STANDARD

### A.  Requirements of Rule 702

Congress amended Federal Rule of Evidence 702 effective December 1, 2023[5] to read as follows:

Rule 702. Testimony by Expert Witnesses

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

---

[5] The amendments "shall take effect on December 1, 2023, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending." Fed. R. Evid. Refs. & Annos. (2023).

B. ***Proponent's Burden***

The Advisory Committee's Notes[6] to the recently amended Rule 702 explain that

> [T]he rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule. *See* Rule 104(a). This is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration."); *Huddleston v. United States*, 485 U.S. 681, 687 n.5 (1988) ("preliminary factual findings under Rule 104(a) are subject to the preponderance-of-the-evidence standard").

Fed. R. Evid. 702 Advisory Committee's Notes to 2023 Amendment.

C. ***Role of Court in Deciding Daubert Challenge***

When *Daubert*[7] is invoked to challenge an expert's opinions, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc*., 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry[.]" *Id*. "At a minimum, a district court must create a record of its *Daubert* inquiry and

---

[6] "The Advisory Committee Notes are instructive on the drafters' intent in promulgating the federal rules." *United States v. Navarro*, 169 F.3d 228, 237 (5th Cir. 1999) (citing *Williamson v. United States*, 512 U.S. 594, 614–15 (1994) (Kennedy, J., concurring) ("When as here the text of a Rule of Evidence does not answer a question that must be answered in order to apply the Rule, and when the Advisory Committee's Note does answer the question, our practice indicates that we should pay attention to the Advisory Committee's Note. We have referred often to those Notes in interpreting the Rules of Evidence, and I see no reason to jettison that well-established practice here.")); *see also Ronaldo Designer Jewelry, Inc. v. Cox*, No. 17-2, 2020 WL 109830, at *1 (N.D. Miss. Jan. 9, 2020) ("Although not binding, the interpretations in the Advisory Committee Notes 'are nearly universally accorded great weight in interpreting federal rules.'" (quoting *Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005) (citation omitted))); *cf. also* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1029 (4th ed. 2023) ("In interpreting the federal rules [of civil procedure], the Advisory Committee Notes are a very important source of information and direction and should be given considerable weight. Although these Notes are not conclusive, they provide something akin to a 'legislative history' of the rules and carry, in addition, the great prestige that the individual members of the successive Advisory Committees, and the Committees themselves, have enjoyed as authorities on procedure.").

[7] *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993).

'articulate its basis for admitting expert testimony[.]'" *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.,* 242 F.3d 567, 581 (5th Cir. 2001)). In this case, a *Daubert* hearing was held on October 21, 2024.

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. *Id.* at 199. The Fifth Circuit has held that "when expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997) (internal citations omitted).

A district court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997) (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* using the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert testimony . . . ."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

Federal Rule of Evidence 104(a) states that "[t]he court must decide any preliminary question about whether a witness is qualified . . . or evidence is admissible." The Advisory Committee's Notes to the 2023 Amendments to Rule 702 emphasize that the 2023

> amendment is simply intended to clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702. Similarly, nothing in the amendment requires the court to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support. The Rule 104(a) standard does not require perfection. On the other hand, it does not permit the expert to make claims that are unsupported by the expert's basis and methodology.

Fed. R. Evid. 702 Advisory Committee's Notes to 2023 Amendment.

8

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (quoting Fed. R. Evid. 702 Advisory Committee's Notes to 2000 Amendments). Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

No. 02-2565, 2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

> As the Court in *General Electric Capital Business Funding Corp. v. S.A.S.E. Military Ltd.*, stated, "Experts should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the factfinder." No. SA-03-CA-189-RF, 2004 WL 5495590, at *5 (W.D. Tex. Oct. 21, 2004) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Trinity Med. Servs., L.L.C. v. Merge Healthcare Sols., Inc.*, No. 17-592, 2020 WL 1309892, at *7 (M.D. La. Mar. 19, 2020) (deGravelles, J.).

*Smiley v. New Hampshire Ins. Co.,* No. 17-1094, 2021 WL 292449, at *8 (M.D. La. Jan. 28, 2021) (deGravelles, J.).

### D. Factors for Measuring Reliability of Expert's Opinion

The Fifth Circuit held that *Daubert* made

 "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and

maintenance of standards controlling the technique's operation," as well as "general acceptance."  The [Supreme] Court summarized:

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity[—]and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins*, 121 F.3d at 989 (internal citations omitted).

Cases following *Daubert* have expanded upon the factors listed above and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Joiner*, 522 U.S. at 142; *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011 at *1 (M.D. La. Oct. 12, 2010) (internal citations omitted) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

The Supreme Court recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 244 (5th Cir. 2002).

In that vein, the Fifth Circuit has concluded that "soft sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering. *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (quoting *Jenson v. Eveleth Taconite Co*., 130 F.3d 1287, 1297 (8th Cir. 1997)).

> In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations. Because there are areas of expertise, such as the "social sciences in which the research theories and opinions cannot have the exactness of hard science methodologies," trial judges are given broad discretion to determine "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case."

*Id.* (internal citations omitted) (relying on *Pipitone*, 288 F.3d at 247).

If the expert's testimony does not rest on traditional scientific methods, the court may permit testimony "where a proposed expert witness bases her testimony on practical experience rather than scientific analysis." *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013). "In such cases . . . courts recognize that experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'" *Id*. at 412 (quoting *Kumho Tire*, 526 U.S. at 149–50); *see also Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) ("[T]here is no question that an expert may still properly base his testimony on '*professional study* or personal experience.'" (emphasis added)) (cleaned up).

### E.   Correctness of the Expert's Opinions

It is not the role of the court to decide whether an expert's opinions are correct or, in the case of competing and conflicting expert opinions, which one is right or even which one has greater support.

> It will often occur that experts come to different conclusions based on contested sets of facts. Where that is so, the Rule 104(a) standard does not necessarily require exclusion of either side's experts. Rather, by deciding the disputed facts, the jury can decide which side's experts to credit. *"[P]roponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments*

> *of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable . . .* The evidentiary requirement of reliability is lower than the merits standard of correctness."' Advisory Committee Note to the 2000 amendment to Rule 702, quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994).

Fed. R. Evid. 702 Advisory Committee's Notes to 2023 Amendment (emphasis added).

"'As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d at 1077 (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Nevertheless, in any case, "[m]atters left for the jury's consideration include the alleged miscalculations, erroneous assumptions, and inconsistencies that plaintiffs object to." *Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, No. 06-426, 2009 WL 2356292 at *3 (E.D. La. July 28, 2009) (citing *Southwire Co. v. J.P. Morgan Chase & Co.*, 258 F. Supp. 2d 908, 935 (W.D. Wis. 2007) ("the alleged errors and inconsistencies are grounds for impeaching the credibility of the experts and the reliability of their ultimate findings; however, mistakes and miscalculations are not grounds for excluding evidence.") (citing *Daubert*, 509 U.S. at 596)).

### F.  In the Event of a Bench Trial

"[S]ince Rule 702 is aimed at protecting jurors from evidence that is unreliable for reasons they may have difficulty understanding, in a bench trial there is greater discretion regarding procedure and even the stringency of gatekeeping." 29 Victor J. Gold, Federal Practice & Procedure § 6270 (2d ed. 2024).

> In a bench trial, the principal reason for the Court's gatekeeping function is not implicated, namely to guard against jury confusion which may result from irrelevant and/or unreliable expert opinion testimony. The purpose of the Court's gatekeeping function required by *Daubert* is "to ensure that only reliable and relevant expert testimony is presented to the jury." "Most of the safeguards

provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."

*Hunters Run Gun Club, LLC v. Baker*, No. 17-176, 2019 WL 2516876, at *1 (M.D. La. June 18, 2019) (Dick, C.J.) (citations omitted); *see also Nassri v. Inland Dredging Co*., No. 11-853, 2013 WL 256747, at *1 (M.D. La. Jan. 23, 2013) .

Or, stated another way, "[t]here is less need for the gate keeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005); *see also Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *Smiley,* 2021 WL 292449, at *8–9.

### G.  In the Event of a Preliminary Injunction Hearing

"The law is well-settled that because the procedures governing a preliminary injunction are generally less formal than those at trial, the court may rely upon otherwise inadmissible evidence when considering a preliminary injunction." *Half Price Books, Recs., Mags., Inc. v. Barnesandnoble.com, LLC*, No. 02-2518, 2003 WL 23175432, at *1 (N.D. Tex. Aug. 15, 2003) (citing *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."); *Sierra Club, Lone Star Chapter v. Fed. Deposit Ins. Corp.,* 992 F.2d 545, 551 (5th Cir. 1993) ("[A]t the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence . . . ."); *Fed. Sav. & Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 558 (5th Cir. 1987) (citing *Camenisch* for the proposition that "a preliminary injunction proceeding is not subject to jury trial procedures"); *Texas Com. Bank Nat'l Assoc. v. State of Fla.,* No. 96-2814, 1997 WL 181532, at *4 (N.D. Tex. April 9, 1997) (in deciding whether to grant a preliminary injunction, "the court may

rely on hearsay evidence and may even give inadmissible evidence some weight"), *aff'd,* 138 F.3d

179 (5th Cir. 1998).

Thus, as one district court in the Fourth Circuit explained:

District courts in this circuit have held that defects in evidence offered in support of a preliminary injunction generally go to the weight of the evidence rather than whether the Court may consider it at all. Thus, some courts have decided to consider all proffered evidence and assign it whatever weight is appropriate under the circumstances. *See Hispanic Nat'l Law Enforcement Assoc. NCR v. Prince George's Cnty*, 535 F. Supp. 3d 393, 409–10 (D. Md. 2021) (denying a motion to strike allegedly inadmissible declarations in support of a preliminary injunction motion); *Stone v. Trump*, 280 F. Supp. 3d 747, 767 (D. Md. 2017) (stating, in connection with a motion for preliminary injunction, that "[t]he weight to be accorded to affidavit testimony is within the discretion of the court, and statements based on belief rather than personal knowledge may be discounted"). Others, when presented with proffered *expert* testimony related to a preliminary injunction motion, have undertaken a "less formal review" of the testimony to see whether it contains the indicia of reliability that courts look for in serving their gatekeeper function under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *See Defs. of Wildlife and S.C. Coastal Conservation League v. Boyle*, Civ. No. 2:22-112-RMG, 2023 WL 2770280, at *2 (D.S.C. Apr. 4, 2023). While the evidentiary rules are somewhat relaxed at this stage, courts have therefore found that Federal Rule of Evidence 702 and the line of cases under *Daubert* remain "useful guideposts" in determining what kinds of expert evidence are appropriate to consider in deciding on the motion. *St. Michael's Media Inc. v. Mayor and City Council of Baltimore*, 566 F. Supp. 3d 327, 353–56 (D. Md. 2021).

*G. W. Aru, LLC v. W. R. Grace & Co.-Conn.*, No. 22-2636, 2023 WL 5434666, at *2 (D. Md. Aug.

23, 2023); *see id.* at *4 (declining to strike expert declaration and instead finding that "the defects

. . . go to the weight that the Court will give [the expert's] technical statements and analysis in

deciding on Plaintiffs' Motion for a Preliminary Injunction" (citing *Parks v. City of Charlotte*, No.

17-670, 2018 WL 4643193, at *4 (W.D.N.C. Sept. 27, 2018) (stating, in the context of a

preliminary injunction, that a party's "*Daubert* arguments . . . are more instructive on the weight

of the evidence rather than its admissibility at this procedural posture"))); *see also Black

Emergency Response Team v. Drummond*, No. 21-1022, 2023 WL 6810561, at *1–2 (W.D. Okla.

14

Oct. 16, 2023) (describing *Daubert* "as a useful method for evaluating the weight of the evidence presented on a request for a preliminary injunction[,]" declining to apply *Daubert* to exclude evidence, and noting objections in weighing expert's testimony).

## V.    DISCUSSION

The Court held a *Daubert* hearing on Monday, October 21, 2024, at which time Green testified and answered questions regarding the *Daubert* challenge and his opinions and conclusions. The Court found Green to be exceptionally well-credentialed and knowledgeable on the issues under consideration and also found him to be credible, clear, and candid in his answers during both examination and cross-examination.

### A.    Has Green Used an Accepted Methodology in Reaching His Opinions?

AG Defendants argue that Green has failed to use, or at least identify, an "external standard validating his methodology." (Doc. 53-1 at 5; *see also id*. at 6–8.) But in his report, Green explains the methodology he used for his historical analysis which he described as "standard and well-accepted methodologies used by historians" including "review[ing] both primary and secondary sources[,]" determining the reliability of the sources, comparing their consistency to other evidence, considering the circumstances of their production (including the place, time and source of production), "consider[ing] how the plain language of the source would have been interpreted at the time of its writing, and avoid[ing] the application of modern interpretations to documents that were centuries old."  (Green's Expert Report, Doc. 50-2 at 4)

At the *Daubert* hearing, during both direct and cross-examination, Green went into greater detail regarding the standard methodology utilized by historians in reaching conclusions and how he utilized this methodology in reaching his opinions in this case. To the extent that he relied on his prior work in this area, he explained that he followed that same methodology there. In both

direct and cross-examination, Green pointed to the fact that many, if not most, of the books and articles relied upon by him had been peer-reviewed and explained the peer-review process. During oral argument, counsel for the AG Defendants conceded that Green utilized the same methodology used by all historians and also acknowledged that Fifth Circuit precedent does not require the same criteria for measuring reliability of expert testimony in the "soft sciences" as in the "hard sciences."

As stated above, the Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in Pipitone*, 288 F.3d at 244. Similarly, and pertinent to this case, the Fifth Circuit has concluded that "soft sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering. *Simmons*, 470 F.3d at 1123 (quoting *Jenson*, 130 F.3d at 1297).

The primary case relied upon by AG Defendants, *Brown* 705 F.3d at 536, is factually and legally inapposite, involving the *Daubert* challenge of a transportation engineering expert who "failed to explain how any of [his] authorities support[ed] [his] conclusions." (*Id.*) Both in his report and in his testimony, Green explained in exquisite detail how his "four key conclusions" (Green Expert Report, Doc. 50-2 at 5–6) were supported by historical sources and the other data upon which he relied. (*Id.* at 6–30.)

AG Defendants argue that historical expert testimony presents peculiar problems for Courts (Doc. 63 at 6–8), but Supreme Court case law, including that relied on by Defendants, asks district judges to make informed judgments regarding detailed matters of colonial history.

> . . . the Establishment Clause must be interpreted by "'reference to historical *practices and understandings.*'" [*Town of Greece v. Galloway*, 572 U.S. 565, 576

16

(2014)]; see also [*Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 60, 139 S. Ct. 2067 (2019)] (plurality opinion). "'[T]he line'" that courts and governments "must draw between the permissible and the impermissible" has to "*'accor[d] with history and faithfully reflec[t] the understanding of the Founding Fathers.'" Town of Greece*, 572 U.S. at 577 [ ] (quoting *School Dist. of Abington Township v. Schempp*, 374 U.S. 203, 294 [ ] (1963) (Brennan, J., concurring)). An analysis focused on original meaning and history, this Court has stressed, has long represented the rule rather than some "'exception'" within the "Court's Establishment Clause jurisprudence." 572 U.S. at 575 [ ]; see *American Legion*, 588 U. S., at ——, 139 S. Ct., at 2087 (plurality opinion); *Torcaso v. Watkins*, 367 U.S. 488, 490 [ ] (1961) (*analyzing certain historical elements of religious establishments*); *McGowan v. Maryland*, 366 U.S. 420, 437–440 [ ] (1961) (analyzing Sunday closing laws by looking to their "place . . . in the First Amendment's history"); *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664, 680 [ ] (1970) (analyzing the "history and uninterrupted practice" of church tax exemptions). The District and the Ninth Circuit erred by failing to heed this guidance.

*Kennedy*, 597 U.S. at 535–36 (emphasis added).

In many, if not most instances, judges are not themselves experts in colonial history, and so it is not surprising that they would look to those who are. As Plaintiffs correctly point out, "[c]ourts have routinely admitted testimony by historians in litigation over constitutional issues, including Establishment Clause challenges, recognizing that the elucidation of complex social and historical issues by experts in the social sciences valuably informs the legal analysis." (Doc. 61 at 10, citing numerous cases at *id*. at 10–11.)

Untrained judges can certainly attempt to answer such difficult historical questions without expert testimony by looking directly at history texts, treatises, law review articles, and original sources and attempt to interpret same, but that seems to this Court be an endeavor fraught with risk. AG Defendants have pointed the Court to no rule or case which prevents a Court from hearing and utilizing expert testimony on this subject and have made no effort to refute or distinguish Plaintiffs' cases allowing such expert testimony. Indeed, AG Defendants acknowledge that "[o]f course historical experts have been properly allowed in other cases." (Doc. 63 at 7.)

If AG Defendants contend there is a competing view of the relevant history either as to the historical facts or the proper characterization of those facts as given by Green,[8] AG Defendants had a chance to call their own expert to contradict and challenge Green. AG Defendants chose not to do so.

The Court finds that Green has shown a well-articulated, supported, and adequate methodology used in reaching his opinions and therefore denies this basis for AG Defendants' *Daubert* challenge. It is also important to reemphasize that a *Daubert* challenge does not test the correctness of the opinion but only the methodology utilized by the expert. Fed. R. Evid. 702 Advisory Committee's Notes to 2023 Amendment ("[P]roponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable."). This ruling on the *Daubert* challenge makes no comment in that regard. Whether the Court finds Green's opinions substantively persuasive and supported will be considered on the merits of AG Defendants' Motion to Dismiss and Plaintiffs' Motion for Preliminary Injunction.

### B. Do Green's opinions "attempt[ ] to overrule the Supreme Court on historical questions it has already definitively asked and answered"?[9]

AG Defendants argue that Green's opinions "attempt[ ] to overrule the Supreme Court on historical questions it has already definitively asked and answered." (Doc. 53-1 at 5.) Specifically, AG Defendants point to Green's statement that "the Ten Commandments are not a foundation of the American government or legal system[.]" (*Id*. at 8, quoting Green's Expert Report, Doc. 50-2 at 6.) They argue this is at odds with Supreme Court and Fifth Circuit jurisprudence. (*Id*., quoting *Am. Legion* 588 U.S. at 53 ("[the Ten Commandments] have historical significance as one of the

---

[8] AG Defendants state that "the historical facts are not in dispute, just how to characterize those facts." (Doc. 53-1 at 5; *see also id.* at 10–12.)
[9] (Doc. 53-1 at 5; *see also id.* at 8)

foundations of our legal system . . . .") and *Van Orden v. Perry*, 351 F.3d 173, 181 (5th Cir. 2003), *aff'd.* 545 U.S. 677 (noting the "extraordinary influence" of the Ten Commandments upon the civil and criminal laws of this country.").)

Plaintiffs respond that AG Defendants' attempt to manufacture a supposed contradiction between Supreme Court jurisprudence and Green's earlier works is based on cherry-picked, incomplete quotations of his work, ignoring his complete statement acknowledging that "the Ten Commandments—and its parallels from other ancient cultures—as well as other directives contained in the Pentateuch of the Hebrew and Christian scriptures, inform our notions of right and wrong and, as such have influenced the development of Western law of which the American legal system is part." (Doc. 61 at 17 (emphasis omitted) (quoting Steven K. Green, *The Fount of Everything Just and Right? The Ten Commandments As A Source of American Law*, 14 J.L. & Religion 525 (2000)).) According to Plaintiffs, AG Defendants also "ignore his analysis that follows, which specifically refutes any claims of 'a much closer relationship between the Ten Commandments and American law.'" (*Id.*, quoting Green, *The Fount* . . . at 526.) Plaintiffs also argue that the case language quoted by AG Defendants in support of their Motion is not a "holding" but, "[a]t best, it is dicta" (Doc. 61 at 16, n. 5.)

AG Defendants reply that the quoted Supreme Court and Fifth Circuit language is not dicta but, "holding or dicta – Green's opinions contradict the Supreme Court and is thus *ipso facto* unreliable." (Doc. 63 at 8.)

To state the obvious: contrary to AG Defendants' suggestion to the contrary, an expert cannot "overrule" a Supreme Court opinion.[10]  Indeed, experts cannot render legal conclusions at

---

[10] And of course, neither can this Court nor the Fifth Circuit. "[I]t is [the Supreme] Court's prerogative alone to overrule one of its precedents." *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (per curiam) (quoting *United States v. Hatter*, 532 U.S. 557, 567 (2001)). The High Court's "decisions remain binding precedent until [it] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Id.* (quoting *Hohn v. United*

all. "[I]t is well-established that expert witnesses 'may never render conclusions of law.'" *Shaw Grp., Inc. v. Zurich Am. Ins. Co.*, No. 3:12-CV-00257-JJB, 2014 WL 3407318, at *1 (M.D. La. July 10, 2014) (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). *See also Lamar Advert. Co. v. Zurich Am. Ins. Co.*, 533 F. Supp. 3d 332, 342 (M.D. La. 2021).) But Green was not tendered as a legal expert and, indeed, the Court sustained objections to questions posed to Green by counsel for AG Defendants during cross-examination that attempted to elicit legal opinions from him.

Furthermore, the Court need not determine whether the quoted language from the Supreme Court is a holding or dicta. As the language quoted by both sides from Green's 2000 article makes clear, his view on the role of the Ten Commandments in American history is more nuanced than that suggested by AG Defendants. But most importantly, AG Defendants' objections go the merits of his testimony and are therefore a matter for cross-examination at the hearing rather than exclusion via a *Daubert* motion. "'As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*, 80 F.3d at 1077 (quoting *Viterbo*, 826 F.2d at 422). Therefore, AG Defendants' *Daubert* Motion is denied in this respect.

---

*States*, 524 U.S. 236, 252–253 (1998)). "If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [lower courts] should follow the case which directly controls, leaving to th[e] [Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). "This is true even if the lower court thinks the precedent is in tension with some other line of decisions." *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 356 (5th Cir. 2024) (quoting *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023)).

### C. Does "Green's background as an advocate . . . mean[ ] his proffered opinions are not truly independent and are thus unreliable"?[11]

AG Defendants argue that "Green's background as an advocate . . . means his proffered opinions are not truly independent and are thus unreliable." (Doc. 53-1 at 5; *see also id*. at 10.) They maintain that his work for Americans United for Separation of Church and State ("AUSCS") for over a decade including directing the organization's litigation practice and representing AUSCS in cases similar to the present one "indicat[es] [a] potential for bias." (*Id*. at 10.) They point out that one of Plaintiffs' lawyers in this case is associated with AUSCS.

Plaintiffs respond that Green's employment with AUSCS "more than two decades ago" is irrelevant to his qualifications and the soundness of his methodology and opinions and that AG Defendants "do not . . . point to any evidence of actual bias." (Doc. 61 at 17–18.) Plaintiffs point the Court to case law permitting both former and current employees of a party to testify as experts. (*Id*. at 18, citing *Den Norske Bank AS v. First Nat. Bank of Bos*., 75 F.3d 49, 58 (1st Cir. 1996).) In any event, argue Plaintiffs, bias is a matter for cross-examination, not exclusion. (*Id*. at 18–19.)

In reply, AG Defendants repeat the essence of their original arguments. (Doc. 63 at 8–9.)

Both sides agree that the fact that an expert is an employee or former employee of a party is not grounds for automatic exclusion and that employees and former employees are sometimes admitted as experts. (Doc. 53-1 at 10; Doc. 61 at 18 (quoting *Den Norske Bank*, 75 F.3d at 58) ("Once again, however, we are not persuaded that First National has demonstrated that the expert qualifications of these affiants are undermined by their present and former association with Den Norske so as to render their testimony inadmissible. Of course, such matters may bear heavily on

---

[11] Doc. 53-1 at 5; *see also id*. at 8–10.

witness credibility, bias, and the weight of the evidence. But these are matters for the factfinder." (emphasis omitted))).)

The Court agrees with Plaintiffs that AG Defendants have failed to show bias merely because of Green's employment with AUSCS some twenty years ago, and this is especially true in light of Green's extensive scholarship in the area at issue. Despite the opportunity to cross-examine Green on this issue, AG Defendants have offered no additional evidence of supposed bias. Furthermore, and more importantly for purposes of this Motion, bias, even if shown, is typically not a ground for exclusion but a matter which goes to weight of the opinions offered.

### D.  Are Green's Opinions Relevant to the Issues to be Decided?

AG Defendants' arguments regarding the alleged irrelevance of Green's opinions are a shortened version of the same arguments they made in their Motion to Dismiss. (Doc. 53-1 at 5; *see also id*. at 10–12; *cf*., Doc. 39-1 at 17–59.) For the reasons given in the Court's ruling on the Motion to Dismiss, these arguments are rejected.

### E.  Is There a Lessened Need for Daubert Scrutiny?

If this *Daubert* motion were in advance of a jury trial, the Court would, for the reasons stated above, find Green's methodology and the reliability of his opinions such that the Court would deny the Motion. But the testimony was given at a preliminary injunction hearing tried to the bench where "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *Brown*, 415 F.3d at 1269; *see also Gibbs*, 210 F.3d at 500. This is an additional reason that denial of the Motion is warranted.

### VI.    CONCLUSION

For the reasons detailed above, *Defendants' Motion to Exclude Putative Expert Testimony* (Doc. 53) is denied. The Court accepts Green as an expert in the fields tendered: the history of the

United States Constitution and the First Amendment with respect to religious matters, the history of religion in U.S. public schools, and denominational variations in the text of the Ten Commandments.

Signed in Baton Rouge, Louisiana, on <u>November 12, 2024</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**